1

2  Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
3   Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
4  DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
5  Santa Monica, California 90401
Telephone: (310) 656-7066
6  Facsimile: (310) 656-7069
7

8  Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
9  A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
10  KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
11  Huntington Beach, CA 92647-5998
Tel: (512) 420-8407
12

13  *Attorneys for Plaintiffs*

14

15  **UNITED STATES DISTRICT COURT**

16  **NORTHERN DISTRICT OF CALIFORNIA**

17

18  ANTONIO MCKINNEY, individually and on
behalf of all others similarly situated,
19                                    *Plaintiffs*,

20                         v.

21  CORSAIR GAMING, INC.,

22                              *Defendant*.

23

24

25

26

27

28

Case No.

CLASS ACTION COMPLAINT

DEMAND FOR JURY TRIAL

## <u>Table of Contents</u>

Introduction ...................................................................................................................... 1

The Parties ....................................................................................................................... 1

Jurisdiction and Venue .................................................................................................... 2

Pleaded Facts ................................................................................................................... 2

      I.      Corsair's ads promise that its memory will run at the advertised speed out of the box, and that it will do so reliably.  These representations are not qualified. ........................................................................................................ 2

      II.     In reality, trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that attempts to get the memory to run at the advertised speed will fail. .................................................. 8

            A.     Attempting to obtain the advertised speeds requires altering PC firmware. ................................................................................................ 9

            B.     There is a substantial risk that the memory will not run at the advertised speed or will not run stably at this speed................................ 10

      III.    Corsair's ads are misleading to reasonable consumers......................................... 12

      IV.    Plaintiff was misled and harmed by Corsair's advertisements. ........................... 13

Class Action Facts.......................................................................................................... 14

Causes of Action ............................................................................................................ 16

Jury Demand ................................................................................................................... 27

Prayer for Relief............................................................................................................. 27

**Introduction**

1.      Corsair sells premium, high-speed computer memory.  Its typical customers are computer gamers interested in improving the performance of their games.

2.      The most important measure of memory performance is the speed at which it transfers data (measured in megahertz, or MHz).  On its packaging and in its ads, Corsair advertises that its memory runs at specific, high MHz speeds (e.g., "3600 MHz").  Corsair's ads do not qualify these representations.

3.      Consumers reasonably believe that Corsair's memory will run at these advertised speeds.  But in reality, the memory does not and cannot run at these advertised speeds out of the box.  Trying to get Corsair memory to run at the advertised speed requires altering your computer's firmware to attempt to make the memory run at higher than standard speeds.  This is known as "overclocking."  And "overclocking" often does not work.  There is a substantial risk that attempts to "overclock" will fail and the memory will not achieve the advertised speed at all, or will not run stably.  As a Corsair employee has admitted, overclocking is really a "lottery."  But Corsair's memory packaging and ads do not disclose any of this to consumers.

4.      Corsair has made tens of millions of dollars (or more) by deceptively advertising its high-speed memory products.

5.      Plaintiff brings this case individually and for all consumers who purchased Corsair's high-speed memory products in the United States.

**The Parties**

6.      Plaintiff is a citizen of California. He is domiciled in Moreno Valley, California. The proposed class includes citizens of most (or potentially all) states.

7.      Defendant Corsair Gaming, Inc. is a citizen of California and Delaware.  Corsair's headquarters and principal place of business are at 47100 Bayside Pkwy, Fremont, California 94538.  It is incorporated in Delaware.

1

Class Action Complaint                                                              Case No.

1

<u>**Jurisdiction and Venue**</u>

2    8.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The

3    matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,

4    and is a class action in which one or more members of the proposed class are citizens of a state

5    different from Defendant.

6    9.    This Court has personal jurisdiction over Defendant because Defendant's

7    principal place of business is in California.

8    10.    Venue is proper under 28 U.S.C. § 1391(b)(1) & (2), because Defendant resides

9    in this District (at its Fremont headquarters) and because a substantial part of Defendant's

10    conduct giving rise to the claims occurred in this District.

11

<u>**Pleaded Facts**</u>

12    **I.    Corsair's ads promise that its memory will run at the advertised speed out of the**

13    **box, and that it will do so reliably.  These representations are not qualified.**

14    11.    Corsair markets and sells high-end PC computer systems, components, and

15    accessories.  Corsair markets its products to computer gamers who want to improve the

16    performance of their games.

17    12.    One of Corsair's flagship products is its high-speed computer memory (RAM)

18    sticks, including the "Vengeance" and "Dominator" lines (collectively, "Corsair High-Speed

19    Memory").  These memory sticks can be plugged into the memory slots of a PC.

20
21
22
23
24
25
26
27
28



2

---

Class Action Complaint                                                      Case No.

13.     Corsair's advertisements highlight the specific speeds of its High-Speed Memory. Memory speed means how fast the memory can transfer data, and it is measured in units of Megahertz (MHz).  The more MHz, the purportedly faster the memory and the higher the performance.

14.     Corsair's packaging and other advertisements state that its memory runs at specific, high-MHz speeds.

15.     To start, Corsair's packaging lists the speed (in MHz) on the front.  For example, here is the package for the "Vengeance RGB Pro" stick, which advertises (in the top-right corner) that the stick operates at "3200 MHz":



*Red annotations added*

Class Action Complaint                                                    Case No.

16.     There is nothing on the box, or in the box, that qualifies this "3200MHz" statement.

17.     In addition to selling in physical stores, Corsair sells its memory through online vendors and its website.  Like the product boxes, Corsair's online ads prominently state the specific "MHz" speed of the memory (in multiple places).

18.     For example, here is an Amazon listing for Dominator "3600 MHz" memory. This listing is from the "Corsair Store" on Amazon: [1]



19.     And here is a Newegg listing for Vengeance "3000 MHz" memory: [2]



---

[1] https://www.amazon.com/CORSAIR-Dominator-Platinum-PC4-28800-Optimized/dp/B08TC4WSRC/ref=sr_1_5?keywords=corsair+dominator+memory&qid=1639183148&s=electronics&sr=1-5
[2] https://www.newegg.com/corsair-16gb-288-pin-ddr4-sdram/p/N82E16820236419

4

Class Action Complaint                                                                     Case No.

1    20.    Corsair's website has similar ads. For example, here is an ad for Dominator "3600

2 MHz" memory: [3]



Class Action Complaint                                                              Case No.

21.     Corsair also pervasively distributes other ads that highlight the speed and reliability of its High-Speed Memory.  For example, the ads below appear across Amazon, Newegg, and Corsair's website. [4]  These ads claim that Vengeance memory runs at higher than "standard" speeds and promise that the memory is "optimized" for overclocking on the latest Intel and AMD motherboards (Intel and AMD together account for the vast majority of the U.S. chip market).  The term "overclocking" refers to running computer components (like memory) at higher than standard speeds.



---

[4] https://www.amazon.com/CORSAIR-Vengeance-3200MHz-Desktop-Memory/dp/B07D1XCKWW; https://www.newegg.com/corsair-64gb-288-pin-ddr4-sdram/p/N82E16820236601; https://www.corsair.com/us/en/vengeance-rgb-pro-memory

6

Class Action Complaint                                                    Case No.



22.     The examples above are representative of Corsair's advertising.  In sum, Corsair's ads promise specific high-speeds and reliability and are pervasively disseminated across purchasing channels.  Because these promises are consistent and pervasively disseminated, every consumer purchasing Corsair High-Speed Memory encounters substantially similar or identical promises.

23.     To a reasonable consumer that buys Corsair High-Speed Memory, Corsair's ads indicate that the memory will run at the stated speed out of the box (i.e., that the stated speed was the default speed), and that it will do so reliably across platforms.

24.     This is the plain meaning of Corsair's ads, which (a) state the speed unequivocally and without qualification and (b) expressly promise reliability across platforms (AMD and Intel).

25.     This is also what consumers reasonably understand memory speeds to indicate, based on typical memory purchases.  Typically, consumers buy memory as part of a complete computer purchase from a PC maker like Dell or HP.  And when the PC arrives, the memory is already running at the stated speed.  In addition, when a consumer buys aftermarket memory (e.g., to add more memory or replace broken memory) it is typical to purchase common, standard speed memory (e.g., memory that runs at the 2133 MHz standard), which runs at the stated speed reliably and out of the box.  For example, a consumer can buy 2133 MHz memory from Dell that runs at this standard speed out of the box.

7

Class Action Complaint                                                    Case No.

26.    A reasonable consumer would also expect that, if there were important qualifications about the promised speed, Corsair would make this clear.  For example, if Corsair's High-Speed Memory was only able to operate at the advertised speed after altering the computer's firmware, this is something a reasonable consumer would want to know, and expect Corsair to clearly disclose.  And if there is a substantial risk that the memory will not run at the advertised speed, or will not run stably, this is something a reasonable consumer would also want to know, and expect Corsair to clearly disclose.  But as illustrated above, Corsair's advertisements contain no such qualifications.

**II.    In reality, trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that attempts to get the memory to run at the advertised speed will fail.**

27.    In reality, Corsair's memory sticks do not operate at the advertised speed out of the box, i.e., when plugged into a computer.  Rather, they operate at a lower speed.  For example, the default speed for both the "Vengeance RGB Pro" stick (advertised at 3200 MHz) and "Dominator Platinum RGB" stick (advertised at 3600 MHz) is the standard JEDEC speed of 2133 MHz.  In this case, if a consumer buys these sticks, expecting to achieve the advertised speed, and plugs them into his or her computer without doing anything else, the memory only runs at a speed of 2133 MHz.

28.    Corsair's ads do not alert consumers that the stick will operate at a lower speed than advertised out of the box.  Nor is a difference in speed clearly observable when performing most computer functions.  Rather, users must go into their computer settings to find out their RAM speed.  The result is that a user can purchase Corsair High-Speed Memory, plug it into a computer, and get the same speed they were getting before, without ever knowing the difference.

29.    Also, if a consumer realizes that their memory is running slower than advertised, they must attempt to "overclock" it to achieve the advertised speed.  Overclocking means changing their computer's firmware to make the computer push its components beyond their standard operating speeds.

30.    In a blog post, a Corsair employee candidly describes the difficulties and risks of overclocking computer components.  He admits that successfully overclocking hardware is a "lottery" and admits that, despite "people in forums" saying that overclocking components is "reliable," the truth is that "you're really playing the odds." [5]

31.    What Corsair's employee admits is true.  As described next, overclocking memory requires altering the PC's firmware.  And it carries a substantial risk that the memory will not run at the advertised speed or will not run stably at this speed.  But Corsair never discloses this on the packaging or its ads.  And a reasonable consumer does not, and should not be expected to, dig up Corsair employee blog posts before purchasing.

**A.    Attempting to obtain the advertised speeds requires altering PC firmware.**

32.    Overclocking memory requires adjusting a computer's Basic Input/Output System (BIOS) or Unified Extensible Firmware Interface (UEFI) settings.  A computer's BIOS or UEFI is the program that governs the fundamental mechanisms by which the computer turns on and operates.  On many computers, accessing the BIOS or UEFI settings involves restarting the computer and repeatedly pressing a designated keyboard button (which varies by computer brand) during a brief window of time after the computer turns on.

33.    Once the user has accessed the BIOS or UEFI settings, the user must locate the setting for the RAM frequency (its MHz speed) and increase the RAM frequency to the desired speed.  For example, to try to achieve the advertised speed on a Dominator 3600 MHz stick, the user must increase the frequency to 3600 MHz.

34.    In addition to changing the frequency, overclocking often requires changing multiple memory "timing" settings, which interact with the frequency settings.

35.    Also, because running the RAM at higher speeds requires additional power, overclocking can also require increasing the voltage settings.

36.    On certain Intel computer systems, the BIOS has an "XMP" (Extreme Memory Profile) setting that will set the various memory parameters to predetermined profiles.  While

---

[5] https://www.corsair.com/us/en/blog/corsair-overclocking-guide-part-1-the-cpu

9

this simplifies configuration, it still requires altering the BIOS, and these settings are only available on certain motherboards.

37.    Altering the computer's firmware in this way poses material risks to the functionality of the computer system, as well as to the memory sticks themselves.  Some examples include reducing computer system stability, causing crashes, overheating system components, and causing system components to degrade more quickly.

38.    Because of the risks associated with overclocking, overclocking can void warranties on important components of the computer.  Intel's website states, "[a]ltering clock frequency or voltage may void any product warranties and reduce stability, security, performance, and life of the processor and other components." [6]

**B.    There is a substantial risk that the memory will not run at the advertised speed or will not run stably at this speed.**

39.    As Corsair's employee admits, successfully overclocking computer components is a "lottery."

40.    There is a substantial risk that the user's particular combination of other computer components (like the processor and other motherboard components) simply cannot support overclocking at the advertised speed.  Memory interacts with other components in complex ways and overclocking is sensitive to this.  If the combination of components is not optimal, the memory will not run at the advertised speed or it will run unstably (causing software glitches or system crashes).

41.    Beyond this, there is a substantial risk that a regular consumer will not be able to find the precise combination of frequency, timing, and voltage needed to achieve the advertised speeds.

42.    This is why online forums are replete with complaints from users that they cannot achieve the advertised speeds (or cannot do so stably).  For example, here are some representative complaints:

---

[6] https://www.intel.com/content/www/us/en/support/articles/000005494/processors.html

10

Corsair Vengeance ram not running at 3200 no matter what I do, Activating XMP does nothing" [7]

I recently got 2x 16gb 3600mhz Corsair vengeance pro ram and it won't clock at 3600mhz on both the xmp and manual selection in bios. I read somewhere that 5600x doesn't support 3600mhz ram yet but I'm not sure how true that is. Highest I've gotten it to go is 3534mhz so I'm trying to figure out if it's just a bad ram kit or processor doesn't support it, any help is appreciated! [8]

Corsair LPX 3000mhz DDR4 not running as advertised? What am I doing wrong? [9]

43.     Posts in response to these complaints illustrate the technical morass of overclocking.  For example:

Firstly, as others have said, your CPU technically only supports 2933MHz. The speed of your RAM is set as a ratio of your front side bus, which in this case is 99.75. Currently that FSB:DRAM ratio is set to 3:32, which means your 99.75 FSB will translate to 1064MHz (double data rate will then produce 2133MHz). So doing some quick calculations, you need to change it to 3:44 in order to end up with 2933MHz at the end. With XMP disabled, change the memory multiplier from 32 to 44, save and exit, then reload CPU-Z. It should now show 1466.5, which doubled is your 2933. [10]

44.     In response to this, the frustrated Corsair purchaser says:

Where do I change this stuff I tried to change it to 44 and all it did was make my computer not boot so I had to clear cmos. [11]

45.     In sum, as one poster points out, successful overclocking is a "lottery."  (And as described above, Corsair itself admits the same thing).

It's up to the silicon lottery. Some chips can run 3600, 3800 or even 4000 MT/s RAM easily, some can't. [12]

---

[7] https://www.reddit.com/r/pcmasterrace/comments/pebmet/corsair_vengeance_ram_not_running_at_3200_no/
[8] https://www.reddit.com/r/Amd/comments/nvn7ly/3600mhz_ram_not_working_with_5600x/
[9] https://www.reddit.com/r/overclocking/comments/5gbo5b/corsair_lpx_3000mhz_ddr4_not_running_as/
[10] https://www.reddit.com/r/pcmasterrace/comments/pebmet/corsair_vengeance_ram_not_running_at_3200_no/
[11] https://www.reddit.com/r/pcmasterrace/comments/pebmet/corsair_vengeance_ram_not_running_at_3200_no/
[12] https://www.reddit.com/r/Amd/comments/nvn7ly/3600mhz_ram_not_working_with_5600x/

11

Class Action Complaint                                                    Case No.

**III.    Corsair's ads are misleading to reasonable consumers.**

46.    As detailed above, Corsair's packaging and ads promise specific high speeds and reliability, and omit any warning about the risks and realities of overclocking. And this is not information that a reasonable Corsair customer already knows. A typical purchaser of Corsair High-Speed Memory is not a computer expert (much less an overclocking expert). Rather, a typical purchaser of Corsair High-Speed Memory is a regular consumer simply looking to improve the performance of their computer games or media software.

47.    If Corsair wanted to be truthful in its packaging and advertising, Corsair would make clear that the speeds it is listing are the *maximum* speed that the memory can run. For example, Corsair could state that its memory can run "at maximum speed of 4666 MHz."

48.    In addition, if Corsair wanted to be truthful, it would also clearly and prominently warn consumers that achieving the advertised speed requires altering the PC firmware. Corsair would also warn consumers that overclocking is risky (in Corsair's words a "lottery") and that, as a result, it may be impossible for the memory to stably achieve the advertised speed.

49.    Corsair's packaging and ads, however, do not disclose any of this and thus made material misstatements and omissions.

50.    In addition, Corsair's packaging and ads fail to disclose to consumers that the stated speed is not the default speed, that they would have to make various complex changes to their PC firmware to achieve the stated speed, and that even if they made those complex changes, it was a "lottery" whether they would actually stably achieve the stated speed.

51.    The omissions were material, because a reasonable consumer would attach importance to the truth or falsity of those omissions in deciding whether to purchase High-Speed Memory. As Corsair's marketing campaign reflects, speed is a primary factor in determining the price a consumer will pay for memory and in driving purchase decisions. Corsair could have and should have clearly revealed this qualifying information, on both the product packaging and in its ads. And Corsair could have, and should have, clearly put these qualifications in close proximity to its affirmative representations about speed. While these qualifications would drive

Class Action Complaint                                                                    Case No.

down the price that Corsair could charge for its products, including them would be required to make the packaging and ads not misleading.

52.    Corsair's false statements and material omissions increased the demand for its Corsair memory products.  As a result, Corsair was able to charge more for its High-Speed Memory than it would have been able to had Corsair's packaging and ads been truthful.  Accordingly, as a direct result of Corsair's false statements and material omissions, Corsair was able to charge a price premium for its High-Speed Memory.  As purchasers of Corsair's High-Speed Memory, Plaintiff and each member of the proposed class paid this price premium and, as a result, sustained an economic injury as a result of Corsair's false statements and material omissions.

53.    Corsair knows the truth about overclocking, and knows what its packaging and ads say (and omit).  Thus, Corsair knows that the statements on its packaging and ads are false and misleading to reasonable consumers and Corsair intends that consumers will rely on these false and misleading statements when purchasing High-Speed Memory.

**IV.    Plaintiff was misled and harmed by Corsair's advertisements.**

54.    In or around July 2019, Plaintiff purchased "3200 MHz" Corsair Vengeance RGB Pro from a Best Buy store in Riverside, California.  Plaintiff saw and relied on Corsair's claims, both on the box and in Corsair's online ads, that the memory would run reliably at 3200 MHz.

55.    After purchasing the memory, Plaintiff attempted to make it run at the advertised speed, by altering his BIOS settings.  The memory would not run stably at 3200 MHz.  Instead, his computer crashed, and the memory defaulted to the standard 2133 MHz speed.   As a result, he did not get what he paid for.  Had Plaintiff known the truth about Corsair's memory, Plaintiff would not have bought it or would not have paid the same price for it.

56.    Plaintiff would purchase Corsair High-Speed Memory again if it was actually sold as advertised.  Plaintiff, however, faces an imminent threat of harm because Plaintiff will not be able to rely on Corsair's ads in the future, and thus will not be able to purchase the products even if they were sold as advertised.

Class Action Complaint                                                                          Case No.

**Class Action Facts**

**The proposed class and subclasses.**

57.     Plaintiff brings this case on behalf of the proposed **Nationwide Class** of: All individuals who purchased Corsair High Speed Memory (including the Vengeance or Dominator lines), in the United States, within the governing statute of limitations period.

58.     It is appropriate to include all such individuals in the same class.  All such individuals were presented with substantially similar misrepresentations and omissions by Corsair.  All proposed class members allege the same violations of law and seek the same relief. There are no conflicts of interest among the proposed class members.

59.     For certain claims, Plaintiff brings those claims on behalf of a subclass of those consumers who live in the identified states (the "**Consumer Protection Subclass**").

60.     For certain claims, Plaintiff brings those claims on behalf of a subclass of those consumers who, like Plaintiff, live in California (the "**California Subclass**").

61.     The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6)  the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity**

62.     The proposed Class contains members so numerous that separate joinder of each member of the class is impractical.  Based on Corsair's sales, there are hundreds of thousands or millions of proposed class members.

14

Class Action Complaint                                                      Case No.

**Commonality**

63.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include:

- Whether Corsair's advertisements were unfair, deceptive, false, and/or misleading;
- Whether Corsair breached express warranties;
- Damages needed to compensate Plaintiff and the proposed class.

**Typicality**

64.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased one of Corsair's High-Speed Memory products.  And like the proposed class, Plaintiff was presented with and relied upon substantially similar advertising by Corsair. Plaintiff alleges the same violations of law and seeks the same relief as the proposed class.

**Adequacy**

65.     Plaintiff will fairly and adequately protect the interests of the proposed class. Plaintiff's interests are aligned with the interests of the proposed class members: Plaintiff seeks damages and other relief for Corsair's alleged wrongs.  Plaintiff is represented by experienced class action counsel who are prepared to vigorously litigate this case through judgment and appeal.  There are no conflicts of interest between Plaintiff and the class.

**Final injunctive relief is appropriate respecting the class as a whole.**

66.     Corsair has sold memory sticks through deceptive advertising on grounds that apply generally to the class.  Accordingly, final injunctive relief prohibiting Corsair from engaging in such conduct would appropriately apply class-wide.

**Predominance and Superiority**

67.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example,

15

Class Action Complaint                                                          Case No.

individual adjudication would create a risk that the same Corsair ad is found to be deceptive with respect to some proposed class members, but not others.

68.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  Each class member's claims arise out of the same conduct by Defendant.  And a core liability question is common: whether Corsair's advertisements were deceptive.

69.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of hundreds of thousands (or millions) of similar, individual claims in separate lawsuits.

**Ascertainability**

70.     Class membership can be objectively determined based on whether they bought Corsair High Speed Memory.  And the number and identity of class members can be determined through Corsair's records, the records of its retailers, and appropriate methods of public notice.

## Causes of Action

### Count I: Violations of State Consumer Protection Acts

### (on behalf of Plaintiff and the Consumer Protection Subclass)

71.     Plaintiff incorporates by reference each and every factual allegation set forth above.

72.     This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |

16

Class Action Complaint                                                          Case No.

| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
|---|---|
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |

17

| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
|---|---|
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

73.    Each of these statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sale of goods or services to consumers.  Corsair's misleading ads violate each statute's prohibitions.

Class Action Complaint                                                    Case No.

74.     Corsair's misrepresentations were intended to induce reliance, and Plaintiff and class members saw, read and reasonably relied on Corsair's misrepresentations and omissions when purchasing High-Speed Memory.

75.     Corsair is aware of the truth about overclocking (as alleged in detail above) and was therefore aware that its ads were misleading to reasonable consumers.

76.     For applicable statutes, Plaintiff is contemporaneously providing written notice and a demand for correction (together with notice of certain other violations alleged in this Complaint).  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

77.     Corsair had a duty to disclose material, qualifying information because: (1) Corsair affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Corsair had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Corsair was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

78.     Corsair's misrepresentations and omissions were a substantial factor in Plaintiff and class members' purchase decision.

79.     Plaintiff and class members were injured as a direct and proximate result of Corsair's conduct because (a) they would not have purchased Corsair High-Speed Memory if they had known the truth about Corsair's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Corsair's misrepresentations and omissions.

### Count II: Violation of California Unfair Competition Law (UCL)
### (on behalf of Plaintiff and the California Subclass)

80.     Plaintiff incorporates by reference each and every factual allegation set forth above.

Class Action Complaint                                                                    Case No.

81.     As alleged in Count I, state consumer protection laws are sufficiently similar such that Plaintiff may bring a claim on behalf of the Consumer Protection Subclass.  In the alternative, Plaintiff brings this UCL claim on behalf of himself and members of the California Subclass.

82.     Corsair violated California's Unfair Competition Law by engaging in unlawful, fraudulent, and unfair conduct (violating each of the three UCL prongs).

<u>The Unlawful Prong</u>

83.     Corsair engaged in unlawful conduct by violating the CLRA and FAL, and other applicable law as alleged in this Complaint.

<u>The Fraudulent Prong</u>

84.     Corsair's unqualified assertions about the speed of its High-Speed Memory products were false and misleading to a reasonable consumer and, as a result, were deceptive and fraudulent.  In addition, Corsair's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory. Corsair had a duty to disclose material, qualifying information because: (1) Corsair affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Corsair had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Corsair was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

85.     Corsair's misrepresentations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

<u>The Unfair Prong</u>

86.     Corsair violated established public policy by violating the CLRA and FAL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

Class Action Complaint                                                      Case No.

87.    The harm to Plaintiff and the class greatly outweighs the public utility of Corsair's conduct.  There is no public utility to Corsair's misleading ads.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading ads only injure healthy competition and harm consumers.

\*          \*          \*

88.    For all prongs, Corsair's misrepresentations and omissions were intended to induce reliance, and Plaintiff and class members saw, read and reasonably relied on them when purchasing High-Speed Memory.  These misrepresentations and omissions were a substantial factor in Plaintiff and class members' purchase decision.

89.    In addition, class-wide reliance can be inferred because the misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory products.

90.    Plaintiff and class members could not have reasonably avoided this injury because Corsair's advertisements were misleading to reasonable consumers.

91.    Corsair's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of class members.

92.    Plaintiff and class members were injured as a direct and proximate result of Corsair's conduct because (a) they would not have purchased Corsair High-Speed Memory if they had known the truth about Corsair's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Corsair's misrepresentations.

**Count III: Violation of California False Advertising Law (FAL)**

**(on behalf of Plaintiff and the California Subclass)**

93.    Plaintiff incorporates by reference each and every factual allegation set forth above.

94.    As alleged in Count I, state consumer protection laws are sufficiently similar such that Plaintiff may bring a claim on behalf of the Consumer Protection Subclass.  In the

21

alternative, Plaintiff brings this FAL claim on behalf of himself and members of the California Subclass.

95.    As alleged above, Corsair falsely advertised its High-Speed Memory Products by falsely representing that the products run out of the box at the advertised speed, and do so reliably.

96.    Corsair's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory. Corsair had a duty to disclose material, qualifying information because: (1) Corsair affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Corsair had exclusive knowledge of overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase. Corsair was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

97.    Corsair's representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Corsair knew, or should have known through the exercise of reasonable care, that these statements were untrue and misleading.

98.    Corsair's misrepresentations and omissions were intended to induce reliance, and Plaintiff and class members saw, read and reasonably relied on them when purchasing High-Speed Memory.

99.    In addition, class-wide reliance can be inferred because Corsair's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory Products.

100.    Corsair's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of class members.

101.    Plaintiff and class members were injured as a direct and proximate result of Corsair's conduct because (a) they would not have purchased Corsair High-Speed Memory if

22

Class Action Complaint                                                                            Case No.

they had known the truth about Corsair's misrepresentations and omissions; and (b) they

overpaid for High-Speed Memory products because they are sold at a price premium, due to

Corsair's misrepresentations and omissions.

**Count IV: Violation of the California Consumer Legal Remedies Act (CLRA)**

**(on behalf of Plaintiff and the California Subclass)**

102.    Plaintiff incorporates by reference each and every factual allegation set forth

above.

103.    Plaintiff brings this cause of action on behalf of himself and members of the

California Subclass.

104.    Plaintiff and the other members of the California Subclass are consumers that

engaged in a consumer transaction when buying High-Speed Memory.

105.    The conduct alleged in this Complaint constitutes unfair methods of competition

and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was

undertaken by Corsair in transactions intended to result in, and which did result in, the sale of

goods to consumers.

106.    Plaintiff and the other members of the California Subclass purchased High-Speed

Memory for personal, family, or household purposes.

107.    As alleged above, Corsair violated the CLRA by falsely representing that the

products run out of the box at the advertised speed, and do so reliably.  This conduct violated

California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

108.    Corsair's affirmative promises, as alleged above, created a duty to disclose

material and important qualifications about the performance of its High-Speed Memory.  Corsair

had a duty to disclose material, qualifying information because: (1) Corsair affirmatively made

partial representations about the speed of its memory, but also suppressed, concealed, or did not

disclose facts that qualify those representations; and (2) Corsair had exclusive knowledge of

overclocking facts not known to the consumer, as alleged above, and it was difficult to discover

that information because it involved complex technical information that was not readily apparent

23

at the time of purchase.  Corsair was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

109.    Through its representations and omissions, Corsair misrepresented the "characteristics," "uses," "benefits," or "quantities" of its High-Speed Memory, in violation of Cal. Civ. Code § 1770(a)(5).

110.    Through its representations and omissions, Corsair misrepresented that its High-Speed Memory was "of a particular standard, quality, or grade" in violation of Cal. Civ. Code § 1770(a)(7).

111.    Corsair advertised its High-Speed Memory sticks "with intent not to sell them as advertised," in violation of Cal. Civ. Code § 1770(a)(9).

112.    Corsair's representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Corsair knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

113.    Corsair's misrepresentations and omissions were intended to induce reliance, and Plaintiff and class members saw, read and reasonably relied on them when purchasing High-Speed Memory.

114.    In addition, class-wide reliance can be inferred because Defendants' misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the High-Speed Memory products.

115.    Corsair's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of class members.

116.    Plaintiff and class members were injured as a direct and proximate result of Corsair's conduct because (a) they would not have purchased Corsair High-Speed Memory if they had known the truth about Corsair's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Corsair's misrepresentations and omissions.

Class Action Complaint                                                                 Case No.

117.    Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks injunctive relief.

118.    CLRA § 1782 NOTICE.  A CLRA demand letter is contemporaneously being sent to Corsair via certified mail (return receipt requested) that provides notice of Corsair's violation of the CLRA and demands that within thirty (30) days from that date, Corsair correct the wrongful practices alleged here.  If Corsair does not fully correct the problem for Plaintiff and for each class member by that date, Plaintiff and the subclass will amend to seek all monetary relief allowed under the CLRA.

<h3 align="center">Count V: Breach of Express Warranty</h3>

<h3 align="center">(on behalf of Plaintiff and the Nationwide Class)</h3>

119.    Plaintiff incorporates by reference each and every factual allegation set forth above.

120.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.

121.    As alleged above, when selling High-Speed Memory, Corsair issued written warranties by representing that the products would run out of the box at the advertised speeds, and would do so reliably.  This was an affirmation of fact about the products and a promise relating to the goods.

122.    This warranty was part of the basis of the bargain and Plaintiff and class members relied on this warranty.

123.    The High-Speed Memory Products breached this warranty because attempting to achieve the advertised speed requires altering computer firmware, and a substantial portion of the products do not run at the advertised speed or do not do so reliably.

124.    Corsair's breach was a substantial factor and a proximate cause in causing damages and losses to Plaintiff and the class.

125.    Plaintiff and class members were injured as a direct and proximate result of Corsair's conduct because (a) they would not have purchased Corsair High-Speed Memory if

Class Action Complaint                                                                    Case No.

they had known that Corsair would breach its warranty; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Corsair's false warranty.

126.    Plaintiff is contemporaneously providing notice to Corsair (together with notice of other violations alleged here) that Corsair has breached the warranties described above.

### Count VI: Negligent misrepresentation
### (on behalf of Plaintiff and the Nationwide Class)

127.    Plaintiff incorporates by reference the facts alleged above.

128.    Plaintiff alleges this claim individually and on behalf of the proposed Nationwide Class.

129.    Through its ads, Corsair represented to Plaintiff and class members that its High-Speed Memory would run at the specified speed out of the box, and do so reliably.  Corsair's ads omitted any warning that the High-Speed Memory may not run at the advertised speed or may not do so reliably.

130.    Corsair's representations were false, because trying to get the advertised speed requires altering the PC firmware.  And there is a substantial risk that the memory will not achieve the advertised speed or will not run stably.

131.    At the time Corsair made the above misrepresentations, it knew or should have known that they were false.  Corsair had no reasonable grounds for believing its representations were true when made.

132.    Corsair intended that Plaintiff and class members rely on these representations and omissions, and Plaintiff and class members read and reasonably relied on them when purchasing High-Speed Memory.

133.    Corsair's affirmative promises, as alleged above, created a duty to disclose material and important qualifications about the performance of its High-Speed Memory.  Corsair had a duty to disclose material, qualifying information because: (1) Corsair affirmatively made partial representations about the speed of its memory, but also suppressed, concealed, or did not disclose facts that qualify those representations; and (2) Corsair had exclusive knowledge of

26

Class Action Complaint                                           Case No.

overclocking facts not known to the consumer, as alleged above, and it was difficult to discover that information because it involved complex technical information that was not readily apparent at the time of purchase.  Corsair was in a superior position to know this information, as the maker and seller of its High-Speed RAM.

134.    Corsair's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of class members.

135.    Plaintiff and class members were injured as a direct and proximate result of Corsair's conduct because (a) they would not have purchased Corsair High-Speed Memory if they had known the truth about Corsair's misrepresentations and omissions; and (b) they overpaid for High-Speed Memory products because they are sold at a price premium, due to Corsair's misrepresentations and omissions.

## **Jury Demand**

Plaintiff demands a jury trial on all issues so triable.

## **Prayer for Relief**

Plaintiff seeks the following relief for himself and the proposed class:

a)  An order certifying the asserted claims, or issues raised, as a class action;

b)  A judgment in favor of Plaintiff and the proposed class;

c)  Damages, including statutory and punitive damages where applicable;

d)  Restitution;

e)  Disgorgement, and other just equitable relief;

f)  Pre- and post-judgment interest;

g)  An injunction as allowed by law;

h)  Reasonable attorneys' fees and costs, as allowed by law;

i)  Any additional relief that the Court deems reasonable and just.

27

Class Action Complaint                                                                                    Case No.

1    Dated: January 14, 2022                    Respectfully submitted,

2                                               By: */s/ Jonas Jacobson*

3                                               Jonas Jacobson (Cal. Bar No. 269912)
4                                               jonas@dovel.com
                                                Simon Franzini (Cal. Bar No. 287631)
5                                               simon@dovel.com
                                                DOVEL & LUNER, LLP
6                                               201 Santa Monica Blvd., Suite 600
7                                               Santa Monica, California 90401
                                                Telephone: (310) 656-7066
8                                               Facsimile: (310) 656-7069

9                                               Kevin Kneupper, Esq. (CA SBN 325413)
10                                              kevin@kneuppercovey.com
                                                A. Cyclone Covey, Esq. (CA SBN 335957)
11                                              cyclone@kneuppercovey.com
                                                KNEUPPER & COVEY, PC
12                                              17011 Beach Blvd., Ste. 900
13                                              Huntington Beach, CA 92647-5998
                                                Tel: (512) 420-8407
14
15                                              *Attorneys for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28

28

Class Action Complaint                                                    Case No.