IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO MCKINNEY, and CLINT SUNDEEN, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CORSAIR GAMING, INC.,<br><br>Defendant. | Case No. 22-cv-00312-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

Plaintiffs Antonio McKinney and Clint Sundeen allege that Defendant Corsair Gaming, Inc.'s ("Corsair") packaging of and advertisements for its computer memory cards contain deceptive and misleading statements, in violation of the common law and the consumer protection laws of California and 43 other states.  FAC ¶¶ 76-140.  Before the Court is Corsair's Motion to Dismiss the First Amended Complaint ("MTD") (dkt. 27). The Court GRANTS the motion to dismiss as to (1) claims based on advertisements, (2) omissions claims, (3) equitable claims, (4) negligent misrepresentation claims, and (5) class claims with respect to products they did not purchase.  The Court DENIES the motion as to (1) misrepresentation claims based on statements on the packaging, (2) breach of express warranty claims, and (3) class claims brought under the laws of other states.

## I.      BACKGROUND

### A.      The Parties

Plaintiffs McKinney and Sundeen are citizens of California who purchased Corsair memory products.  FAC ¶¶ 6-7, 56, 59.  Plaintiffs bring this putative class action on behalf of themselves and all consumers who purchased Corsair's high-speed memory products in

the United States.  FAC ¶ 5.

Defendant Corsair is a company headquartered in California and incorporated in Delaware, and it sells "premium, high-speed computer memory." FAC ¶¶ 1, 9.

### B.    The First Amended Complaint

Plaintiffs allege the following.  Corsair's "flagship" products are its high-speed computer memory sticks.  FAC ¶ 14.  These memory sticks function when they are plugged into the memory slots of a PC.  Id.  In its advertisements and on its packaging, Corsair lists a speed rating that signifies "how fast the memory can transfer data," measured in Megahertz (MHz).  Id. ¶ 15.  The higher the number of MHz, the faster the memory (and the PC) performs.  Id.  Corsair markets these memory sticks to computer gamers who want to improve game performance, and sells the products in physical stores, through online vendors, and on its website.  Id. ¶¶ 13, 19.  Both Plaintiffs bought Corsair products that displayed a speed of 3200 MHz on the packaging.  FAC ¶¶ 56-59.  Plaintiffs also intend to represent a nationwide class of consumers who purchased Corsair memory products with other speeds advertised on the packaging.  FAC ¶¶ 29, 62.

Nothing on the packaging or inside the packaging qualifies the listed speed.  Id. ¶ 18.  Corsair advertises the MHz listing on its physical product packaging, and its online advertisements also make claims highlighting the speed and reliability of its memory products.  Id. ¶¶ 19, 23.  Plaintiffs include sample advertisements for Corsair memory products and allege that Corsair made specific statements in these online ads.  Id. ¶¶ 20-23.

In their complaint, Plaintiffs seem to state two different theories for their claims: an "out-of-the-box" theory and a "substantial risk" theory.

#### 1.    Out-of-the-Box Theory

Plaintiffs allege that the representations of a specific speed indicate to reasonable consumers that the memory will run at the stated speed out of the box, i.e., after being plugged into a computer without additional action by the consumer.  Id. ¶¶ 24-25.  This makes sense because, when consumers buy a new computer, the memory comes preinstalled and runs at the promised speed.  Id. ¶ 27.  Further, when aftermarket memory

(which is bought to add to or replace an existing PC's memory) is advertised to run at "common, standard speeds," it runs at the stated speed reliably and out of the box.  Id.

But Plaintiffs allege that Corsair's 3200 MHz memory sticks do not operate at the advertised speed out of the box.  Id. ¶¶ 25, 29-30.  They allege that the memory runs at only 2133 MHz—the standard operating speed for PC memory—and it may never achieve the advertised speed depending on the computer platform.  Id. ¶¶ 27, 29-32.[1]

## 2. Substantial Risk Theory

Plaintiffs' second theory is that, when consumers optimize their system to run the memory, there is a substantial risk that the memory still does not work reliably.  Corsair advertises that the memory products are "'optimized' for overclocking on the latest Intel and AMD motherboards."  Id. ¶ 23.  "Overclocking" refers to running computer components (like memory) at higher than standard speeds.  Id.  Overclocking requires adjusting a computer's Basic Input/Output System (BIOS) or Unified Extensible Firmware Interface (UEFI) settings, which on many computers are accessible only by "restarting the computer and repeatedly pressing a designated keyboard button . . . during a brief window of time after the computer turns on."  Id. ¶¶ 33, 34.

But Plaintiffs allege that the process of "overclocking" is not reliable.  Id. ¶¶ 32-33. There is a "substantial risk that the user's particular combination of other computer components . . . simply cannot support overclocking at the advertised speed."  Id. ¶ 42.  A blog post on Corsair's website authored by a Corsair employee admits that the ability to achieve high speeds through the process of overclocking is a "lottery."  Id. ¶ 32. Additionally, overclocking "poses material risks to the functionality of the computer system, as well as to the memory sticks themselves."  Id. ¶ 39.  If the combination of components in a particular PC does not support running at high speeds, "the memory will not run at the advertised speed or it will run unstably (causing software glitches or system

---

[1] However, consumers do not necessarily observe that the computer is not running at the high speed promised by Corsair.  Compl. ¶¶ 30, 33.  For example, Sundeen did not know to take any action (such as overclocking) to speed up the memory, so his computer ran at the standard speed for years after he plugged in his Corsair memory stick.  Id. ¶ 60.

crashes)." Id. ¶ 42.  This is because "memory interacts with other components in complex ways and overclocking is sensitive to this." Id.

McKinney altered his BIOS settings soon after plugging in the Corsair memory stick. Id. ¶ 57.  However, it still did not run stably at the advertised speed. Id.  When Sundeen discovered that he needed to adjust his BIOS to achieve the advertised speed and attempted to do so, his computer crashed. Id. ¶ 60.

### 3.    Plaintiffs' Claims

Plaintiffs allege that they were injured by Corsair's false statements and material omissions on its packaging and in advertisements. Id. ¶¶ 49-54.  They allege that they would not have bought (or would not have paid the same price for) the product had they known that it did not run reliably at the stated speed. Id. ¶¶ 57, 60.  Further, Plaintiffs allege that Corsair knows "the truth" that overclocking is unreliable, and "knows that the statements on its packaging and ads are false and misleading to reasonable consumers." Id. ¶ 55.  Plaintiffs also allege that "Corsair intends that consumers will rely on these false and misleading statements when purchasing High-Speed Memory." Id.

Plaintiffs assert claims based on (1) the State Consumer Protection Acts of 44 separate states (including California); (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) California's False Advertising Laws ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (4) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (5) breach of express warranty; and (6) negligent misrepresentation. Id. ¶¶ 76-140.  Corsair moves to dismiss and requests judicial notice of six exhibits. See MTD; RJN (dkt. 27-1 through 27-8).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted.  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up).  A complaint must plead "sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (cleaned up). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> When evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987). "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).

Claims for fraud must meet the pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (cleaned up). "This means that averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." <u>In re Google Assistant Priv. Litig.</u>, 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021) (internal quotations omitted).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." <u>Leadsinger, Inc. v. BMG Music Pub.</u>, 512 F.3d 522, 532 (9th Cir. 2008).

United States District Court
Northern District of California

## III.   DISCUSSION

The Court will first address Corsair's request for judicial notice.  Then, the Court will address Corsair's arguments in the following order with respect to its motion to dismiss: (1) applicability of Rule 9(b); (2) challenges to the misrepresentation claims; (3) challenges to the omissions claims; (4) challenges to claims for equitable relief; and (5) applicability of the economic loss rule.  Finally, the Court will address Corsair's argument that Plaintiffs lack standing to assert class claims under the laws of other states and to assert class claims as to products other than the 3200 MHz memory card they bought.

### A.   Request for Judicial Notice

Corsair requests that the Court take judicial notice of six exhibits containing copies of online webpages.  RJN at 2-3; Lynch Decl. (dkt. 27-2) at 2-4, Exs. A-F.  Plaintiffs do not oppose.

Exhibits A and B are copies of the product page for the "DOMINATOR PLATINUM RGB" with the "TECH SPECS" and "OVERVIEW" tabs selected, respectively.  Lynch Decl. ¶¶ 2-3.  Exhibit C is a copy of a the "Help Page" on Corsair's website pertaining to "Memory" help.  Id. ¶ 4.  Exhibit D is a copy of the "FIND BY COMPATIBILITY" page on Corsair's website, as well as pages generated by making selections in various fields on that webpage.  Id. ¶ 5.  Exhibit E is a copy of the "Intel Extreme Memory Profile (Intel XMP)" page on Intel's website.  Id. ¶ 6.  Exhibit F is a copy of the "Computer Memory Finder" page on Newegg's website, as well as pages generated by making selections in various fields on that webpage.  Id. ¶ 7.

Courts may take judicial notice of facts that are "not subject to reasonable dispute" because they (1) are "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Matters of public record may be judicially noticed, but disputed facts contained in those records may not.  Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).  Courts may also consider material under the incorporation-by-reference doctrine.  Eidmann v. Walgreens Co., 522

1   F.Supp.3d 634, 641 (N.D. Cal. 2021).  A document may be incorporated by reference if

2   "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim;

3   and (3) no party questions the authenticity of the document."  Id. (quoting U.S. v.

4   Corinthian Colls., 655 F.3d 984, 999 (9th Cir. 2011)).

5        Here, Plaintiffs explicitly cite to the product webpage copied in Exhibits A and B as

6   a source of Corsair's deceptive advertising.  FAC ¶¶ 22-24.  Plaintiffs also cite to

7   information on Intel's website about Intel's XMP setting and warranty in explaining the

8   risks of overclocking.  Id. ¶¶ 38-40.  Thus, the complaint necessarily relies on the

9   webpages, they are central to Plaintiffs' claims, and there is no dispute as to their

10  authenticity.  As such, the Court incorporates Exhibits A, B, and E by reference.

11       The three remaining exhibits (Exs. C, D, and F) are publicly accessible webpages

12  on Corsair's website (Exs. C and D) and Newegg's website (Ex. F).  RJN at 5.  Corsair

13  asks that these exhibits should be considered for the fact of their publication, and not their

14  contents.  Id.  Plaintiffs do not dispute the authenticity of these webpages and do not

15  oppose.  Thus, the Court also grants Corsair's request with respect to these exhibits.

16       **B.    Motion to Dismiss**

17       Corsair moves to dismiss Plaintiffs' claims on the grounds that Plaintiffs: (1) fail to

18  comply with Rule 9(b), (2) fail to plausibly allege their misrepresentation claims, (3) fail to

19  plausibly allege their omission claims, (4) cannot ask for equitable relief in addition to

20  remedies at law, and (5) cannot recover in tort for purely economic losses.

21            **1.    Rule 9(b)**

22       Under Rule 9(b), claims "sounding in fraud" or alleging "circumstances constituting

23  fraud" must be pleaded with "heightened particularity."  Fed. R. Civ. P. 9(b); Vess v. Ciba-

24  Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  The heightened standard

25  requires a plaintiff to set forth the "who, what, when, where and how" of the claim.

26  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  Pleadings must "be specific enough

27  to give defendants notice of the particular misconduct . . . so that they can defend against

28  the charge and not just deny that they have done anything wrong."  Vess, 317 F.3d at 1106.

United States District Court
Northern District of California

7

If claims under the UCL, FAL, and CLRA specifically allege fraud, or allege facts that constitute fraud—even if the word fraud is not used—the claims are subject to the heightened standard.  See id. at 1103, 1106; Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically held that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").  The elements of fraud in California are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage."  Kearns, 567 F.3d at 1126 (citations and emphasis omitted).

### a.    Applicability

Corsair argues that all of Plaintiffs' claims "sound in fraud," and as such they are subject to Rule 9(b)'s heightened pleading standards for fraud claims.  MTD at 5-6.

The Court agrees that most of Plaintiffs' claims sound in fraud and are subject to Rule 9(b).  Plaintiffs allege that Corsair's packaging and ads fail to disclose that the advertised speed is not the default speed, and that to achieve the advertised speed requires altering computer firmware.  FAC ¶¶ 50-52.  Plaintiffs further allege that Corsair knows "what its packaging and ads say (and omit)," and that Corsair intends for consumers to rely on its packaging and advertisements.  Id. ¶ 55.  Plaintiffs also allege that consumers reasonably rely on the advertised speeds, and that their reliance causes them economic harm.  Id. ¶¶ 25-28, 56-61.  These allegations state all of the elements of common law fraud, and Plaintiffs expressly incorporate these allegations into to every claim.  MTD at 3; FAC ¶¶ 76, 85, 98, 107, 124, 132.  Plaintiffs emphasize that they assert non-fraud claims in the alternative.  Opp. at 8; see FAC ¶¶ 102, 117, 136.  Each claim contains alternative language that Corsair "'should have known through the exercise of reasonable care' that its statements were deceptive," and thus they do not "rely entirely" on fraudulent conduct for their claims.  Id.

Notwithstanding the alternative language, the Court concludes that, if allegations of fraud were stripped from the FAC, there would be little left of the UCL, FAL, and CLRA

claims.  MTD at 5.  Plaintiffs allege that Corsair knew that it was a "lottery" as to whether their products would ever achieve the advertised speed, relying on a blog post written by a Corsair employee.  FAC ¶¶ 32, 52.  Plaintiffs further allege that Corsair's own marketing reflects that speed is a "primary factor" for consumers in determining price and purchase decisions.  Id. ¶ 53.  To take away these allegations would leave little basis for the focus of the claim: that Corsair charges a price premium for high-speed memory even though it knows the memory cannot achieve that speed.  See id. ¶ 54.

Still, Plaintiffs adequately plead in the alternative with respect to their negligent representation claim.  Stripping the averments of fraud leaves allegations that Corsair should have known what reasonable consumers expect based on listed speeds on memory products.  These allegations satisfy Rule 8.  Similarly, Plaintiffs' breach of express warranty claims are subject only to Rule 8, and they are also plausibly pleaded.[2]

Thus, the Court holds that Plaintiffs' FAL, UCL, and CLRA claims must meet heightened Rule 9(b) standards, but that the negligent misrepresentation claims and breach of express warranty claims need only conform to Rule 8.

### b.      Sufficiency under Rule 9(b)

"To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'"  Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 964 (9th Cir. 2018).

Corsair contends that Plaintiffs fail to meet this heightened standard as to their

---

[2] Corsair challenges the breach of warranty claim on one other basis, arguing that Plaintiffs' common law claims must be dismissed for failing to specify "which laws apply," citing In re Static Random Access Memory (SRAM) Antitrust Litigation, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008).  MTD at 16, n.15.  In that case, the court dismissed unjust enrichment class claims in part because the defendant showed that the unjust enrichment law "varies widely from State to State."  In re SRAM Antitrust Litigation, 580 F. Supp. 2d at 910.  As such, the court concluded that defendants could not have adequate notice of the claims without further specification of which states' laws the plaintiffs' relied upon.  Id.  Corsair has made no such showing that the law for negligent misrepresentation and breach of express warranty varies widely between the states, and in the absence of other authority, the Court declines to dismiss these claims.

United States District Court
Northern District of California

allegations regarding online advertising (as opposed to the statements on the packaging). Id. Specifically, Corsair argues that Plaintiffs do not identify which online ads they viewed, when they saw those ads, what products the ads featured, whether the ads referenced overclocking, or whether the ads were on Corsair's website or third-party sites. MTD at 6. Plaintiffs allege that the statement they relied on was the "3200 MHz" speed designation on the packaging and "in Corsair's online ads." Opp. at 5-6; FAC ¶¶ 56, 59.

Plaintiffs plead with particularity as to the statements on the packaging, but not as to the online advertisements. As to the advertising, Plaintiffs fail to allege where exactly they viewed Corsair's purportedly deceptive advertisements, stating generally that they relied on "Corsair's online ads." FAC ¶¶ 56, 59; Opp. at 5-6. And to the extent that Plaintiffs saw and relied on third-party advertisements, they cannot state a claim against Corsair because they fail to attribute those statements to Corsair. See Beyer v. Symantec Corp., 333 F. Supp. 3d 966, 975 (N.D. Cal. 2018) (dismissing the claim because the plaintiff did not allege that statements viewed on Best Buy's website were attributable to Symantec). Thus, absent an allegation that Plaintiffs specifically viewed ads on Corsair's website or that the ads Plaintiffs viewed on third-party websites are attributable to Corsair,[3] Plaintiffs' allegations about advertising are not sufficient to meet Rule 9(b).

As to the statements on the packaging, Plaintiffs allege their claims with particularity. Plaintiffs sufficiently allege that they relied on the speed designation (what) made by Corsair (who) contained on its packaging (where) in or around December 2018 and July 2019 (when). FAC ¶¶ 56-61. Corsair's products failed to achieve the advertised speeds. Id. ¶ 60. Plaintiffs allege that the speeds listed on the packaging are false or misleading because reasonable consumers would believe that the listed speeds are achievable out of the box and that the speeds may be achieved reliably across platforms.

---

[3] In their Opposition, Plaintiffs attempt to retroactively attribute third-party advertisements to Corsair by stating that the statements were made on third-party sites "with Corsair's permission." Opp. at 5. This allegation appears nowhere in the FAC. Though Plaintiffs do allege that the purportedly false statements appear on a product listing found in the "Corsair Store" on Amazon, Plaintiffs still fall short of alleging with particularity that Corsair is responsible for statements found on third-party sites. FAC ¶ 20.

Id. ¶ 25.  Plaintiffs further allege that Corsair memory sticks do not achieve the advertised speeds out of the box.  Id. ¶ 29.  Thus, Plaintiffs sufficiently allege what is false about the statement and why it is false.

***

In sum, the Court holds that Plaintiffs must meet Rule 9(b) particularity with respect to their FAL, UCL, and CLRA claims, and they fail to do so for their allegations about Corsair's advertisements.  As such, the Court GRANTS the motion to dismiss with respect to all claims based on allegations about advertisements.

### 2.    Misrepresentation

Corsair argues that Plaintiffs fail to plausibly allege that reasonable consumers would be deceived by the statements on Corsair's packaging.  See MTD at 2-3, 6-9, 10-12.[4]  The Court disagrees.

In analyzing deceptive labeling claims under the UCL, FAL, and CLRA, courts consider whether a "reasonable consumer" would likely be deceived.  Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)).  "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled.'"  Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016)).  The California Supreme Court has recognized "that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  Williams, 552 F.3d at 938 (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 450 (2002)) (internal

---

[4] Corsair includes separate arguments as to the "out-of-the-box" and "substantial risk" theories.  However, in their Opposition, Plaintiffs do not really distinguish between these two theories.  See generally Opp.  At least as currently alleged, the Court does not see a relevant distinction between (1) the theory that Corsair misrepresented the speed that the memory can achieve out of the box; and (2) the theory that Corsair misrepresented whether there is a substantial risk that the memory can reliably and safely achieve that speed after overclocking.  For this reason, the Court considers these theories together.

quotations omitted).

Generally, the question of whether a business practice is deceptive presents a question of fact not suitable for resolution on a motion to dismiss. See id. However, the court may in certain circumstances consider the viability of the alleged consumer law claims based on its review of the product packaging. See Werbel v. Pepsico, Inc., 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010). "Thus, where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." Id. (citing Sugawara v. Pepsico, Inc., 2009 WL 1439115, at *3-4 (E.D. Cal. May 21, 2009)) (finding that the packaging for Cap'n Crunch cereal and its use [of] the term "Crunch Berries" was not misleading); Videtto v. Kellogg USA, 2009 WL 1439086, at *2 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that "Froot Loops" cereal contained "real, nutritious fruit"); McKinnis v. Kellogg USA, 2007 WL 4766060, at *3-4 (C.D. Cal. May 21, 2007) (same).

First, Corsair argues that reasonable consumers would not be misled by the 3200 MHz speed because the "reasonable consumer" test should ask what is reasonable to a "targeted group" of consumers, rather than to the general public. Opp. at 7. Corsair cites to Lavie v. Proctor & Gamble Co., 105 Cal. App. 4th 496, 512 (2003) for the proposition that the reasonable consumer test can be adapted to a targeted group. MTD at 6-7. Corsair argues that consumers of their high-end memory products are more sophisticated than ordinary memory consumers and would not construe listed speeds as literal out-of-the-box speeds. See id.; FAC ¶ 27.

But the question of whether Corsair's "target audience . . . understood the interactive nature of components and the importance of proper setup and compatibility" is a factual one. MTD at 8-9. Lavie held that "[where a party] contends that a more vulnerable [or more sophisticated] subgroup is the true target of . . . an advertisement, a question of fact is presented." 105 Cal. App. 4th at 494; see also Asis Internet Servs. v. Subscriberbase Inc., 2010 WL 1267763 at *2 & n.2 (N.D. Cal. Apr. 1, 2010) (similar).

1    The inquiry into whether a targeted reasonable consumer standard should apply is not yet

2    appropriate for decision.  At this time, the Court must evaluate Plaintiffs' allegations from

3    the perspective of a reasonable consumer.

4          Next, Corsair argues that Plaintiffs' references to online comments do not show that

5    "significant numbers o[f] consumers, behaving reasonably, are likely to be deceived."

6    MTD at 9.  But the online comments are not the only bases upon which Plaintiffs allege

7    deception.  Plaintiffs allege that a reasonable consumer would assume the listed speed is

8    the default, out-of-the-box speed because (1) it is the plain meaning of the listed speed; (2)

9    a preassembled computer that arrives running at the "stated speed" of the installed

10   memory; and (3) aftermarket standard-speed memory runs at the stated speed out of the

11   box.  FAC ¶¶ 25-27.  These allegations are all plausible.

12         Corsair also argues that other statements on its packaging put reasonable consumers

13   on notice about the need for overclocking and that the memory might not run consistently

14   across all systems.  Corsair points out that the product's packaging states "Intel® XMP

15   Certified," a designation that Plaintiffs admit "requires altering the BIOS."  MTD at 8

16   (citing FAC ¶¶ 17, 21, 38).  But a representation that signifies a product is "certified" to

17   operate with a certain configuration of settings does not necessarily defeat a reasonable

18   consumer's belief that the product will operate at the stated speed out of the box.  If a

19   typical consumer is unaware of the need to overclock at all, she is also likely unaware of

20   the meaning of "Intel® XMP Certified" as noted on packaging.  Opp. at 11; see Anderson

21   v. Apple, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020) (holding that Apple failed to support

22   its contention that reasonable consumers would understand that the language "Gigabit-

23   class LTE" versus "LTE Advanced" necessarily denoted a difference in cellular antenna

24   used and resulting cellular capabilities).

25         Finally, Corsair points to other statements as to specifications on its website and

26   advertisements that it contends put consumers on notice that functionality is not guaranteed

27   across systems or out of the box.  MTD at 8.  Plaintiffs argue in response that if statements

28   on the packaging are misleading, "the problem is not cured by a disclosure somewhere

United States District Court
Northern District of California

13

other than" the packaging.  See Elgindy v. AGA Serv. Co., 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) (citing Williams, 552 F.3d at 940 (stating that reasonable consumers should not "be expected to look beyond misleading representations on the front of the box to discover the truth . . . in small print on the side")).  Additional information elsewhere disclosing (1) the actual default speed, (2) requirements to overclock, and (3) system compatibility requirements do not cure the alleged misrepresentation of the stated speed on the packaging.

Corsair interprets Plaintiffs' "substantial risk" theory as a claim that the memory products have a defect because they fail or cause instability.  MTD at 3, 11.  But Plaintiffs insist that this misunderstands their theory: they seek relief based only on the basis of misrepresentations, not a defect.  Opp. at 13.  That is, Plaintiffs' substantial risk theory seems to be that, even for consumers who do take the additional step of overclocking, there is a "substantial risk" that the memory still does not run correctly and at the advertised speed.  While it remains somewhat unclear how this theory of liability is distinct from the out-of-the-box theory, the Court concludes that it too is plausibly pleaded.

Accordingly, the Court DENIES Corsair's motion to dismiss with respect to the misrepresentation claims related to statements on the packaging.

### 3. Omission

Corsair also argues that the omissions claims fail because Plaintiffs have not alleged that Corsair had a duty to disclose any qualifying information.  See MTD at 9-10, 12-13.  The Court agrees that the claims fail for this reason.

To plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose."  Anderson, 500 F. Supp. 3d at 1012 (quoting Hodsdon v. Mars, Inc., 891 F.3d 857, 861 (9th Cir. 2018)).  The phrase "contrary to a representation actually made by the defendant" is also known as a "partial omission."  See Anderson, 500 F. Supp. 3d at 1013.  Thus, a duty to disclose may be "triggered" by affirmative representations.  See Hodsdon, 891 F.3d at 863 (quoting Rutledge v. Hewlett-Packard Co,

238 Cal. App. 4th 1164, 1176 (2015)).  The other type of omission implies a freestanding obligation to disclose, regardless of whether the defendant makes any misleading representation (a so-called "pure omissions" claim).  See Anderson, 500 F. Supp. 3d at 1012.  Plaintiffs allege one of each variety: (1) a partial omissions claim on the basis of Corsair's partial representations about the memory speed; and (2) a pure omissions claim on the basis of Corsair's exclusive knowledge of the facts that overclocking was necessary for its product to operate correctly.  FAC ¶¶ 82, 89, 101, 113, 138.

The law concerning a defendant's duty to disclose in a fraudulent omissions case is "marked by general disarray."  In re Toyota RAV4 Hybrid Fuel Tank Litig., 534 F. Supp. 3d 1067, 1101 (N.D. Cal. 2021).  Under one approach, a defendant has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, "central to the product's function," and the plaintiff alleges one of the four LiMandri factors.  Id. at 1102.  The LiMandri factors are as follows: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts.  LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997).  Under a separate approach, a defendant has a duty to disclose when the plaintiff alleges either: (1) the defect relates to an unreasonable safety hazard; (2) the defect is material and related to the product's central function; or (3) the presence of one of the four LiMandri factors.  In re Toyota, 534 F. Supp. 3d at 1102.

This Court recently decided on the first approach outlined (i.e., that in addition to the LiMandri factors, a plaintiff must allege materiality and that the defect was central to the product's function).  See Hammerling v. Google LLC, 2022 WL 2812188 (N.D. Cal. July 18, 2022).  First, it appears that the Ninth Circuit adopted the first approach in Hodsdon v. Mars, Inc., 891 F.3d 857 (9th Cir. 2018).  Id. at 863 (stating that the defendant did not have a duty to disclose because the plaintiffs failed to plead "a crucial element . . . that the defect must relate to the central functionality of the product").

Second, post-<u>Hodsdon</u>, the Ninth Circuit and a majority of district courts have applied the first approach.  <u>See, e.g.</u>, <u>Sud v. Costco Wholesale Corp.</u>, 731 F. App'x 719, 720 (9th Cir. 2018); <u>In re Apple Inc. Device Performance Litig.</u>, 386 F. Supp. 3d 1155, 1176 (N.D. Cal. 2019); <u>Beyer v. Symantec Corp.</u>, 333 F. Supp. 3d 966, 979–80 (N.D. Cal. 2018); <u>Anderson</u>, 500 F. Supp. 3d at 1014; <u>Ahern v. Apple</u>, 411 F. Supp. 3d 541, 567 (N.D. Cal. 2019).

Applying this approach, both omissions claims fail because Plaintiffs do not allege a defect that is central to the product's function.  Surprisingly, Plaintiffs' concede that they do not plead any defect at all.[5]  Opp. at 13.  The Court therefore GRANTS the motion to dismiss the omission claims.

### 4.   Equitable Claims

Corsair next argues that Plaintiffs' claims for equitable relief under the CLRA, UCL, and FAL should be dismissed because <u>Sonner v. Premier Nutrition Corp.</u>, 971 F.3d 834, 844 (9th Cir. 2020) precludes courts from entertaining equitable claims when an adequate legal remedy exists.  MTD at 13-14.  Plaintiffs argue that they have pleaded in the alternative and that <u>Sonner</u> does not apply at the pleading stage.  Opp. at 14-15.

In <u>Sonner</u>, the Ninth Circuit held that the plaintiff's request for restitution under the UCL and the CLRA should be dismissed because "the operative complaint [did] not allege that [the plaintiff] lack[ed] an adequate legal remedy."  971 F.3d at 844.  The court further explained that because the plaintiff "fail[ed] to explain how the same amount of money for the exact same harm [was] inadequate or incomplete . . . [it] fail[ed] to establish that [it] lack[ed] an adequate remedy at law," making the dismissal of "[plaintiff's] claims for equitable restitution under the UCL and CLRA" appropriate.  <u>Id.</u>  Therefore, "[u]nder <u>Sonner</u>, plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law" before being awarded restitution under the UCL and CLRA.  <u>See Anderson v.</u>

---

[5] The Court notes that Plaintiffs might be able to properly allege a duty to disclose, if they sufficiently allege that the omitted fact goes to a defect (that the memory does not achieve the higher memory speed) and that this defect is material and central to the memory's function.

1    Apple Inc., 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020).

2         Although Plaintiffs can pursue equitable claims in the alternative to legal remedies,

3    they are still required to explain how, or plead that, the legal remedies are inadequate.[6]

4    See Sonner, 971 F.3d at 844; Anderson, 500 F. Supp. 3d at 1009.  Because Plaintiffs have

5    not pleaded that damages are inadequate, the Court GRANTS Corsair's motion to dismiss

6    the request for equitable relief.

7                    **5.    Economic Loss Rule**

8         Corsair further argues that Plaintiffs' negligent misrepresentation claims should be

9    dismissed because they are premised on Plaintiffs' disappointed economic expectations

10   arising from sales transactions.  MTD at 14.  Plaintiffs respond that the economic loss rule

11   does not apply when "an independent duty arising from tort law is violated," and that

12   "when a [d]efendant induces a plaintiff to enter into a contract by misrepresenting a

13   product, that 'is a tort independent of the breach.'"  Opp. at 15 (quoting Robinson

14   Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004)).  Corsair argues that the

15   Robinson Helicopter exception applies only where the fraud results in physical injury.  See

16   Reply at 11 (dkt. 33).

17        Indeed, there does appear to be a split among district courts in the Ninth Circuit

18   about Robinson Helicopter's application to claims where there is no physical injury.  See

19   Broomfield v. Craft Brew All., Inc., No. 17-cv-01027, 2017 WL 3838453 at *9 (N.D. Cal.

20   Sept. 1, 2017) (discussing the split).  As noted by Judge Hamilton, "[p]art of the confusion

21   stems from an unpublished Ninth Circuit opinion holding, without any discussion of the

22   case, that Robinson Helicopter permits economic losses for a negligent representation

23   claim."  Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC, 2020 WL 3869195

24   (N.D. Cal. July 9, 2020) (citing Kalitta Air, LLC v. Cent. Texas Airborne Sys., Inc., 315

25   Fed. App'x 603, 607 (9th Cir. 2008)).  In Kalitta Air, the Ninth Circuit held that

26

27   _____

     [6] Sonner concerned claims for restitution, and did not examine whether the same principles

28   apply to injunctive relief.  Courts examining Sonner have since held that Sonner applies to
     claims for injunctive relief.  See Zeiger v. WellPet LLC, 526 F. Supp. 3d 652, 686-87
     (N.D. Cal. 2021).

United States District Court
Northern District of California

"California law classifies negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable." 315 Fed. App'x at 603 (citation omitted).  Courts are more likely to apply the more expansive <u>Kalitta Air</u> exception to the economic loss rule when negligent misrepresentation claims "sound[] more in deceit/fraud than negligence." <u>E.g.,</u> <u>Bret Harte Union High Sch. Dist. v. Fieldturf, USA, Inc.,</u> 2016 WL 3519294 at *4-5 (E.D. Cal. June 27, 2016) (citations omitted).

This Court has elsewhere endorsed the narrower interpretation of <u>Robinson</u> <u>Helicopter</u> that would preclude Plaintiffs here from recovering tort damages for negligent misrepresentation.  In <u>Kum v. Mercedez-Benz USA, LLC</u>, 2021 WL 2682336 at n.4 (N.D. Cal. June 30, 2021), this Court recognized that <u>Robinson Helicopter's</u> "holding was 'narrow in scope, and limited to a defendant's affirmative misrepresentations on which a plaintiff relies <u>and which expose a plaintiff to liability for personal damages independent</u> <u>of the plaintiff's economic loss.</u>'" <u>Id.</u> (quoting <u>Robinson Helicopter,</u> 34 Cal. 4th at 993) (emphasis added).  Under this reasoning, Plaintiffs are barred from recovery because they do not allege personal injury or exposure to liability.  Especially given the Court's earlier conclusion that Plaintiffs' negligent misrepresentation claims do not sound in fraud (and are subject only to Rule 8), the Court holds that the exception to the economic loss rule does not apply here.

The Court therefore GRANTS Corsair's motion to dismiss the negligent misrepresentation claims.[7]

## C.    Motion to Strike for Lack of Standing

Finally, Corsair argues that Plaintiffs' class allegations should be partially stricken because Plaintiffs lack standing to bring claims on behalf of a class.  First, Corsair argues

---

[7] Sundeen's negligent misrepresentation claim also fails for an additional reason: it is barred by the statute of limitations.  Corsair cites to <u>Ferguson v. JPMorgan Chase Bank, N.A.,</u> 2014 WL 2118527 at *6-7 (E.D. Cal. May 21, 2014), which held that negligent misrepresentation claims "based in fraud" are subject to a three-year statute of limitations period, while those based on failure to meet a standard of reasonable care are subject to a two-year limitations period.  Given that Sundeen alleges that he purchased his Corsair product in 2018, the statute of limitations period is expired in either case.  FAC ¶ 59.  Plaintiffs do not respond to this argument.

United States District Court
Northern District of California

that <u>Mazza v. American Honda Motor Co., Inc.</u>, 666 F.3d 581, 587, 589-90 (9th Cir. 2012) held that, because California's consumer laws differ from those in other states, plaintiffs cannot bring claims arising under the laws of states where the representative neither resides nor suffered injury.  <u>Id.</u>  Second, Corsair argues that Plaintiffs lack standing to assert claims involving products different from the 3200 MHz memory card they themselves purchased.  <u>Id.</u> at 16.

### 1.    Other States' Consumer Laws

First, Corsair argues that Plaintiffs cannot represent a class of out-of-state consumers bringing claims under other states' laws because those other laws do not apply to Plaintiffs.  <u>See</u> MTD at 15 (citing <u>Mazza</u>, 666 F.3d at 590-91).  Plaintiffs counter with two arguments: (a) this standing inquiry should be deferred until class certification, and (b) even if deciding standing at this stage, <u>Mazza</u> does not excuse Corsair from making its own showing that California law differs materially from other states' consumer laws on the facts of this case.  Opp. at 16-18.  While the Court may analyze the standing issue at the pleading stage, it agrees with Plaintiffs that Corsair has not made a sufficient showing that California law is materially different from other states' laws on the facts of this case.

### a.    Timing of Standing Analysis

Plaintiffs first argue that standing to bring claims on behalf of a nationwide putative class is properly addressed at the class certification stage.  Opp. at 16-17 (citing <u>Melendres v. Arpaio</u>, 784 F.3d 1254, 1261 (9th Cir. 2015)).  Corsair responds that many courts in this district have not adopted Plaintiffs' construction of <u>Melendres</u>.  Reply at 12.

Judge Chen analyzed the issue of when to address standing in <u>In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation</u>, 295 F. Supp. 3d 927, 956 (N.D. Cal. 2018).  Judge Chen, like others in the District, concluded that <u>Melendres</u> does not impose a "per se rule" requiring courts to defer standing analysis until class certification.  <u>See id.</u>; <u>Jones v. Micron Tech. Inc.</u>, 400 F. Supp. 3d 897, 909-10; <u>Phan v. Sargento Foods, Inc.</u>, 2021 WL 2224260 at *12-14 (N.D. Cal. June 2, 2021).  He then reasoned that "case management" concerns help determine whether it is appropriate to

consider standing at the motion-to-dismiss or class certification stage.  In re Chrysler-Dodge-Jeep, 295 F. Supp. 3d at 954 (citing In re Carrier IQ, Inc., 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015)).  Principal among these concerns is the ratio of the "number of consumers from . . . other states" in comparison to the number of named plaintiffs able to bring claims under the laws of those states.  Id.  When the ratio is disproportionately unbalanced, courts risk "subjecting [defendants] to the expense and burden of nationwide discovery."  Id.  Other post-Melendres opinions have also used this case management metric to decide when to analyze standing.  See Hindsman v. General Motors LLC, 2018 WL 2463113 at *15-16 (N.D. Cal. June 1, 2018); Corcoran v. CVS Health Corp., Inc., 2016 WL 4080124 at *2 (N.D. Cal. July 29, 2016) (collecting cases); Kutza v. Williams-Sonoma, Inc., 2018 WL 5886611 at *2-3 (N.D. Cal. Sept. 9, 2018).

The Court agrees that it retains discretion to address questions of standing at either juncture.  See Jones, 400 F. Supp. 3d at 910; In re Carrier IQ, Inc., 78 F. Supp. 3d at 1074. Given that Plaintiffs here seek to represent class members with claims under the state laws of 43 other states, while none of the named Plaintiffs have contacts with any of those states, the Court will consider standing arguments at this stage.

### b.      Standing Analysis Under Mazza

Corsair argues that Plaintiffs lack standing over the out-of-state claims because Mazza held that, as a matter of law, "an actual conflict exists between California's consumer protection laws (including the UCL, FAL, and CLRA) and at least 43 other states' consumer protection laws."  Reply at 13 (quoting McFall v. Perrigo Co., 2021 WL 2327936 at *17 (N.D. Cal. Apr. 15, 2021)).

In Mazza, the Ninth Circuit reversed the district court's decision to certify a nationwide class of Acura car owners represented by Plaintiffs who brought claims under the UCL, CLRA, and FAL.  666 F.3d at 585, 587.  Honda argued that the district court "erred by misapplying California's choice of law rules and certifying a nationwide class under California's consumer protection . . . laws" because the California laws differed from the laws of the 43 other jurisdictions in which class members resided.  Id. at 589,

591.  "To determine whether the interests of other states outweigh California's interest," Mazza applied the "three-step governmental interest test" articulated by the California Supreme Court in Washington Mutual Bank, FA v. Superior Court, 24 Cal. 4th 906, 921 (2001).  Id. at 590.  The first step involves determining "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different."  Id.  Examining Honda's detailed analysis of the other 43 states' laws, the court concluded that the differences between those laws and California's consumer laws were "not trivial or wholly immaterial."  Id. at 591.  Under the governmental interest test, out-of-state class claims had to be governed by the consumer protection laws of the jurisdiction where the transaction took place.  Id. at 594.

The Court agrees with Plaintiffs that Mazza does not obviate the need for a choice-of-law analysis specific to each case.  Opp. at 18 (citing to Bruno v. Eckhart Corp., 280 F.R.D. 540, 547 (C.D. Cal. 2012)).  In Bruno, as here, the Court was examining California consumer protection claims brought under the UCL, FAL, and CLRA.  280 F.R.D. at 543.  Bruno reasoned that Mazza cannot "change the California Supreme Court's express holding that California's choice-of-law analysis requires analyzing various states' laws 'under the circumstances of the *particular* case' and given 'the *particular* [legal] issue in question.'" 280 F.R.D. at 547 (citing Kearney v. Salmon Smith Barney, 39 Cal. 4th 95, 107-08, 45 (2006) (emphasis added)).  Bruno also noted that Mazza itself made clear that "its holding was reached '[u]nder the facts and circumstances of this case.'"  Id. (citing various points in Mazza where the court expressly couched its reasoning as pertaining to "this case").  Courts in this District have agreed.  See In re iPhone 4S Consumer Litig., 2013 WL 3829653 at *9 (N.D. Cal. July 23, 2013); Arroyo v. TP-Link USA Corp., 2015 WL 5698752 at *3 (N.D. Cal. Sept. 29, 2015) (holding that "the ruling in Mazza does not erase the [d]efendants' burden to prove that foreign jurisdiction should apply under the 'governmental interest test'").

Unlike in Mazza, Corsair has not provided a sufficient description of other state laws to meet its burden of showing that Plaintiffs lack standing to bring claims under these

21

other states' laws.  Corsair has presented essentially one page of argument in its motion, but it does not provide detail.  MTD at 15-16.  Corsair may argue this point at a later date.[8]

### 2.      Products Not Bought

Finally, Corsair contends that Plaintiffs lack standing to bring class-wide suit on the basis of memory products other than the 3200 MHz cards they purchased.  MTD at 16-17.  Corsair insists that Plaintiffs do not have standing to "assert injury based on a defective product or false advertising" if the Plaintiffs did not "experience[] injury stemming from the purchase of that product."  MTD at 16 (citing Granfield v. NVIDIA Corp., 2012 WL 2847575 at *6 (N.D. Cal. July 11, 2012)); see also Carrea v. Dreyer's Grand Ice Cream, Inc., 2011 WL 159380 at *3 (N.D. Cal. Jan. 10, 2011) (dismissing claims when plaintiff did not allege that he purchased other Dreyer's products or "otherwise suffered any injury or lost money or property with respect to those products").

However, a named plaintiff's injury from a product may also be "substantially similar" to the injuries suffered by the class members.  See Garnica v. HomeTeam Pest Defense, Inc., 2015 WL 13066140 at *1-2 (N.D. Cal. Dec. 21, 2015); see also Garrison v. Whole Foods Mkt. Grp., Inc., 2014 WL 2451290 at *4 (N.D. Cal. June 2, 2014).  For example, Garrison held that, because the packaging for different products contained the same challenged label of "All Natural," and because plaintiffs alleged that each label is "false in the same way," the "unpurchased products . . . do 'not implicate a significantly different set of concerns than' those purchased by the named plaintiffs."  Garrison, 2014 WL 2451290 at *4.  As such, "[b]y establishing that any of the labels were misleading, the [p]laintiffs would necessarily establish that they all were."  Id.; see also Ivie v. Kraft Foods Glob., Inc. 961 F. Supp. 2d 1033, 1046-47 (N.D. Cal. 2013) (holding that plaintiffs had standing as to unpurchased products if claims for those products were "nearly identical to the claims for the purchased product").

---

[8] Plaintiffs assert that they also bring claims on behalf of out-of-state class members under California's UCL, FAL, and CLRA directly.  Opp. at n.17.  They are incorrect.  In their FAC, they allege that "Plaintiffs bring [this claim] on behalf of themselves and members of the California subclass.  FAC ¶¶ 86, 99, 108.

1   Although Plaintiffs vaguely allege that the misrepresentations on different memory
2   products are similar, they do not do so with enough specificity.  They allege that "Corsair's
3   packaging lists the speed (in MHz) on the front."  FAC ¶ 17.  Plaintiffs also allege
4   generally that "Corsair's packaging and ads promise specific high speeds and reliability,
5   and omit any warning about the risks and realities of overclocking."  Id. ¶ 48.  And
6   Plaintiffs allege that with respect to the class, each putative member "[was] presented with
7   substantially similar misrepresentations and omissions by Corsair."  Id. ¶ 63.  Yet these
8   allegations are conclusory.  At a minimum, Plaintiffs must allege which other models ran
9   at lower speeds.  Without doing so, it is implausible that plaintiffs could, "[b]y establishing
10  that any of the labels were misleading, . . . necessarily establish that they all were."
11  Garrison, 2014 WL 2451290 at *5.  Accordingly, the Court strikes the class claims to the
12  extent they refer to products that the Plaintiffs did not buy.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Corsair's motion to dismiss as to the
claims based on online advertising, the omission claims, the request for equitable relief, the
negligent misrepresentation claims, and the class claims as to products not bought by
plaintiffs.  The Court DENIES the motion as to the breach of warranty claims, the
misrepresentation claims based on statements on the packaging, and class claims brought
under the laws of other states.

The Court grants leave to amend all but the negligent misrepresentation claims.
Plaintiffs may file an amended complaint within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: July 19, 2022

CHARLES R. BREYER
United States District Judge