1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

6

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    ANTONIO MCKINNEY, et al.,                    Case No. 22-cv-00312-CRB

9              Plaintiffs,

10         v.                                      **ORDER GRANTING IN PART AND
                                                   DENYING IN PART MOTION TO
11    CORSAIR GAMING, INC.,                        DISMISS**

12             Defendant.

13         Plaintiffs Antonio McKinney and Clint Sundeen allege that Defendant Corsair

14   Gaming, Inc.'s ("Corsair") packaging of and advertisements for its computer memory

15   products contain deceptive and misleading statements, in violation of the common law and

16   the consumer protection laws of California and 43 other states.  See SAC (dkt. 39).

17         In its prior order on Corsair's first motion to dismiss and motion to strike, the Court

18   granted Corsair's motion as to (1) claims based on advertisements; (2) omissions claims;

19   (3) equitable claims; (4) negligent misrepresentation claims; and (5) class claims with

20   respect to products Plaintiffs did not purchase.  See McKinney v. Corsair Gaming, Inc.,

21   No. 22-CV-00312-CRB, 2022 WL 2820097, at *1 (N.D. Cal. July 19, 2022).  The Court

22   denied Corsair's motion as to (1) misrepresentation claims based on statements on the

23   packaging of Corsair's products; (2) breach of warranty claims; and (3) class claims

24   brought under the laws of other states.  Id.  The Court allowed Plaintiffs to amend on all

25   claims except the negligent misrepresentation claim.  Id. at *14.

26         Plaintiffs did so, and Corsair renews its motion to dismiss and motion to strike, this

27   time only urging dismissal of Plaintiffs' claims regarding (1) omissions; (2) products

28   Plaintiffs did not purchase; (3) class claims brought under the laws of other states; and (4)

*United States District Court*
*Northern District of California*

breach of warranty claims.  See Mot. (dkt. 44) at 2–4.

After hearing argument on December 9, 2022, the Court GRANTS Corsair's motion to dismiss as to omission claims, DDR-5 products that Plaintiffs did not purchase, national and multistate class claims, and breach of express warranty claims.  The Court DENIES Corsair's motion as to DDR-4 products that Plaintiffs did not purchase.  Plaintiffs are granted leave to amend to plead that their express warranty claims are brought under California law.  Leave to amend is denied as to all other dismissed claims.

## I.    BACKGROUND

Plaintiffs' factual allegations and legal theories remain largely as discussed in the Court's prior order.  See McKinney, 2022 WL 2820097, at *1–3.  In their second amended complaint, Plaintiffs allege the following additional facts:

First, Plaintiffs allege which of "Corsair's deceptively labeled memory" products are at issue in this case, apart from the specific products Plaintiffs bought.  See SAC ¶ 15; McKinney, 2022 WL 2820097, *13 (striking class claims that refer to products Plaintiffs did not buy because they "vaguely allege[d] that the misrepresentations on different memory products are similar, they d[id] not do so with enough specificity").  Plaintiffs now specify that the following memory sticks are at issue:

- "any non-SODIMM, DDR-4 memory in the "Vengeance" and "Dominator" lines that includes a "MHz" speed above 2133 MHz in the product name."  SAC ¶ 15(a); id. Ex. 1.

- "any non-SODIMM, DDR-5 memory in the "Vengeance" and "Dominator" lines that includes a "MHz" speed above 4800 MHz in the product name."  SAC ¶ 15(b); id. Ex. 2.

They allege that each of these products includes "an unqualified statement identifying a specific 'MHz' speed of the memory on the front of the packaging," and that "[e]ach model of Corsair's High-Speed Memory does not operate at the advertised speed." Id. ¶¶ 20; 41.

Second, Plaintiffs include examples of "product pages" for Corsair products on

United States District Court
Northern District of California

1    Corsair's own website and authorized resellers, where the advertised MHz speed is stated

2    on the product page.  Id. ¶¶ 21–29.  Plaintiffs allege that Corsair "expressly authorizes . . .

3    resellers to resell its products . . . and expressly identifies them as authorized resellers and

4    announces this fact to consumers."  Id. ¶ 31.

5    **II.    LEGAL STANDARD**

6         Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint

7    for failure to state a claim upon which relief may be granted.  Dismissal may be based on

8    either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under

9    a cognizable legal theory."  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th

10   Cir. 2019) (cleaned up).  A complaint must plead "sufficient factual matter, accepted as

11   true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662,

12   678 (2009) (cleaned up).  A claim is plausible "when the plaintiff pleads factual content

13   that allows the court to draw the reasonable inference that the defendant is liable for the

14   misconduct alleged."  Id.  When evaluating a motion to dismiss, the court "must presume

15   all factual allegations of the complaint to be true and draw all reasonable inferences in

16   favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.

17   1987).

18        Claims for fraud must meet the pleading standard of Federal Rule of Civil

19   Procedure 9(b), which requires a party "alleging fraud or mistake [to] state with

20   particularity the circumstances constituting fraud or mistake."  Rule 9(b) "requires . . . an

21   account of the time, place, and specific content of the false representations as well as the

22   identities of the parties to the misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756,

23   764 (9th Cir. 2007) (cleaned up).  "This means that averments of fraud must be

24   accompanied by the who, what, when, where, and how of the misconduct charged."  In re

25   Google Assistant Priv. Litig., 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021) (internal

26   quotations omitted).

27        If a court dismisses a complaint for failure to state a claim, it should "freely give

28   leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court has

United States District Court
Northern District of California

3

United States District Court
Northern District of California

discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

The Court addresses Corsair's arguments in the following order: (1) that Plaintiffs' fraudulent omission claims must again be dismissed; (2) that the Court should strike Plaintiffs' amended allegations regarding products that were not purchased by Plaintiffs; (3) that the Court should strike Plaintiffs' national and multistate class action claims; and (4) that Plaintiffs' amended express warranty claim must be dismissed.

### A.    Omission Claims

Corsair again moves to dismiss Plaintiffs' fraud claims to the extent they allege that the statements on the packaging and in online advertisements constitute fraudulent omissions. Mot. at 7–8; Reply (dkt. 47) at 4–8.

In its prior order, the Court held that, to state an omission claim, Plaintiffs must plead either "(1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four LiMandri factors." McKinney, 2022 WL 2820097, at *9 (quoting In re Toyota RAV4 Hybrid Fuel Tank Litig., 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021)). Because Plaintiffs did not "allege a defect that is central to the product's function" in the FAC, and, in fact, "concede[d] that they d[id] not plead any defect at all," the Court granted Corsair's motion to dismiss the omission claims. Id. at *9–10. In a footnote, the Court advised Plaintiffs that they "might be able to properly allege a duty to disclose, if they sufficiently allege that the omitted fact goes to a defect (that the memory does not achieve the higher memory speed) and that this defect is material and central to the memory's function." Id. at *10 n.5.

Plaintiffs' second amended complaint does not appear to alter their omission claims at all, apart from adding allegations relating to product pages on Corsair's and authorized

4

1    resellers' websites.  SAC ¶¶ 21–32.  But even though the Court advised Plaintiffs to do so,

2    they did not alter their complaint to allege that the omitted fact (that the products often do

3    not, in reality, achieve the speeds listed on the packaging) "goes to a defect" and that it is

4    "material and central" to the product's function.  McKinney, 2022 WL 2820097, at

5    *10 n.5.  Corsair argues that, because Plaintiffs have failed to alter their complaint to

6    allege that "any allegedly omitted fact 'goes to a defect,' and they do not allege that an

7    alleged defect 'is material and central to the memory's function,'" their omissions claims

8    must again be dismissed.  Mot. at 8.

9          Plaintiffs argue that their claims are "standard false advertising claims; not

10   'omission' claims in the sense that Corsair means," which seemingly contends that

11   Plaintiffs have pleaded misrepresentation claims, rather than omission claims.  Opp'n (dkt.

12   45) at 4–5.  In the alternative, Plaintiffs argue that their allegations in the SAC (largely

13   unaltered from the FAC) suffice to plead an omission.  Id. at 5–6 (citing SAC ¶¶ 2, 40–59,

14   65).

15         First, with respect to Plaintiffs' argument that they only plead misrepresentation

16   claims, not omission claims, that is belied by the many statements in the complaint itself.

17   See, e.g., SAC ¶ 65 ("The omissions were material, because a reasonable consumer would

18   attach importance to the truth or falsity of those omissions in deciding whether to purchase

19   High-Speed Memory.").  In any case, Plaintiffs' misrepresentation allegations (including

20   new allegations relating to product pages on Amazon, Newegg, and Corsair's own website,

21   id. ¶¶ 21–32) are unchallenged by Corsair in this motion and are plausibly pleaded.  See

22   McKinney, 2022 WL 2820097, at *7–9.

23         Second, to Plaintiffs' alternative argument that they plausibly plead an omission

24   claim, they must plead (1) that defect is material and "central to the product's function,";

25   and (2) one of the LiMandri factors.  McKinney, 2022 WL 2820097, at *9 (citing

26   Hammerling v. Google LLC, 21-cv-9004, 2022 WL 2812188 (N.D. Cal. July 18, 2022)).

27   Viewed in the light most favorable to Plaintiffs, it's fairly easy to conclude that they have

28   pleaded materiality, SAC ¶ 65, and the fourth LiMandri factor, that Corsair "makes partial

5

representations but also suppresses some material facts." <u>LiMandri v. Judkins</u>, 52 Cal. App. 4th 326, 336 (1997); SAC ¶ 60–64.  However, Plaintiffs nowhere plead a defect "central to the product's function," even though the Court advised them concretely how they might be able to do so.  <u>McKinney</u>, 2022 WL 2820097, at *10 n.5.  The closest Plaintiffs come is alleging that "[t]he most important measure of memory performance is the speed at which it transfers data," SAC ¶ 2, and "speed is a <u>primary factor</u> in determining the price a consumer will pay for memory," <u>id.</u> ¶ 65 (emphasis added).  These allegations do not plead that speed is central to the function of the product, or that performing at a lower speed will render the product "incapable of use."  <u>Hodsdon v. Mars, Inc.</u>, 891 F.3d 857, 864 (9th Cir. 2018).

Because Plaintiffs were given the opportunity to amend their complaint to allege a duty to disclose and have failed to do so, their claims based on omissions are dismissed without leave to amend.  <u>Leadsinger,</u> 512 F.3d at 532.

### B.    Products Not Purchased by Plaintiffs

Corsair argues that the Court should strike Plaintiffs' renewed class allegations regarding products not purchased by Plaintiffs, because by establishing that the labels of Plaintiffs' purchased products are misleading, they do not "necessarily establish" that all allegedly similar Corsair products were misleading in the same way.  Mot. at 11 (quoting <u>McKinney</u>, 2022 WL 2820097, at *13).  Plaintiffs argue that their new allegations, which put two different types of Corsair memory products at issue, plausibly plead that their injury is "substantially similar" to that of class members who purchased other Corsair memory sticks such that they may assert claims on their behalf.  <u>See</u> Opp'n at 6–13.

In its prior order, the Court granted Corsair's motion to strike Plaintiffs' class claims "to the extent they refer to products that the Plaintiffs did not buy."  <u>McKinney</u>, 2022 WL 2820097, at *13.  In the FAC, Plaintiffs' allegations as to those products were thin:  They only alleged that each class member "[was] presented with substantially similar misrepresentations and omissions by Corsair" and that "Corsair's packaging lists the speed (in MHz) on the front."  FAC ¶¶ 17, 63; <u>McKinney</u>, 2022 WL 2820097, at *13.  The Court

6

1    reasoned that, for their labeling to be "false in the same way," Plaintiffs must, at a

2    minimum, allege which other Corsair models "ran at lower speeds." McKinney, 2022 WL

3    2820097, at *13 (quoting Garrison v. Whole Foods Mkt. Grp., Inc., 13-cv-5222, 2014 WL

4    2451290, at *4 (N.D. Cal. June 2, 2014)).

5              Plaintiffs make substantial alterations in their second amended complaint in an

6    attempt to plausibly plead these claims.  Though both Plaintiffs purchased a DDR-4 3200

7    MHz Vengeance memory stick that instead ran at a default 2133 MHz, SAC ¶¶ 6–7, 68–

8    69, 71, 73, they allege that "Corsair's deceptively labeled memory at issue in this case

9    consists of" two broad swaths of products:

10   • "any non-SODIMM,[1] DDR-4 memory in the "Vengeance" and "Dominator" lines

11     that includes a "MHz" speed above 2133 MHz in the product name." Id. ¶ 15(a)

12     (emphasis added); see also id. Ex. 1.

13   • "any non-SODIMM, DDR-5[2] memory in the "Vengeance" and "Dominator" lines

14     that includes a "MHz" speed above 4800 MHz in the product name." Id. ¶ 15(b)

15     (emphasis added); see also id. Ex. 2.

16   Plaintiffs again allege that Corsair's packaging of its memory sticks (regardless of

17   whether it is a DDR-4 or DDR-5) lists the product's advertised speed in MHz on the front,

18   and that the product listing on online retailers does the same.  See, e.g., id. ¶¶ 18; 25.

19   Plaintiffs further allege that the default speed for the "Vengeance RGB Pro" stick and

20   "Dominator Platinum RGB" stick is 2133 MHz. Id. ¶ 40.[3]  Finally, Plaintiffs allege that

21   "[e]ach model of Corsair's High-Speed Memory does not operate at the advertised speed."

22   Id. ¶ 41.  Instead, each model "operates at a lower speed (a standard speed, which is

23

24   [1] In their opposition, Plaintiffs elaborate on why they have excluded SODIMM memory from both
     subclasses: "SODIMM memory is laptop memory. It operates differently and does not need to be
25   overclocked to achieve the advertised speeds. So, it is not part of this case."  Opp'n at 7 n.2.
     [2] In their complaint, Plaintiffs do not explain the difference between DDR-4 and DDR-5 memory.
26   Corsair characterizes DDR-5 in its motion to dismiss as: "Double Data Rate 5 Synchronous
     Dynamic Random-Access Memory (DDR5 SDRAM) is a type of synchronous dynamic random-
27   access memory that reduces power consumption and increases bandwidth as compared to its
     predecessor DDR4 SDRAM. See https://en.wikipedia.org/wiki/DDR5_SDRAM." Mot. at 3 n.2.
28   Plaintiffs do not respond to this characterization in their opposition.
     [3] Plaintiffs presumably refer to DDR-4 memory sticks in this paragraph.  See Opp'n at 10.

always lower than the advertised speed).” Id.

As held in the Court’s prior order, a plaintiff may bring claims for products it did not purchase, so long as the plaintiff’s claims are “‘substantially similar’ to the injuries suffered by the class members.” McKinney, 2022 WL 2820097, at *13 (quoting Garnica v. HomeTeam Pest Def., Inc., 14-cv-5243, 2015 WL 13066140, at *1-2 (N.D. Cal. Dec. 21, 2015)).  Products are “substantially similar” if “the resolution of the asserted claims will be identical between the purchased and unpurchased products.” Ang v. Bimbo Bakeries USA, Inc., No. 13-cv-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014).  Thus, in the labelling context, if each label is “false in the same way,” then the “unpurchased products . . . do ‘not implicate a significantly different set of concerns than’ those purchased by the named plaintiffs” and thus, “[b]y establishing that any of the labels were misleading, the [p]laintiffs would necessarily establish that they all were.” McKinney, 2022 WL 2820097, at *13 (quoting Garrison, 2014 WL 2451290, at *4).

Plaintiffs have plausibly pleaded this “substantial similarity” with respect to Corsair’s DDR-4 memory sticks.  Reading the complaint in the light most favorable to Plaintiffs, they have pleaded that (1) both Plaintiffs purchased a DDR-4 memory stick, SAC ¶¶ 68, 71–72; (2) those memory sticks have a default speed of 2133 MHz, id. ¶ 40; (3) all DDR-4 memory sticks are sold with their advertised MHz prominently placed on the packaging and on the product descriptions of online retailers, id. ¶¶ 20, 23; (4) both Plaintiffs purchased a memory stick with an advertised speed of 3200 MHz, id. ¶¶ 68, 71; (5) both experienced a default speed of 2133 MHz, id. ¶¶ 69, 73; and (6) when they attempted to overclock and increase the memory speed to Corsair’s advertised speed, it crashed their computers.  Id.  Thus, Plaintiffs have pleaded that DDR-4 memory sticks (including the ones Plaintiffs purchased) function at a default speed of 2133 MHz, regardless of the advertised speed, and purchasers must attempt the unreliable overclocking process to get a DDR-4 memory stick to run at advertised speeds, but

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1   overclocking does not guarantee that they will do so.[4]

2       The same cannot be said of Plaintiffs' allegations with respect to Corsair's DDR-5

3   memory sticks.  As indicated above, neither Plaintiff purchased a DDR-5 memory stick;

4   none of the advertisements or packaging in the complaint shows a DDR-5 product;[5]

5   despite Plaintiffs' representations in their opposition, see Opp'n at 10, they do not allege in

6   the complaint any standard speed for DDR-5, nor that every DDR-5 memory stick sold by

7   Corsair runs at a default speed of 4800 MHz; and they do not allege any facts

8   demonstrating that DDR-4 and DDR-5 memory sticks are "substantially similar" products

9   such that "the resolution of the asserted claims will be identical between the purchased and

10  unpurchased products."  Ang, 2014 WL 1024182, at *8; see also Bruton v. Gerber Prods.

11  Co., No. 12-CV-02412-LHK, 2014 WL 172111, at *8 (N.D. Cal. Jan. 15, 2014) ("The

12  SAC does not explain how these products are similar to the Purchased Products, and unlike

13  many of the other Substantially Similar Products . . . there is no obvious similarity between

14  these products and any of the products Bruton purchased.").  Any such similarity between

15  the DDR-4 and DDR-5 memory sticks is not obvious on the face of the complaint.  Absent

16  such a showing, Plaintiffs do not have standing to allege an injury on behalf of purchasers

17  of DDR-5 memory sticks.

18      Thus, Corsair's motion is denied with respect to Corsair's DDR-4 products that

19  Plaintiffs did not purchase but granted with respect to Corsair's DDR-5 products.  Because

20  Plaintiffs had a prior opportunity to amend their complaint on this claim and failed to

21  plausibly plead substantial similarity as to the DDR-5 products, the dismissal of the claims

22  for DDR-5 products is without leave to amend.  Leadsinger, 512 F.3d at 532.

23

24

25  [4] Corsair argues that Plaintiffs' "focus on the default speeds in isolation, and without reference to
    their broader claims of overclocking risk, is improper." Reply at 9. But at least with respect to
26  DDR-4 memory sticks, Plaintiffs have alleged that the default speeds are lower than the advertised
    speeds, and that purchasers reasonably expected that the memory sticks would run at advertised
27  speeds out of the box.  See SAC ¶ 41.  Whether and to what extent overclocking allows each
    DDR-4 memory stick to reach advertised speeds reliably may be resolved through discovery.
28  [5] With the exception of Exhibit 2, which is Plaintiffs' list of DDR-5 "[d]eceptively labelled
    memory currently sold by Corsair."  SAC Ex. 2.

United States District Court
Northern District of California

**C.     National and Multistate Class Claims**

Corsair argues that Plaintiffs' national and multistate class allegations for violation of 43 other states' consumer protection statutes should be stricken on standing grounds, because California choice-of-law analysis requires the application of each state's laws to the claims of class members from those states. Mot. at 11–14.

In its prior order, the Court held that while choice-of-law analysis could be done at the motion to dismiss stage (as opposed to waiting until class certification), Corsair had "not provided a sufficient description of other state laws to meet its burden of showing that Plaintiffs lack standing to bring claims under these other states' laws." McKinney, 2022 WL 2820097, at *13.  To support its renewed motion to strike these claims, Corsair provides an appendix noting the differences between consumer protection regimes in each state, including causes of action, statute of limitations, actual injury, reliance and causation, scienter, and damages.  Mot. App. A.  Plaintiffs argue that Corsair has failed to analyze these laws "'under the circumstances of the particular case' and given 'the particular [legal] issue in question.'"  Opp'n at 14 (quoting McKinney, 2022 WL 2820097, at *12).

To determine whether the interests of other states outweigh California's interest (and thus whether the national and multistate class claims should be stricken) courts apply California's three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.

> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

1    Mazza v. Am. Honda Motor Co., 666 F.3d 581, 590 (9th Cir. 2012) (quoting McCann v.

2    Foster Wheeler LLC, 48 Cal. 4th 68, 87–88 (2010)).

3            **1.    Conflict of Laws**

4            This first prong is the crux of the issue between the parties:  While Corsair provides

5    its appendix detailing the differences between consumer protection statutes across 43 other

6    states (and California), Plaintiffs argue that Corsair has failed to analyze these laws under

7    the circumstances of this case.  See Opp'n at 13–14.

8            The Court finds that Corsair has met its burden to show that "the relevant law of

9    each of the potentially affected jurisdictions with regard to the particular issue in question

10   is . . . different."  Mazza, 666 F.3d at 590 (quoting McCann, 48 Cal. 4th at 87).  First,

11   statute of limitations has already proven to be an issue in this case, as the Court's prior

12   order dismissed the negligent misrepresentation claim in part because Sundeen purchased

13   his memory stick outside of California's three-year statute of limitations.  McKinney, 2022

14   WL 2820097, at *11 n.7.  Corsair shows that eleven statutes of limitation for other states'

15   consumer protection regimes are even shorter, limiting the number of class members that

16   will have viable claims under those statutes.[6]  Second, Plaintiffs concede in their second

17   amended complaint that compliance with the CLRA's notice requirements may be

18   contested in this case, which may impair their ability to collect damages under the CLRA.

19   SAC ¶ 91.  Corsair notes that six other states' regimes have pre-suit notice requirements,

20   some more stringent than the CLRA, others requiring notice to government entities.[7]

21

22

23   [6] See Mot. App. A at 1 (Arizona, Ariz. Rev. Stat. Ann. § 12-541(5), one year); id. at 7 (Georgia,
     Ga. Code Ann. § 10-1-401(a), two years); id. at 10 (Idaho, Idaho Code § 48-619, two years); id. at
24   14 (Louisiana, La. Rev. Stat. Ann § 51:1409(E), one year); id. at 22 (Montana, Mont. Code Ann. §
     407.025(1), two years); id. at 33 (Ohio, Ohio Rev. Code Ann. § 1345.10(C), two years); id. at 35
25   (Oregon, Or. Rev. Stat. § 646.638(6), one year); id. at 42 (Texas, Tex. Bus. & Com. Code §
     17.565, two years); id. at 45 (Virginia, Va. Code Ann. § 59.1-204.1(A), two years); id. at 48 (West
26   Virginia, W. Va. Code Ann. § 55-2-12, two years); id. at 51 (Wyoming, Wyo. Stat. Ann. § 40-12-
     109, two years).
27   [7] See Mot. App. A at 8 (Georgia, Ga. Code Ann. § 10-1-399(b)); id. at 16 (Maine, Me. Rev. Stat.
     Ann. tit. 5, § 213(1-A)); id. at 18 (Massachusetts, Mass. Gen. Laws ch. 93A, § 9(3)); id. at 28
28   (New Jersey, N.J. Stat. Ann. § 56:8-20); id. at 43 (Texas, Tex. Bus & Com. Code § 17.505); id. at
     51 (Wyoming, Wyo. Stat. Ann. § 40-12-109).

1    Third, six states' consumer protection regimes do not allow class actions at all.[8]

2           Other courts in this circuit have found that demonstrating similar such differences is

3    sufficient to find an actual conflict at the first step of the governmental interest test.  See,

4    e.g., Vinci v. Hyundai Motor Am., 17-cv-997, 2018 WL 6136828, at *7 (C.D. Cal. Apr.

5    10, 2018).  Other courts have made this determination upon similar evidence at the class

6    certification stage.  See, e.g., Schwartz v. Lights of Am., 11-cv-1712, 2012 WL 4497398,

7    at *5–6 (C.D. Cal. Aug. 31, 2012); Gustafson v. BAC Home Loans Servicing, LP, 294

8    F.R.D. 529, 538–39 (C.D. Cal. 2013); cf. Czuchaj v. Conair Corp., No. 13-CV-1901-BEN,

9    2016 WL 1240391, at *2–3 (S.D. Cal. Mar. 30, 2016) (decertifying a nationwide implied

10   warranty class because defendants demonstrated that "the state laws vary significantly").

11          Because the Court has already determined that whether it decides these issues on a

12   motion to dismiss or upon class certification is a matter of discretion, McKinney, 2022 WL

13   2820097, at *11–12, and Plaintiffs do not argue that these issues will be any more

14   developed at class certification, the Court finds that Corsair has met its burden to show that

15   the states' consumer protection regimes are different.

16                       **2.     Interests of Foreign Jurisdictions**

17          Finding that Corsair has met its burden under the first prong of the test, the Court

18   moves on to the second prong: "examin[ing] each jurisdiction's interest in the application

19   of its own law under the circumstances of the particular case to determine whether a true

20   conflict exists."  Mazza, 666 F.3d at 590 (quoting McCann, 48 Cal. 4th at 87).  In Mazza,

21   the Ninth Circuit acknowledged that under California law, "a jurisdiction ordinarily has

22   'the predominant interest' in regulating conduct that occurs within its borders . . . ."  Id. at

23   592 (quoting McCann, 48 Cal. 4th at 98).  As a result, courts in this circuit regularly

24   conclude that "each of the other forty-nine states has an interest in applying its own laws to

25   . . . purchases within their borders."  Vinci, 2018 WL 6136828, at *9; see also Gustafson,

26

27   [8] See Mot. App. A at 7 (Georgia, Ga. Code Ann. § 10-1-399(a)); id. at 14 (Louisiana, La. Rev.
     Stat. Ann. § 51:1409(A)); id. at 22 (Montana, Mont. Code Ann. § 30-14-133(1)(a)); id. at 39
28   (South Carolina, S.C. Code Ann. § 39-5-140(a)); id. at 40–41 (Tennessee, Tenn. Code Ann. § 47-
     18-109(g)); id. at 45 (Virginia, Va. Code Ann. § 59.1-204(A)).

United States District Court
Northern District of California

294 F.R.D. at 539–40.  So too here: While Corsair is headquartered in California, see SAC ¶ 9, Plaintiffs allege that the class "includes citizens of most (or potentially all) states," SAC ¶ 8, who presumably purchased Corsair's products while located in their home states. Thus, a true conflict exists under the first and second prongs of the test.

### 3.      Which State's Interest Is Most Impaired

Where a court finds that a true conflict exists, it must "carefully evaluate[] and compare[] the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately appl[y] the law of the state whose interest would be more impaired if its law were not applied."  Mazza, 666 F.3d at 590 (quoting McCann, 48 Cal. 4th at 88).  The Mazza court acknowledged that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest."  Id. at 593 (quoting Hernandez v. Burger, 102 Cal. App. 3d 795, 802 (1980)).  Under California law, the "place of the wrong" is "the state where the last event necessary to make the actor liable occurred."  Id. (citing McCann, 48 Cal. 4th at 94 n.12).  In Mazza, where advertisements for and purchase of vehicles were at issue, the Court held that the "last events necessary for liability as to the foreign class members . . . took place in the various foreign states, not in California."  Id. at 594.  Thus, "[t]hese foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state."  Id.  This interest was held to outweigh California's interest in applying the law in that case, even though the defendant in that case (Honda) was a California corporation.  Id.  The facts of this case are not distinguishable from Mazza: Corsair, though headquartered in California, advertises its products to consumers nationwide, who purchase them in their home states.  Other cases in a similar posture have also concluded that the other states' interests outweighed California's.  See Vinci, 2018 WL 6136828, at *9; see also Gustafson, 294 F.R.D. at 540.

As such, given that the application of the governmental-interests test comes out in favor of applying foreign law, each class member's individual consumer protection claims

must be governed by the laws of their home state and Plaintiffs cannot bring a nationwide class on those foreign class members' behalf.  The Court thus strikes these claims without leave to amend, because Plaintiffs had the opportunity to amend their complaint to narrow these claims in light of Corsair's prior argument on this issue and failed to do so. Leadsinger, 512 F.3d at 532.

### D.      Breach of Express Warranty Claim

Corsair makes two arguments for dismissal of Plaintiffs' express warranty claims: (1) Plaintiffs have not specified which state's laws apply to those claims, thus depriving Corsair of fair notice; and (2) even if Plaintiffs allege a violation of California law, they fail to plausibly plead that Corsair's representation constituted an "unequivocal guarantee." Mot. at 14–15.

In its prior order, the Court held that (1) Plaintiffs' breach of express warranty claims were subject only to Rule 8, and they were plausibly pleaded under that standard; and (2) Corsair had not made a showing that express warranty law varies widely from state to state, to buttress their claimed lack of notice.  See McKinney, 2022 WL 2820097, at *5 & n.2 (citing In re Static Random Access Memory (SRAM) Antitrust Litig., 580 F. Supp. 2d 890, 910 (N.D. Cal. 2008)).

For the reasons stated below, the Court finds that, while Plaintiffs have not pleaded that they bring their express warranty claim under California law, if it they were to do so, that pleading would survive a motion to dismiss.  Thus, the Court grants Corsair's motion to dismiss, allowing Plaintiffs leave to amend to clarify that they bring their express warranty claims under California law.

### 1.      Failure to Specify Which Law Applies

Corsair argues that because express warranty law "varies widely between the states," Plaintiffs' "inchoate allegations fail to provide fair notice to Corsair regarding the bases of their warranty claims."  Mot. at 14.  In support of this argument, and as instructed by the Court in its prior order, Corsair provides a chart of breach of express warranty law across the states, and their disparate standards for pleading and proving privity, reliance,

1    and notice.  See Mot. App. B.  Plaintiffs do not oppose this argument, but instead argue

2    that they plead an express warranty under California law.  Opp'n at 15–18.  Because

3    Plaintiffs have waived their opposition to this argument, see, e.g., Shakur v. Schriro, 514

4    F.3d 878, 892 (9th Cir. 2008), and Corsair has provided evidence that express warranty

5    standards vary from state to state, Corsair's motion to dismiss Plaintiffs' breach of express

6    warranty claim is granted.  However, to avoid needless amendment and further briefing,

7    the Court also addresses Corsair's argument that Plaintiffs' breach of warranty claims

8    would nonetheless fail under California law.

9                    **1.    Breach of Express Warranty Under California Law**

10       To prevail on a breach of express warranty claim under California law, Plaintiffs

11   must prove that Corsair made "affirmation[s] of fact or promise" or a "description of the

12   goods" that became "part of the basis of the bargain."  Weinstat v. Dentsply Int'l, Inc., 180

13   Cal. App. 4th 1213, 1227 (2010); Cal. Com. Code § 2313 (defining express warranty).

14   "[A] plaintiff must allege: (1) the exact terms of the warranty, (2) reasonable reliance

15   thereon, and (3) a breach of warranty which proximately caused plaintiff's injury."

16   Baltazar v. Apple, Inc., 10-cv-3231, 2011 WL 588209, at *2 (N.D. Cal. Feb. 10, 2011)

17   (citing Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (1986)).  To

18   plead the exact terms of the warranty, a plaintiff must "identify a specific and unequivocal

19   written statement about the product that constitutes an explicit guarantee."  Hauck v.

20   Advanced Micro Devices, Inc., 18-cv-447, 2018 WL 5729234, at *7 (N.D. Cal. Oct. 29,

21   2018) (quoting Hadley v. Kellogg Sales Co., 273 F. Supp. 3d 1052, 1092 (N.D. Cal.

22   2017)).

23       Corsair argues that, even if Plaintiffs plead that California law undergirds their

24   express warranty claim, that they have not plausibly pleaded such a claim because they

25   have failed to identify an "explicit guarantee."  Hauck, 2018 WL 5729234, at *7; see also

26   Mot. 14–15.  Plaintiffs argue that they have in fact pleaded Corsair's "'unqualified

27   statement identifying a specific 'MHz' speed of the memory' which is found 'on the front

28   of the packaging,' 'in the product name' and 'in the product description' of Corsair and its

1   authorized resellers' websites.  Opp'n at 16 (citing SAC ¶¶ 18, 21–29).  Plaintiffs allege

2   that, to a reasonable consumer, listing the MHz speed on the packaging and in product

3   descriptions means "that the memory will run at the stated speed out of the box (i.e., that

4   the stated speed was the default speed), and that it will do so reliably across platforms."

5   Id. (quoting SAC ¶ 35).

6         The Court finds that Plaintiffs plead an "explicit guarantee" of memory speed to

7   survive a motion to dismiss.  Unlike in Hauck, where the plaintiffs alleged that the

8   computer's clock speed formed "part of an express warranty" for that product, Hauck,

9   2018 WL 5729234, at *7 (emphasis added), here, the product is "premium, high-speed

10  computer memory" where the speed may itself be the only term of the express warranty.

11  SAC ¶ 1.  Thus, because Plaintiffs allege that the "most important measure of memory

12  performance is the speed at which it transfers data," to form an express warranty for such a

13  product, Plaintiffs need not plead more than "a specific and unequivocal written statement"

14  that the product would run at a particular speed.  SAC ¶ 2; Hauck, 2018 WL 5729234, at

15  *7.  The statements on the packaging and product pages affirming that the product runs at

16  a particular speed thus constitute an "explicit guarantee" of that speed.[9]  See Keith v.

17  Buchanan, 173 Cal. App. 3d 13, 22 (1985) (finding that statements such as "a picture of

18  sure-footed seaworthiness" and "a carefully well-equipped and very seaworthy vessel" are

19  "specific and unequivocal" and thus gave rise to an express warranty claim).  The other

20  cases Corsair relies upon are easily distinguishable, because they point to vague language,

21  rather than the specific statement of particular performance that appears on Corsair's

22  packaging.  In re Sony PS3 Other OS Litig., 551 F. App'x 916, 919 (9th Cir. 2014)

23

24  ---

[9] Corsair argues that "[t]he SAC, however, makes no allegation that Corsair's reference to the
25  MHz speed on packaging or in ads constituted an unequivocal guarantee by Corsair that is
    memory would run at that speed 'out of the box,' across all platforms, or under all conditions."
26  Mot. at 15. The SAC does plead that Corsair unequivocally states the memory speed on the
    packaging and that it does not qualify this statement in any way, causing consumers to reasonably
27  believe that Corsair's memory will run at advertised speeds. See SAC ¶¶ 3, 18–20. But regardless,
    Corsair's bar for pleading an express warranty is simply too high—California law does not require
28  that Corsair write "across all platforms, under all conditions" on its packaging to allow a plaintiff
    to plead an express warranty for memory speeds that it advertises without qualification.

United States District Court
Northern District of California

1   (promotional statement that a PlayStation 3 would have a "ten-year lifespan" did not

2   constitute an express warranty); Baird v. Samsung Elecs. Am., Inc., 522 F. Supp. 3d 679,

3   685–86 (N.D. Cal. 2021) (finding that an image of a YouTube logo on the defendant's

4   packaging did not constitute an express warranty of "lifetime access to YouTube"); see

5   also McMahon v. Take-Two Interactive Software, Inc., 745 F. App'x 786, 787 (9th Cir.

6   2018) ("[T]he statement 'Featuring GTA Online' did not specifically and unequivocally

7   promise, or provide an explicit guarantee of, immediate access to GTA Online.").

8       Thus, because Plaintiffs' allegations plausibly plead a breach of express warranty

9   under California law, the Court grants leave to amend to clarify that their express warranty

10  claims are brought under California law.

11  **IV.    CONCLUSION**

12      For the foregoing reasons, the Court GRANTS Corsair's motion to dismiss as to (1)

13  omission claims; (2) DDR-5 products that Plaintiffs did not purchase; (3) national and

14  multistate class allegations; and (4) breach of express warranty claims.  The Court

15  DENIES Corsair's motion as to DDR-4 products that Plaintiffs did not purchase.  Leave to

16  amend is granted to allow Plaintiffs to plead that their express warranty claims are brought

17  under California law.  Leave to amend is denied as to all other dismissed claims. Plaintiffs

18  may file their amended complaint within 21 days of this order.

19      **IT IS SO ORDERED.**

20      Dated: December 16, 2022

        _____

21                                          CHARLES R. BREYER
                                            United States District Judge

22

23

24

25

26

27

28

17