Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO MCKINNEY, CLINT SUNDEEN, and JOSEPH ALCANTARA, each individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CORSAIR GAMING, INC.,<br><br>*Defendant*. | Case No. 4:22-cv-00312-JST<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: September 12, 2024<br>Time: 2:00 p.m.<br>Dept: Courtroom 6<br>Hon. Jon S. Tigar |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2024, at 2:00 p.m., in Courtroom 6 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Antonio McKinney, Clint Sundeen, and Joseph Alcantara will and hereby do move this Court for entry of an order:

1. Granting preliminary approval of the proposed class action settlement set forth in the Settlement Agreement ("Agreement"), attached as Exhibit 1;

2. Preliminarily certifying the settlement class, as defined in §1.30 of the Agreement, for the purposes of settlement;

3. Preliminarily appointing Plaintiffs Antonio McKinney, Clint Sundeen, and Joseph Alcantara as class representatives for the purposes of settlement;

4. Preliminarily appointing Dovel & Luner, LLP and Kneupper & Covey, PC as Class Counsel;

5. Preliminarily finding that the terms of the Settlement are fair, reasonable, and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

6. Approving that the proposed Notice Plan complies with the requirements of Rule 23 and due process, and that the Notice is to be sent to the Settlement Class Members as set forth in the Agreement.

This Motion is based on this Notice of Motion and Motion for Class Certification and Preliminary Approval of Class Action Settlement; the Declarations of Richard Lyon, Kevin Kneupper, Antonio McKinney, Clint Sundeen, Joseph Alcantara, and Steven Weisbrot (on behalf of Angeion Group), filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter.

**Table of Contents**

I.    Introduction ............................................................................................................... 1

II.    Factual Background ................................................................................................... 1

   A.    Plaintiffs' allegations. ...................................................................................... 1

   B.    Settlement negotiations. ................................................................................... 2

   C.    The Settlement. ................................................................................................ 3

       1.    Class definition. ................................................................................... 3

       2.    Benefits to class members. .................................................................. 4

       3.    Scope of the release............................................................................. 6

       4.    Notice and administration. .................................................................. 7

       5.    Attorneys' fees and costs. ................................................................... 8

       6.    Service awards. .................................................................................... 9

III.    The Settlement merits preliminary approval............................................................ 9

   A.    The Court should conditionally certify the Settlement Class. ....................... 10

       1.    The Settlement Class is sufficiently numerous. ................................. 10

       2.    There are questions of law and fact common to the Settlement Class............. 10

       3.    Plaintiffs' claims are typical to those of the Class. .......................... 11

       4.    Plaintiffs and proposed Class Counsel have fairly and adequately
           represented the Class's interests........................................................ 12

       5.    The Settlement Class meets the requirements of Rule 23(b)(3). ..................... 13

   B.    The Settlement is fair, reasonable, and adequate. ........................................ 14

       1.    The Settlement is the product of serious, informed, non-collusive
           negotiations. ....................................................................................... 15

       2.    The Settlement falls well within the range of possible approval. ................... 16

       3.    The Settlement does not improperly grant preferential treatment to the
           proposed Class Representatives or segments of the Class. .............................. 21

       4.    The Settlement has no obvious deficiencies. .................................... 22

   C.    The Court should approve the proposed notice plan...................................... 22

IV.     Conclusion ................................................................................................................... 23

1                                  **Table of Authorities**

2 **Cases**

3 *Abdullah v. U.S. Sec. Assocs., Inc.*,

4    731 F.3d 952 (9th Cir. 2013).................................................................................................. 10

5 *Ahmed v. HSBC Bank USA*,

6    2019 U.S. Dist. LEXIS 104401 (C.D. Cal. June 21, 2019) ........................................... 21

7 *Allen v. Bedolla*,

8    787 F.3d 1218 (9th Cir. 2015)............................................................................................ 16

9 *Amchem Prods., Inc. v. Windsor*,

10    521 U.S. 591 (1997)................................................................................................... 10, 22

11 *Ang v. Bimbo Bakeries USA, Inc.*,

12    2018 U.S. Dist. LEXIS 149395 (N.D. Cal. Aug. 31, 2018)........................................... 12

13 *Bakhtiar v. Info. Res., Inc.*,

14    2020 U.S. Dist. LEXIS 258600 (N.D. Cal. Aug. 4, 2020)....................................... 17, 18

15 *Barbosa v. Cargill Meat Solutions Corp.*,

16    297 F.R.D. 431 (E.D. Cal. July 1, 2013)......................................................................... 14

17 *Booth v. Strategic Realty Tr. Inc.*,

18    2015 U.S. Dist. LEXIS 84143 (N.D. Cal. June 18, 2015) ............................................... 6

19 *Briseño v. Henderson*,

20    998 F.3d 1014 (9th Cir. 2021)........................................................................................... 16

21 *Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*,

22    249 F.R.D. 334 (N.D. Cal. 2008)..................................................................................... 12

23 *Carlotti v. ASUS Comput. Int'l*,

24    2020 U.S. Dist. LEXIS 108917 (N.D. Cal.)................................................................... 20

25 *Chavez v. Blue Sky Nat. Bev. Co*,

26    268 F.R.D. 365 (N.D. Cal. 2010)..................................................................................... 12

27 *Craft v. Cty. of San Bernardino*,

28    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................................. 8

*Custom LED, LLC v. eBay, Inc.*,

    2013 U.S. Dist. LEXIS 165881 (N.D. Cal. Nov. 20, 2013)................................................. 6

*Dickey v. Advanced Micro Devices, Inc.*,

    2019 U.S. Dist. LEXIS 8740 (N.D. Cal. Jan. 17, 2019) ......................................... 10, 11

*Dickey v. Advanced Micro Devices, Inc.*,

    2020 U.S. Dist. LEXIS 30440 (N.D. Cal. Feb. 21, 2020)................................................. 19

*Dyer v. Wells Fargo Bank, N.A.*,

    303 F.R.D. 326 (N.D. Cal. 2014) .................................................................................. 21

*Gaudin v. Saxon Mortg. Servs., Inc.*,

    2015 U.S. Dist. LEXIS 159020 (N.D. Cal. Nov. 23, 2015)............................................. 19

*Hadley v. Kellogg Sales Co.*,

    2020 U.S. Dist. LEXIS 30193 (N.D. Cal. Feb. 20, 2020)................................................. 4

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998).................................................................. 11, 13, 15, 17

*Hesse v. Sprint Corp.*,

    598 F.3d 581 (9th Cir. 2010)......................................................................................... 6

*In re Hyundai & Kia Fuel Econ. Litig.*,

    926 F.3d 539 (9th Cir. 2019).................................................................................... 4, 9

*In re MacBook Keyboard Litig.*,

    2022 U.S. Dist. LEXIS 220247 (N.D. Cal. Dec. 2, 2022) .............................................. 3

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000)....................................................................................... 20

*In re MyFord Touch Consumer Litig.*,

    2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019) .............................................. 16

*In re Omnivision Techs., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................................................................. 8, 20

*In re Online DVD-Rental Antitrust Litig.*,

    779 F.3d 934 (9th Cir. 2015)............................................................................ 8, 16, 21

*In re Tableware Antitrust Litig.*,

    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................. 14, 19

*In re Toys R Us-Del., Inc. FACTA Litig.*,

    295 F.R.D. 438 (C.D. Cal 2014) ..................................................................................................... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,

    2016 U.S. Dist. LEXIS 99071 (N.D. Cal. July 26, 2016) ......................................................... 15

*In re Wireless Facilities, Inc.*,

    253 F.R.D. 607 (S.D. Cal. 2008) ................................................................................................ 10

*Just Film Inc. v. Buono*,

    847 F.3d 1108 (9th Cir. 2017) ................................................................................................... 14

*Koeppen v. Carvana, LLC*,

    2024 U.S. Dist. LEXIS 81686 (N.D. Cal. May 3, 2024) .......................................................... 19

*Koller v. Med Foods, Inc.*,

    2018 U.S. Dist. LEXIS 231901 (N.D. Cal. Aug. 29, 2018) ...................................................... 20

*Korolshteyn v. Costco Wholesale Corp.*,

    2017 U.S. Dist. LEXIS 38192 (S.D. Cal. Mar. 16, 2017) ........................................................ 14

*Kumar v. Salov N. Am. Corp.*,

    2017 U.S. Dist. LEXIS 105463 (N.D. Cal. July 7, 2017) ......................................................... 18

*Larsen v. Trader Joe's Co.*,

    2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) ......................................................... 18

*Morales v. Stevco, Inc.*,

    2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov. 10, 2011) ...................................................... 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................... 18

*Navarrete v. Sprint United Mgmt. Co.*,

    2021 U.S. Dist. LEXIS 40398 (C.D. Cal. Mar. 2, 2021) .......................................................... 20

*Perks v. ActiveHours, Inc.*,

    2021 U.S. Dist. LEXIS 57272 (N.D. Cal. Mar. 25, 2021) ................................................... 21, 22

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ..................................................................................... 15

*Satchell v. Fed. Express Corp.*,

    2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ............................................. 15

*Schneider v. Chipotle Mexican Grill, Inc.*,

    2020 U.S. Dist. LEXIS 16365 (N.D. Cal. Jan. 31, 2020) ................................................. 3

*SEB Inv. Mgmt. AB v. Symantec Corp.*,

    335 F.R.D. 276 (N.D. Cal. 2020) ................................................................................ 11

*Shay v. Apple Inc.*,

    2024 U.S. Dist. LEXIS 48702 (S.D. Cal. Mar. 18, 2024) ................................................. 7

*Smith v. Keurig Green Mt., Inc.*,

    2022 U.S. Dist. LEXIS 120863 (N.D. Cal. July 8, 2022) ............................................. 19

*Spann v. J.C. Penney Corp.*,

    211 F. Supp. 3d. 1244 (C.D. Cal. Sept. 30, 2016) ......................................................... 5

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) .................................................................................. 9, 12

*Stearns v. Ticketmaster Corp.*,

    655 F.3d 1013 (9th Cir. 2011) ................................................................................... 13

*Stovall-Gusman v. W.W. Granger, Inc.*,

    2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) ............................................. 19

*Tuttle v. Audiophile Music Direct, Inc.*,

    2023 U.S. Dist. LEXIS 229241 (W.D. Wash. Dec. 26, 2023) ......................................... 5

*Valentino v. Carter-Wallace, Inc.*,

    97 F.3d 1227 (9th Cir. 1996) .................................................................................... 14

*Villafan v. Broadspectrum Downstream Servs.*,

    2021 U.S. Dist. LEXIS 249763 (N.D. Cal. Apr. 8, 2021) ............................................. 15

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002) ..................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ............................................................................................ 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,

    617 F.3d 1168 (9th Cir. 2010) .......................................................................... 11

*Xiufang Situ v. Leavitt*,

    240 F.R.D. 551 (N.D. Cal. 2007) ....................................................................... 10

**Statutes**

28 U.S.C. § 1715(b) ................................................................................................ 8

28 U.S.C. §§ 1712-1714 .......................................................................................... 8

**Rules**

Fed. R. Civ. P. 23(a)(1) .......................................................................................... 10

Fed. R. Civ. P. 23(a)(2) .......................................................................................... 10

Fed. R. Civ. P. 23(a)(3) .......................................................................................... 11

Fed. R. Civ. P. 23(a)(4) .......................................................................................... 12

Fed. R. Civ. P. 23(b)(3) .......................................................................................... 13

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 22

Fed. R. Civ. P. 23(c)(2)(B)(v) ................................................................................ 14

Fed. R. Civ. P. 23(e) ................................................................................................ 9

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................... 21

1

## I.    Introduction.

The Parties have reached a hard-fought classwide resolution.  Both parties accepted a mediator's proposal that provided for a $5,500,000 nonreversionary cash common fund and meaningful nonmonetary relief to Settlement Class Members.  As detailed below, the Settlement meets all the criteria for preliminary approval pursuant to Rule 23(e)(1), Ninth Circuit precedent, and the Northern District of California's Procedural Guidelines for Class Action Settlements.  The Parties request that the Court preliminarily approve the Settlement, approve the proposed notice, preliminarily certify the Settlement Class, appoint Class Counsel and the Class Representatives, and schedule a final approval hearing.

## II.    Factual Background.

### A.    Plaintiffs' allegations.

Defendant, Corsair Gaming, Inc., sells high-speed memory products through its website and through authorized resellers, both online and in person.  Complaint (Dkt. 61) ¶¶1, 22.  Defendant's product packaging and product listings—on its own website and resellers' websites—state that Corsair's memory runs at specific, high speeds, measured in megahertz (MHz).  *Id.* ¶¶18-35.  Plaintiffs Antonio McKinney and Clint Sundeen, residents of California, and Plaintiff Joseph Alcantara, resident of New York, purchased Corsair DDR-4 memory products.  *Id.* ¶¶6-8.  Out of the box, DDR-4 memory runs at a speed of 2133 MHz.  *Id.* ¶41.  Each Plaintiff's product was advertised with a specific speed above 2133 MHz, such as "3200 MHz" or "3600 MHz."  *Id.* ¶¶67-78.  Plaintiffs allege that they, like other reasonable consumers, understood Defendant's speed representations to mean that their respective product would run at the stated speed out of the box, and that they relied on these representations when making their purchases.  *Id.* ¶¶36, 67, 72, 76.

Plaintiffs allege that Defendant's speed representations were false and misleading.  They allege that the higher stated speeds can be achieved only if users modify their computers' firmware, through BIOS adjustments (through a process known as "overclocking"), which does not always work.  *Id.* ¶¶41-60.  But they allege that Defendant's product packaging and listings do not qualify the stated speed in this, or any other, way.  *Id.* ¶¶61-64.  As a result, Plaintiffs allege, Defendant made misrepresentations that allowed it to charge a price premium for its high-speed memory.  *Id.* ¶65.

Based on these allegations, this action was filed on January 14, 2022.  The operative complaint is the Fourth Amended Complaint ("Complaint"), filed on January 26, 2023.  Plaintiffs allege violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act; violations of New York's General Business Law Sections 349 and 350; and breach of express warranty.  *Id.* ¶¶97-159; Lyon Decl. ¶8; Agreement at 1.

The case has seen full briefing on Defendant's multiple motions to dismiss, Plaintiffs' motion for class certification, and Defendant's *Daubert* motions to exclude the opinions of four of Plaintiffs' experts, who submitted declarations in support of class certification.  Lyon Decl. ¶¶8-9; Agreement at 1-2.  The Parties have also exchanged substantial discovery, met extensively in connection with the discovery requests, and taken nine depositions.  Lyon Decl. ¶9; Agreement at 2.

Defendant disputes, and continues to dispute, all material allegations of the Complaint. Agreement at 2.  Defendant expressly denies any liability or wrongdoing of any kind, and maintains that the challenged speed representations are accurate and lawful.  *Id.* at 2-3.

**B.      Settlement negotiations.**

Settlement negotiations were arduous, contentious, and well informed.  Lyon Decl. ¶10.  The Parties began discussing early resolution of the case in February 2024 and agreed to participate in a private mediation before highly regarded mediator Antonio Piazza on March 12, 2024.  *Id.*; Agreement at 2.  Prior to the mediation, the Parties exchanged substantive mediation briefs, setting forth the Parties' positions on liability and damages.  Lyon Decl. ¶10; Agreement at 2.

On March 12, 2024, the Parties participated in a full-day, in-person mediation before Mr. Piazza.  Lyon Decl. ¶12; Agreement at 2.  The negotiations ultimately resulted in a mediator's proposal, which both sides accepted.  Lyon Decl. ¶¶12-13.  The Parties subsequently negotiated a long-form agreement.  *Id.* ¶13.  The negotiation involved the exchange of multiple drafts, which concluded on July 11, 2024.  *Id.*  The Agreement is attached to this Motion as Exhibit 1.

The Parties did not discuss attorneys' fees, costs, and service awards to the Plaintiffs (through the mediator or otherwise) until after their negotiations regarding the benefits to the Settlement Class. *Id.* ¶12.  Nor did the Parties negotiate any clear sailing provision.  Defendant is free to challenge the amount of proposed Class Counsel's fee request.  *Id.*; Agreement §8.1.

**C.      The Settlement.**

**1.      Class definition.**

The Settlement Class consists of all individuals in the United States who purchased one or more Corsair DDR-4 (non-SODIMM, non-laptop) memory products with a base or default (i.e., JEDEC standard Serial Presence Detect or "SPD") speed over 2133 MHz or Corsair DDR-5 (non-SODIMM, non-laptop) memory products with a speed over 4800 MHz, during the Class Period. Agreement §§1.23, 1.30.

The Settlement Class differs from the classes proposed in the operative Complaint in two ways.  First, while the Complaint proposed a class of California purchasers and a class of New York purchasers, the Settlement Class is a nationwide class.  Complaint ¶¶79-80; Agreement §1.30. Second, while the classes proposed in the Complaint included only purchasers of DDR-4 memory products, the Settlement Class includes purchasers of both DDR-4 and DDR-5 memory products. Complaint ¶15; Agreement §1.23.

The Parties approached settlement negotiations with the understanding that if Plaintiffs succeeded in certifying the California and New York classes proposed in the Complaint, Plaintiffs' counsel intended to file additional lawsuits in other states.  Lyon Decl. ¶11.  In cases like this one, where Plaintiffs assert claims on behalf of classes of "purchasers living in [only] the states in which Named Plaintiffs reside," courts still certify nationwide Settlement Classes because of the efficiencies it provides by obviating a series of largely identical lawsuits throughout the country.  *Schneider v. Chipotle Mexican Grill, Inc.*, 2020 U.S. Dist. LEXIS 16365, at *15 (N.D. Cal. Jan. 31, 2020) (certifying nationwide settlement class after plaintiffs had brought claims on behalf of purchasers in three states); *see, e.g.*, *In re MacBook Keyboard Litig.*, 2022 U.S. Dist. LEXIS 220247, at *15 (N.D. Cal. Dec. 2, 2022) (certifying nationwide settlement class after plaintiffs had brought claims on behalf of purchasers in seven states).

The Settlement Class includes purchasers of Defendant's newer generation DDR-5 products for the same reason.  Plaintiffs' counsel intended to include Corsair DDR-5 memory products in subsequent litigations because the asserted theory of deception asserted against Defendant's DDR-4 products is the same for Defendant's newer-generation DDR-5 products.  Lyon Decl. ¶11.  That is,

1   Corsair includes the same allegedly misleading speed representations on its DDR-5 products as it

2   does on its DDR-4 products. Defendant's DDR-4 and DDR-5 products run at certain default speeds

3   out of the box (respectively, 2133 MHz and 4800 MHz), but both are uniformly labeled and

4   advertised as having higher speeds that can only be achieved by modifying the firmware through

5   BIOS adjustments. Lyon Decl. ¶11. *Id.*; *See Hadley v. Kellogg Sales Co.*, 2020 U.S. Dist. LEXIS

6   30193 (N.D. Cal. Feb. 20, 2020) (citing *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559

7   (9th Cir. 2019) (en banc)) (broader settlement class of purchasers with regard to products included

8   can be maintained if "the alleged misrepresentations were 'uniformly' made to settlement class

9   members").

10      To maximize the benefits to the Class, and to serve the interests of judicial economy, the

11  mediator proposed—and the Parties ultimately accepted—a classwide settlement for a nationwide

12  class of purchasers of both DDR-4 and DDR-5 products. *Id.* ¶¶11-13.

13          **2.      Benefits to class members.**

14      <u>Monetary relief.</u> The Settlement Agreement requires Corsair to establish a $5,500,000 non-

15  reversionary cash fund. Agreement §1.32. The Settlement Fund will be used to make benefit

16  payments to the Settlement Class, as well as to pay notice and administration costs, service awards to

17  the Plaintiffs, and an award of attorneys' fees and costs—as approved by the Court. *Id.*

18      To receive a benefit payment, a Settlement Class Member must fill out and file a claim form

19  that is approved by the Settlement Administrator. *Id.* §§1.3, 2.1(b). Class Members may submit a

20  claim for up to five qualifying purchases without proof of purchase or more than five qualifying

21  purchases with reasonable proof of purchase. *Id.* §2.1(b). Class Members whose claims are

22  approved by the Settlement Administrator will receive a pro rata portion of the Net Settlement Fund

23  after the payment of any notice and administration costs, service awards, and attorneys' fees and

24  costs. *Id.*

25      Based on comparable settlements, including others administered by the proposed Settlement

26  Administrator, Plaintiffs anticipate a claims rate of 3-4%. Lyon Decl. ¶15, Ex. B; Weisbrot Decl.

27  ¶¶56-58. Direct notice is not possible for most of the class. *See* Lyon Decl. ¶16; Agreement §§4.1-

28  4.2 (providing for both direct and publication notice because Defendant is unable to identify all Class

Members who purchased products from resellers rather than Corsair directly).  Thus, the claims rate is expected to be on the lower end of claims rates seen in consumer class actions.  *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 456, 468 n.134 (C.D. Cal 2014) (noting claims rates in consumer litigation generally "range from two to twenty percent" but "may be depressed" where "there are millions of class members" and direct notice is not possible for all); *see, e.g.*, *id.* at 468 n.134 (finding 3% claims rate "appropriate" where direct notice was not possible for the entire class); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d. 1244, 1257 (C.D. Cal. Sept. 30, 2016) (approving claims rate of approximately 2.75% where "direct notice could not be provided to more than half of the class"); *Tuttle v. Audiophile Music Direct, Inc.*, 2023 U.S. Dist. LEXIS 229241, at *12, *37 (W.D. Wash. Dec. 26, 2023) (approving claims rate of approximately 2.38% where less than half the class was estimated to have received direct notice).

      <u>Nonmonetary programmatic relief.</u>  The Settlement Agreement also provides for significant nonmonetary relief that benefits the Settlement Class.  Within 90 days of the effective date of the Settlement, Corsair will make changes to its packaging, website, and content provided to resellers.  Instead of including an unqualified listed speed (e.g., "3200 MHz"), Defendant will qualify the listed speed by adding "up to" (e.g. "up to 3200 MHz") and a disclaimer that indicates that, to achieve this speed, "overclocking/PC BIOS adjustments" are required.  Agreement §2.2.  That is, Defendant will update its labeling to identify product speeds in the exact manner that Plaintiffs alleged would not be misleading.  Complaint (Dkt. 61) ¶40 ("[I]f Corsair's High-Speed Memory was only able to operate at the advertised speed after altering the computer's firmware [i.e., adjusting BIOS], this is something a reasonable consumer would want to know and would expect Corsair to qualify its affirmative promises about the memory's speed with this information.").

      Such measures will meaningfully benefit Class Members and future consumers, protecting them from the alleged harm at the heart of this case.  Together with the monetary relief, the programmatic relief makes the Settlement an excellent result for the Class.

      <u>Class recovery.</u>  As explained in Plaintiffs' class certification briefing, actual damages for any one of Plaintiffs' claims are measurable in the form of a singular price premium paid by the class solely as a result of the challenged speed representation.  Class Certification Mot. (Dkt. 78) at 13-16;

1    Weir Decl. (Dkt. 78-8) ¶17.  Assuming there was a 10% price premium on Corsair high-speed

2    memory products attributable to the stated speed, the Settlement's monetary relief alone represents

3    approximately 8.2% of the potential recovery of actual damages if Plaintiffs had asserted and

4    prevailed on each of their claims for the nationwide Settlement Class.  Lyon Decl. ¶22.

5        <u>No reversions.</u>  Under the Settlement, no amount of the Settlement Fund will revert to the

6    Defendant.  Agreement §2.1(e).  The Settlement contemplates a *cy pres* award, providing that any

7    funds resulting from expired benefit checks will be sent by the Settlement Administrator to Khan

8    Academy and will not revert to Corsair.  *Id.* §2.1(d).  Khan Academy is a nonprofit organization that

9    provides free online educational resources, including for computer science and other STEM subjects.

10   Khan Academy's goals are relevant to the subject of this action, which concerns computer

11   performance for PC users.  Neither the Parties nor their counsel have any relationship with Khan

12   Academy.  Lyon Decl. ¶18.

13          **3.    Scope of the release.**

14       The Settlement Agreement calls for a narrowly tailored release of only those claims "on the

15   basis of, arising out of, or relating to the claims or facts alleged, or that could reasonably have been

16   alleged, in the Action."  Agreement §1.25.  Under the Agreement, Settlement Class Members retain

17   their rights against Defendant to bring any claims disconnected from the facts and allegations in this

18   lawsuit.  This avoids inefficient and duplicative litigation while complying with Ninth Circuit

19   precedent requiring that released claims be based on the "identical factual predicate."  *Hesse v. Sprint*

20   *Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *see, e.g.*, *Booth v. Strategic Realty Tr. Inc.*, 2015 U.S. Dist.

21   LEXIS 84143, at *25 (N.D. Cal. June 18, 2015) (Tigar, J.) (holding substantially similar release is

22   "permissible" because it "only releases claims based on the factual predicate of the complaint");

23   *Custom LED, LLC v. eBay, Inc.*, 2013 U.S. Dist. LEXIS 165881, at *19-20 (N.D. Cal. Nov. 20, 2013)

24   (Tigar, J.) (holding substantially similar release is not "improperly broad" because "the claims to be

25   released directly track the allegations in the complaint" and "the settlement does not release unrelated

26   claims that class members may have against defendants").  Proposed Class Counsel are not aware of

27   any other pending cases that will be affected by the Settlement, including the proposed release.  Lyon

28   Decl. ¶19; Kneupper Decl. ¶32.

1

#### 4.     Notice and administration.

The Parties request that the Court appoint Angeion Group as Settlement Administrator.  Lyon Decl. ¶26.  The Parties selected Angeion after proposed Class Counsel solicited competing bids from four settlement administrators.  *Id.*  All of the proposals involved similar methods of providing notice (e.g., social media advertising, search engine marketing) and claims payment (e.g., offering multiple digital payment options, skip tracing returned physical checks).  *Id.*  In the last two years, proposed Class Counsel's firms have engaged Angeion a total of four times outside of this case.  *Id.* (four engagements); Kneupper Decl. ¶33 (zero engagements).  Angeion has robust procedures in place to ensure secure handling of Class Member data and maintains comprehensive insurance coverage, as detailed in the Declaration of Steven Weisbrot, President and CEO of Angeion.  Weisbrot Decl. ¶¶12-16.

Angieon's administration costs will be a fixed fee of $450,000.  Agreement §1.28; Weisbrot Decl. ¶60.  This is reasonable in relation to the value of the Settlement, amounting to approximately 8% of the Settlement Fund.  *See, e.g.*, *Shay v. Apple Inc.*, 2024 U.S. Dist. LEXIS 48702, at *29 (S.D. Cal. Mar. 18, 2024) (approving $204,000 in administration costs, representing 11% of common fund, in settlement with similar structure and notice plan).  These expenses will be paid from the Settlement Fund.  Agreement §1.32.

To effectuate the best possible notice, Defendant will first provide the Settlement Administrator with a Class List of Class Members who made qualifying purchases directly from the Corsair website, including their email addresses and mailing addresses.  Agreement §4.1.  The Settlement Administrator will provide direct notice to these Class Members via email.  *Id.* §4.2(a); Weisbrot Decl. ¶¶22-25.  For any Class Members whose emails are missing or invalid, or whose email notices are returned as undeliverable, the Settlement Administrator will provide direct notice by First-Class U.S. Mail.  Agreement §4.2(a)-(b); Weisbrot Decl. ¶¶27-28.  Plaintiffs recognize that most Class Members purchased products from resellers.  Agreement §4.1(a).  Thus, the Settlement Administrator will supplement the direct notice with a digital media campaign to provide publication notice through multiple channels and platforms—including programmatic display ads (i.e., website banners), social media ads, video ads, and paid search ads.  Agreement §4.2(d); Weisbrot Decl. ¶¶29-

44.  The Settlement Administrator will also create a Settlement Website, which will provide detailed information about the Settlement, including instructions on how to opt out of or object to the Settlement, and allow Class Members to complete and submit a claim online.  Agreement §4.2(c); Weisbrot Decl. ¶¶47-49.

Pursuant to CAFA and the Agreement, the Parties, through the Settlement Administrator, will also serve notice to federal and state officials, as required by 28 U.S.C. § 1715(b), within 10 days of the filing of this Motion.  Agreement §4.2(e); Weisbrot Decl. ¶52.  The Settlement fully complies with CAFA: it does not provide for a recovery of coupons, does not result in a new loss to any Class Member, and does not provide greater relief to some Class Members on the basis of proximity to the Court.  28 U.S.C. §§ 1712-1714.

### 5.    Attorneys' fees and costs.

Proposed Class Counsel intend to apply to the Court for its reasonable attorneys' fees, not to exceed 25% of the Settlement Fund ($1,375,000).  Agreement §8.1; Lyon Decl. ¶20.  This is in line with the Ninth Circuit's presumptively reasonable "benchmark" in common fund cases.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  In fact, this request seeks a lower percentage of the fund than is awarded in many common fund fee awards.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2007) ("[N]early all common fund awards range around 30%" and generally "the rate should be set at 30%."); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 Million will often result in fees above 25%.").  Counsel has devoted over 1260 hours to this case, with a lodestar of approximately $986,000, and anticipates that the lodestar multiplier for the requested fee will be less than 1.395.  Lyon Decl. ¶20; Kneupper Decl. ¶34.  Such a multiplier is within the range commonly awarded.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

Proposed Class Counsel also intend to seek reimbursement of reasonable expenses.  Agreement §8.1.  Counsel expects costs to be approximately $285,000, which includes the expenses

1  of retaining four experts (of over $225,000) and mediation fees, among other costs.  Lyon Decl. ¶20;

2  Kneupper Decl. ¶35.

3         **6.**      **Service awards.**

4        Proposed Class Counsel intend to request service awards of $5,000 each to compensate Mr.

5  McKinney, Mr. Sundeen, and Mr. Alcantara for their service as named Plaintiffs and proposed Class

6  Representatives.  Agreement §8.3; McKinney Decl. ¶7; Sundeen Decl. ¶7; Alcantara Decl. ¶7; Lyon

7  Decl. ¶17.  Each of the Plaintiffs has spent substantial time on this case.  They consulted on the

8  drafting of, and reviewed, complaints before filing.  In response to Corsair's discovery requests, they

9  gathered documents and made their computer systems available for inspection.  They all traveled to,

10  and testified at, all-day in-person depositions.  They submitted declarations in support of Plaintiffs'

11  motion for class certification.  They consulted with proposed Class Counsel before mediation and

12  were available by telephone during mediation.  They discussed the mediation with proposed Class

13  Counsel, evaluated and agreed to the classwide resolution, and reviewed and agreed to the terms of

14  the Settlement Agreement.  McKinney Decl. ¶7; Sundeen Decl. ¶7; Alcantara Decl. ¶7. And they

15  have remained diligent in responding to counsel and informed of the status of the case throughout

16  every stage, including settlement.  *Id.*; Lyon Decl. ¶21.   The service awards will be paid from the

17  Settlement Fund and are subject to the Court's approval.  Agreement §8.3; McKinney Decl. ¶8;

18  Sundeen Decl. ¶8; Alcantara Decl. ¶8.  However, the Settlement is *not* contingent on the Court

19  granting the requested awards.  *Id.*

20  **III.**    **The Settlement merits preliminary approval.**

21        The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly

22  where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Econ. Litig.*, 926

23  F.3d 539, 556 (9th Cir. 2019).  Under Rule 23(e), approving a class action settlement is a two-step

24  process: preliminary approval and then final approval, requiring a fairness hearing.  Fed. R. Civ. P.

25  23(e)(1)(B), (e)(2).  In the first stage here, the Court asks two questions.  First, the Court must

26  determine whether a Rule 23 settlement class may be conditionally certified.  *See Staton v. Boeing*

27  *Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  And second, the Court considers whether a proposed

28  settlement is "fundamentally fair, adequate, and reasonable."  *Id.* at 959.

Here, as explained below: (1) the proposed Settlement Class is cohesive and is fit for conditional approval, and (2) the Settlement is fundamentally fair, adequate, and reasonable.  Thus, the Settlement warrants preliminary approval.

### A.    The Court should conditionally certify the Settlement Class.

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes."  *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).  To conditionally certify a class, a court must determine that the proposed Settlement Class satisfies the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Here, the proposed class meets all the requirements of Rule 23, and the Court should conditionally certify the Settlement Class.

### 1.    The Settlement Class is sufficiently numerous.

Rule 23(a)(1) is met when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  And "courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."  *Dickey v. Advanced Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 8740, at *7 (N.D. Cal. Jan. 17, 2019) (internal quotations omitted).  Here, the Parties estimate that the Settlement Class collectively made up to 12 million purchases nationwide.  Lyon Decl. ¶16.  This indicates that the size of the Class easily satisfies the numerosity requirement.

### 2.    There are questions of law and fact common to the Settlement Class.

Rule 23(a)(2) requires that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact."  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (internal quotations omitted).  Common questions must be "capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In other words, common questions must have a common answer that "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  Thus, commonality is "easily satisf[ied]" where class members "all base their claims on the same legal theory."  *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1019-20 (9th Cir. 1998) (finding commonality met where class members' "claims stem from the same source").

Here, Settlement Class Members' claims are all based on the same allegations and the same legal theory. As explained above, the Settlement Class is defined to include purchasers of DDR-4 or DDR-5 memory products with speeds above 2133 MHz or above 4800 MHz, respectively (the speed that each generation of memory achieves without overclocking). *See supra* §II(C)(1). Thus, every Settlement Class Member purchased Corsair memory products with a stated speed that is higher than what can be achieved out of the box. As a result, there are common questions of law and fact that will generate common answers for all Settlement Class Members. These include, but are not limited to: (1) whether Defendant made false or misleading representations about the speed of its memory on its product packaging and in its product listings; (2) whether Defendant's representations were likely to deceive a reasonable consumer; (3) whether Defendant's representations were material to consumers' purchasing decisions; and (4) how to calculate any resulting price premium attributable to the representations. *See, e.g.*, *Dickey v. Advanced Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 8740, at *8-9 (holding, in certifying class in false advertising case, that "whether a reasonable consumer would have been deceived by the [alleged misrepresentation] as used in Defendant's advertising" is a common question).

### 3.    Plaintiffs' claims are typical to those of the Class.

Rule 23(a)(3) requires the class representative's claims or defenses be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is satisfied where the "plaintiff's claims arose from the same set of events and course of conduct that gave rise to the claims of other class members." *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284 (N.D. Cal. 2020). This standard is "permissive": claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In particular, the claims of plaintiffs who "did not buy each product" purchased by the rest of the class can remain "reasonably co-extensive with those of absent class members" as long as the products include "substantially the same misrepresentation." *Chavez v. Blue Sky Nat. Bev. Co*,

1   268 F.R.D. 365, 375, 378 (N.D. Cal. 2010) (internal quotations omitted); *Ang v. Bimbo Bakeries*

2   *USA, Inc.*, 2018 U.S. Dist. LEXIS 149395, at *23 (N.D. Cal. Aug. 31, 2018) (collecting cases).

3        Here, Plaintiffs allege that they, like all other Class Members, purchased at least one of

4   Defendant's high-speed memory products and were presented with misleading higher speeds prior to

5   purchase.  Complaint ¶¶67-78, 85.  And regardless of the product's generation (DDR-4 or DDR-5) or

6   other differentiating features, the alleged misrepresentation is substantially the same: an unqualified

7   statement identifying a specific speed above the out-of-the-box speed.  Thus, Plaintiffs' and Class

8   Members' claims arise from the same set of events and course of conduct, satisfying typicality.

9        **4.    Plaintiffs and proposed Class Counsel have fairly and adequately**

10       **represented the Class's interests.**

11       Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the

12   interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts measure adequacy using two standards: "(1)

13   Do the representative plaintiffs and their counsel have any conflicts of interest with other class

14   members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously

15   on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  "Adequate

16   representation is usually presumed in the absence of contrary evidence."  *Californians for Disability*

17   *Rights, Inc. v. Cal. Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

18       Here, as explained above, Plaintiffs have the same claims as all Settlement Class Members.

19   *See supra* §III(A)(3).  They have no separate or antagonistic interests to those of the Settlement

20   Class, and have the same interest in recovering all available damages.  McKinney Decl. ¶6; Sundeen

21   Decl. ¶6; Alcantara Decl. ¶6.  Plus, all three Plaintiffs have diligently assisted their counsel in

22   litigating this dispute.  McKinney Decl. ¶7; Sundeen Decl. ¶7; Alcantara Decl. ¶7; Lyon Decl. ¶21.

23   They consulted on the drafting of, and reviewed, complaints before filing; gathered information and

24   documents during discovery; made their computer systems available for inspection; testified at

25   depositions; submitted declarations at class certification; consulted with proposed Class Counsel

26   before mediation; made themselves available during the mediation for any questions that might have

27   arisen; discussed the mediation and potential classwide resolution with Counsel; evaluated and

28   agreed to the resolution; and reviewed and agreed with the terms of the Agreement.  McKinney Decl.

¶7; Sundeen Decl. ¶7; Alcantara Decl. ¶7.  Plaintiffs took their roles seriously, and will continue vigorously pursuing relief on behalf of the Settlement Class.  They should therefore be appointed Class Representatives.

Plaintiffs' Counsel—Dovel & Luner and Kneupper & Covey—have also diligently investigated and litigated this case, and achieved an excellent result for the Settlement Class. Counsel have significant experience litigating and settling complex cases, including class actions, and are well versed in the applicable statutes and causes of action at issue here.  Lyon Decl. ¶¶4-7, Ex. A; Kneupper Decl. ¶¶2-31.  Moreover, Counsel have dedicated substantial time and resources to this case on a contingency basis while facing a real risk of recovering nothing.   Lyon Decl. ¶¶3, 8-10, 20; Kneupper Decl. ¶¶34-35.  In short, proposed Class Counsel have vigorously prosecuted this case and will continue to do so.

**5.      The Settlement Class meets the requirements of Rule 23(b)(3).**

Under Rule 23(b)(3), conditional certification is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations and citations omitted).  Rule 23(b)(3) asks whether (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Here, the Settlement Class meets both requirements.

Common questions predominate in the Settlement Class.  "The predominance inquiry … asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal quotations and citations omitted).  Thus, where "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.

Here, the question of whether Defendant's advertised speed is "material and likely to deceive a reasonable consumer will be the same for the entire class," and this "common question" is "more significant than other questions at issue in this suit" and "predominate[s] over any individual

questions that may arise." *Korolshteyn v. Costco Wholesale Corp.*, 2017 U.S. Dist. LEXIS 38192, at *15-16 (S.D. Cal. Mar. 16, 2017).

<u>A class action is the best way to resolve this dispute.</u>  The superiority requirement asks whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  A class action is superior where the "'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims." *Just Film Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017).  A class action is also superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Here, the individual claims of Class Members are small.  *See, e.g.*, McKinney Decl. (Dkt. 78-4) ¶2 (he paid $89.99 for his product).  Were Class Members to litigate their claims on an individual basis, they would quickly spend more on litigating than they could hope to recover.  Plus, the filing of individual suits by even just a few thousands of the millions of Class Members "would create an unnecessary burden on judicial resources." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 445 (E.D. Cal. July 1, 2013).  Settling the case as a class action both protects judicial resources and aids the Settlement Class, while still permitting any Class Member who wishes to bring their own litigation to opt out.  *See* Fed. R. Civ. P. 23(c)(2)(B)(v); Agreement §4.5 (opt-out process).

*          *          *

In short, the proposed Settlement Class satisfies the requirements of Rules 23 and should be conditionally certified.

**B.      The Settlement is fair, reasonable, and adequate.**

Preliminary approval of a settlement is appropriate if the settlement (1) "appears to be the product of serious, informed, non-collusive negotiations"; (2) "falls within the range of possible approval"; (3) "does not improperly grant preferential treatment to class representatives or segments of the class"; and (4) "has no obvious deficiencies." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  However, a "court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class." *Villafan v. Broadspectrum*

*Downstream Servs.*, 2021 U.S. Dist. LEXIS 249763, at *14 (N.D. Cal. Apr. 8, 2021). Factors in the court's consideration include: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Here, the Settlement meets all the criteria for preliminary approval, and the relevant factors weigh in favor of approval.

### 1.    The Settlement is the product of serious, informed, non-collusive negotiations.

To determine if a settlement warrants preliminary approval, a court "first considers 'the means by which the parties arrived at settlement.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 99071, at *639 (N.D. Cal. July 26, 2016). "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*; *see Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). In particular, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007).

Here, settlement negotiations were well informed. The Parties were represented by knowledgeable, competent counsel with significant experience with complex litigation and class actions. Lyon Decl. ¶¶4-7, Ex. A; Kneupper Decl. ¶¶2-31. Counsel attended mediation only after substantial progress in the litigation (including the substantial completion of fact discovery) and extensive analysis of the case (including full briefing on Defendant's multiple motions to dismiss, Plaintiffs' motion for class certification, and Defendant's *Daubert* motions). *See supra* §II(A)-(B); Agreement at 2.

Moreover, Counsel enlisted the services of an experienced mediator, Antonio Piazza, to guide settlement discussions.  Lyon Decl. ¶¶10-13; Agreement at 2.  That the Parties eventually agreed to a mediator's proposal further supports the non-collusive nature of the Settlement.  Lyon Decl. ¶13; *see, e.g.*, *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, at *25 (N.D. Cal. Mar. 28, 2019) (proposed settlement was "the product of arm's-length bargaining" where it was based on a mediator's proposal); *Morales v. Stevco, Inc.*, 2011 U.S. Dist. LEXIS 130604, at *32 (E.D. Cal. Nov. 10, 2011) (settlement by means of a mediator's proposal was non-collusive).

The Ninth Circuit has identified "red flags" that may suggest potential collusion.  *Briseño v. Henderson*, 998 F.3d 1014, 1018 (9th Cir. 2021).  These "subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations" include "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (internal quotations omitted).

None are present here.  To the contrary, proposed Class Counsel will seek a fee award not exceeding 25% of the Settlement Fund—the Ninth Circuit's benchmark in common fund cases.  *See supra* §II(C)(5); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  The Parties did not negotiate a clear sailing provision, and Defendant is free to challenge the amount of fees requested by proposed Class Counsel.  *See supra* §II(B); Agreement §8.1.  And the Settlement Fund is non-reversionary—under no circumstances will any funds revert back to Defendant.  *See supra* §II(C)(2); Agreement §2.1(e), (d) (*cy pres* award of the value of any uncashed checks to Khan Academy).  The absence of any of these signs of potential collusion further supports preliminary approval.

### 2.    The Settlement falls well within the range of possible approval.

"To determine whether a settlement agreement falls within the range of possible approval, courts evaluate and balance certain factors, including: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and

the stage of the proceedings; [and] the experience and views of counsel." *Bakhtiar v. Info. Res., Inc.*, 2020 U.S. Dist. LEXIS 258600, at *25 (N.D. Cal. Aug. 4, 2020) (Tigar, J.) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  All of these factors weigh in favor of granting preliminary approval here.

The strength of plaintiffs' case and the risk of further litigation.  The Settlement is especially favorable in light of the risk, expense, complexity, and likely duration of continued litigation.  While Plaintiffs' Counsel remain confident in the strength of the case, Corsair has already raised several arguments that would present serious obstacles in the next stages of litigation.  Lyon Decl. ¶23.

Corsair has raised challenges to Plaintiffs' ability to prove classwide reliance and classwide damages.  Plaintiffs maintain that classwide exposure to the alleged speed representations means classwide reliance can be presumed at class certification.  Class Certification Mot. (Dkt. 78) at 12; Class Certification Reply (Dkt. 114) at 9-12.  Defendant disagrees, arguing that Plaintiffs must demonstrate each class member's individual reliance because of variations in content and wording across the representations made on the challenged products' packaging and online listings, especially since most products were sold by independent resellers.  Class Certification Opp. (Dkt. 96) at 14-18.  Moreover, Defendant has attacked the feasibility of measuring classwide damages, in opposing class certification and in bringing *Daubert* challenges to the testimony of both of Plaintiffs' damages experts.  *Id.* at 22-24; *see generally* Mot. to Exclude Opinions of Colin Weir (Dkt. 115); Mot. to Exclude Opinions of Hal Singer (Dkt. 116).  Defendant's potential success on any of these arguments would have stymied Settlement Class Members' ability to obtain relief.

Corsair also contests its liability to Plaintiffs and Class Members, maintaining that its advertising and labeling of its high-speed memory products were lawful.  Agreement at 2.  Specifically, Defendant disputes that Plaintiffs will be able to establish deception and materiality— that reasonable "purchasers of Corsair DRAM were focused on or expected zero set-up 'out of the box,' that they were averse to [altering their firmware] to set their DRAM to the rated speeds, or that they had concerns about running DRAM at the tested 'overclocked' speeds."  Class Certification Opp. (Dkt. 96) at 20.  At class certification, the Parties presented competing consumer surveys that reached opposite conclusions on the questions of deception and materiality—offering a preview of

the major merits disputes that lie ahead in further litigation.  Class Certification Reply (Dkt. 114) at 4.  Though the class certification stage asked only whether deception and materiality were "susceptible to common proof" (not whether deception and materiality had been proved), the Parties would incur further costs and delays in litigating these questions of liability to completion.  Resolving liability issues, as well as damages issues, requires prolonging the "battle of the experts."  *Kumar v. Salov N. Am. Corp.*, 2017 U.S. Dist. LEXIS 105463, at *21-23 (N.D. Cal. July 7, 2017) .  And, even in the best-case scenario for Plaintiffs and the Settlement Class, the potential next steps in the case—briefing on "dispositive … motions [such as summary judgment], trial, and appeals"—inevitably entail significant additional time and expense.  *Bakhtiar v. Info. Res., Inc.*, 2020 U.S. Dist. LEXIS 258600, at *26 (N.D. Cal. Aug. 4, 2020) (Tigar, J.); *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

In short, the Parties have negotiated a beneficial and reasonable Settlement, and the "high risk, expense, and complex nature of the case weigh in favor of approving" it.  *Larsen v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 95538, at *13 (N.D. Cal. July 11, 2014).

<u>The amount offered in settlement.</u>  The Settlement offers significant monetary and nonmonetary benefits to Class Members.  First, the Settlement provides substantial and immediate monetary relief to Class Members.  Payments to Class Members who submit valid claims will be based on the number of products they purchased, and will come from the $5,500,000 Settlement Fund.  Agreement §§2.1(b), 1.32.  After accounting for notice and administration costs (fixed fee of $450,000), attorneys' fees and costs (expected to be $1,375,000 and $285,000, respectively), and service awards for the three Plaintiffs (expected to be $5,000 each, or $15,000 total), the Parties anticipate that $3,375,000 of the Settlement Fund will be used exclusively to provide monetary benefits to the Settlement Class—an excellent result for Class Members.  Lyon Decl. ¶17; Weisbrot Decl. ¶60.  On top of this, the Settlement also provides substantial nonmonetary relief in the form of meaningful changes to Defendant's packaging, website, and content provided to resellers.  *See supra* §II(C)(2); Agreement §2.2.  These modifications to Defendant's "labeling and advertising of its

products nationwide to include … disclaimer[s]" entail "a 'costly process' that benefits the Settlement Class but is not accounted for in the settlement amount." *Smith v. Keurig Green Mt., Inc.*, 2022 U.S. Dist. LEXIS 120863, at *28 (N.D. Cal. July 8, 2022).

The Settlement is also reasonable given Defendant's maximum potential liability. When evaluating whether a Settlement falls within the realm of reasonableness "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007). "It is well-settled law that a cash settlement may be acceptable even though it amounts to only a fraction of the potential recovery." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (collecting cases). This is especially true where "continued litigation brings a risk Plaintiff[s] and the class will receive nothing." *Koeppen v. Carvana, LLC*, 2024 U.S. Dist. LEXIS 81686, at *18 (N.D. Cal. May 3, 2024).

Here, the Settlement not only provides substantial relief but also represents a reasonable outcome when compared to the maximum potential class recovery. As outlined above, the Settlement's monetary relief alone represents approximately 8.2% of a potential class recovery for the nationwide Settlement Class. *See supra* §II(C)(2); Lyon Decl. ¶22. This is an excellent outcome for the Settlement Class, especially in light of the sizable risks of further litigation discussed above— which would be compounded by the need to file additional suits in states throughout the country— and it falls within the range of accepted settlements. *See, e.g.*, *Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 U.S. Dist. LEXIS 159020, at *17 (N.D. Cal. Nov. 23, 2015) (granting final approval of a net settlement amount representing 13.6% of the plaintiffs' estimated maximum possible recovery at trial); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' estimated maximum recovery at trial).

Moreover, the Settlement is on par with outcomes that have been approved in similar cases, further demonstrating that this Settlement falls well within the range of possible approval. *See, e.g.*, *Dickey v. Advanced Micro Devices, Inc.*, 2020 U.S. Dist. LEXIS 30440, at *21-24 (N.D. Cal. Feb. 21, 2020) (approving $12.1 million common fund settlement, including fee award of 25% of the fund, in

case concerning false advertising of computer chip performance); *Carlotti v. ASUS Comput. Int'l*, 2020 U.S. Dist. LEXIS 108917, at *20-21 (N.D. Cal.) (approving settlement with maximum monetary relief of $5.2 million, including fee award of approximately 25% of the fund, in case concerning false advertising of laptop battery performance); *Koller v. Med Foods, Inc.*, 2018 U.S. Dist. LEXIS 231901, at *17, *21 (N.D. Cal. Aug. 29, 2018) (approving $7 million common fund settlement, including fee award of 30% of the fund, in case concerning false advertising of olive oil and asserting an average price premium of approximately 10%).  Additional characteristics of these and other comparable settlements are summarized in an attached chart.  Lyon Decl., Ex. B.

The extent of discovery completed and the stage of the proceedings.  It should be evident that "the parties ha[d] sufficient information to make an informed decision about settlement," although "extensive formal discovery … is not a necessary ticket to the bargaining table."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal quotations omitted).

Here, the Parties did in fact arrive at the Settlement following extensive formal discovery, with both sides serving and preparing initial disclosures, requests for production, and interrogatories, and taking depositions.  Lyon Decl. ¶9.  Mediation took place only after the Parties made significant progress in the litigation (through the substantial completion of fact discovery) and conducted a thorough analysis of the case (including full briefing on Defendant's multiple motions to dismiss, Plaintiffs' motion for class certification, and Defendant's *Daubert* motions).  *See supra* §II(A)-(B); Agreement at 2.

The experience and views of counsel.  "[R]epresentation by competent counsel familiar with the law in the relevant area and with 'the strengths and weaknesses of [the parties'] respective positions, suggests the reasonableness of the settlement.'"  *Navarrete v. Sprint United Mgmt. Co.*, 2021 U.S. Dist. LEXIS 40398, at *30 (C.D. Cal. Mar. 2, 2021).  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007).

Here, proposed Class Counsel recommend the Settlement as fair, adequate, and reasonable, and believe that it represents an excellent outcome for the Class.  Lyon Decl. ¶¶22-24; Kneupper Decl. ¶¶37.  As explained above, proposed Class Counsel have significant experience in complex

litigation, including in consumer class actions.  Lyon Decl. ¶¶4-7, Ex. A; Kneupper Decl. ¶¶2-31.

Plus, they have devoted substantial time to this case and are therefore well informed about the

strengths and weaknesses of the Parties' respective positions.  Lyon Decl. ¶¶8-10, 20; Kneupper

Decl. ¶34.  Thus, their recommendation of the Settlement weighs in favor of preliminary approval.

### 3. The Settlement does not improperly grant preferential treatment to the proposed Class Representatives or segments of the Class.

In determining whether to grant preliminary approval, courts consider "whether the proposal

'improperly grant[s] preferential treatment to class representatives or segments of the class.'"  *Perks*

*v. ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *18 (N.D. Cal. Mar. 25, 2021); *see* Fed. R.

Civ. P. 23(e)(2)(D) (requiring courts to analyze whether "the proposal treats class members equitably

relative to each other").

Here, the Settlement does not improperly prioritize the named Plaintiffs.  Proposed Class

Counsel will seek only a reasonable and proportionate service award of $5,000 on behalf of each

Plaintiff.  *See supra* §II(C)(6).  As the Ninth Circuit has explained, service awards are justified "to

compensate class representatives for work undertaken on behalf of a class," and are "fairly typical in

class action cases."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).  In

the Ninth Circuit, "$5,000 is presumptively reasonable."  *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D.

326, 335 (N.D. Cal. 2014).  Given Plaintiffs' diligence and commitment to the case, discussed above,

the "presumptively reasonable" $5,000 service awards are more than justified.  Plus, the Settlement is

not contingent on the Court's approval of service awards.  Agreement §8.3.  This means "the awards

here are unlikely to create a conflict of interest between the named plaintiffs and absent class

members."  *Ahmed v. HSBC Bank USA*, 2019 U.S. Dist. LEXIS 104401, at *34 (C.D. Cal. June 21,

2019).

Nor does the Settlement improperly favor segments of the Class.  Class Members will receive

different payments depending on how many Corsair high-speed memory products they purchased.

Agreement §2.1(b).  This manner of distributing benefits ties Class Members' recovery to their

potential damages and is an equitable means of allocating the Settlement Fund.  *See Perks v.*

*ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *18 (N.D. Cal. Mar. 25, 2021) ("pro rata distribution is inherently equitable" and "treats Class Members fairly").

### 4.     The Settlement has no obvious deficiencies.

As detailed above, the Settlement provides excellent relief to Class Members.  In addition, there are no obvious deficiencies.  The Settlement complies with this Court's procedural guidelines. Lyon Decl., Ex. C (Northern District of California's Procedural Guidelines for Class Action Settlements checklist).

*     *     *

In sum, the Settlement is fair and merits preliminary approval.

### C.     The Court should approve the proposed notice plan.

Under Rule 23(e)(1) "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Here, the proposed notice plan is the "best notice that is practicable under the circumstances" and should be approved.  Fed. R. Civ. P. 23(c)(2)(B); *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 617 (1997).

The Parties have devised a multi-step notice plan designed to provide all necessary information to Settlement Class Members to enable them to make a well-informed decision about their participation in the Settlement.  First, Defendant will provide a Class List identifying Class Members who purchased directly from Corsair, as well as their emails and relevant addresses, to the Settlement Administrator.  Agreement §4.1.  As discussed above, these Class Members will receive direct notice by email—or by mail, if email notice fails.  *See supra* §II(C)(4); Weisbrot Decl. ¶¶22-28.

The direct notices, drafted in plain language, provide all relevant information about the case, the Settlement, and Settlement Class Members' rights.  Agreement, Exs. B-C.  In particular, the notices provide information about the nature of the claims asserted in the lawsuit, a summary of the Settlement terms, relevant deadlines, and a statement about the release of claims.  *Id.*  The notices also inform Class Members about their rights to opt out of or object to the Settlement and explain how to do so.  *Id.*

1      In addition to the direct notice to Class Members who purchased directly from Corsair, the

2  Settlement Administrator will provide publication notice through a robust digital media campaign—

3  including programmatic display advertising (i.e., website banners), social media advertising, video

4  advertising, and search engine marketing.  *See supra* §II(C)(4); Weisbrot Decl. ¶¶29-44.  The ads will

5  link to the Settlement Website.  Agreement §4.2(d); Weisbrot Decl. ¶¶30, 40, 42, 44.

6      The Settlement Website will contain substantially similar information as the direct notices

7  about the Settlement, including instructions on how to opt out or object to the Settlement if a Class

8  Member so chooses.  Agreement §4.2(c); Weisbrot Decl. ¶47.  Through the Settlement Website,

9  Class Members will also be able to file claim forms online, access relevant documents in the case,

10  and review important dates and deadlines.  Agreement §§1.34, 4.2(c); Weisbrot Decl. ¶¶47-49.  The

11  Settlement Administrator will also create a toll-free hotline—that runs 24 hours a day, 7 days a

12  week—devoted to the case.  Weisbrot Decl. ¶51.

13      In light of this comprehensive proposal, the Court should approve the notice plan and appoint

14  Angeion Group as the Settlement Administrator.  Angeion has significant experience administering

15  class action settlements and anticipates that the proposed plan will provide the best notice practicable.

16  *Id.* ¶¶ 2-11, 65.

17  **IV.    Conclusion.**

18      For the foregoing reasons, the Motion should be granted.

19

20  Dated: July 12, 2024                    Respectfully submitted,

21

22                                          */s/ Richard Lyon*
                                            Richard Lyon (Cal. Bar No. 229288)
23                                          rick@dovel.com
                                            Simon Franzini (Cal. Bar No. 287631)
24                                          simon@dovel.com
                                            Jonas Jacobson (Cal. Bar No. 269912)
25                                          jonas@dovel.com
                                            DOVEL & LUNER, LLP
26                                          201 Santa Monica Blvd., Suite 600
                                            Santa Monica, California 90401
27                                          Telephone: (310) 656-7066
                                            Facsimile: (310) 656-7069
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Counsel for Plaintiffs and the Proposed Class*