UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO MCKINNEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CORSAIR GAMING, INC.,<br><br>    Defendant. | Case No. 22-cv-00312-JST<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 153 |

Before the Court is Plaintiffs' motion for class certification and preliminary approval of class action settlement. ECF No. 153. For the reasons set forth below, the Court will deny the motion.

I.    **BACKGROUND**

    A.    **Factual and Procedural Background**

Plaintiffs filed this action on January 14, 2022. ECF. No. 1. The operative complaint is the fourth amended complaint, filed on January 26, 2023. ECF No. 61. Plaintiffs allege violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act; violations of New York's General Business Law Sections 349 and 350; and breach of express warranty. *Id.* ¶¶ 97–159.

The complaint alleges that Defendant Corsair Gaming, Inc., sells high-speed memory products through its website and through authorized resellers, both online and in person. *Id.* ¶¶ 1, 22. Defendant's product packaging and product listings—on its own website and resellers' websites—state that Corsair's memory runs at specific, high speeds, measured in megahertz (MHz). *Id.* ¶¶ 18–35. Plaintiffs Antonio McKinney and Clint Sundeen, residents of California, and Plaintiff Joseph Alcantara, resident of New York, purchased Corsair DDR-4 memory

products. *Id.* ¶¶ 6–8. Out of the box, DDR-4 memory runs at a speed of 2133 MHz. *Id.* ¶ 41. Each Plaintiff's product was advertised with a specific speed above 2133 MHz, such as "3200 MHz" or "3600 MHz." *Id.* ¶¶ 67–78. Plaintiffs allege that they, like other reasonable consumers, understood Defendant's speed representations to mean that their respective products would run at the stated speed out of the box, and that they relied on these representations when making their purchases. *Id.* ¶¶ 36, 67, 72, 76.

Plaintiffs allege that Defendant's speed representations were false and misleading. Specifically, they allege that the higher stated speeds can be achieved only if users modify their computers' firmware, through BIOS adjustments (through a process known as "overclocking"), which does not always work. *Id.* ¶¶ 41–60. Defendant's product packaging and listings, they allege, do not qualify the stated speed in any way. *Id.* ¶¶ 61–64. Plaintiffs allege that as a result, Defendant made misrepresentations that allowed it to charge a price premium for its high-speed memory. *Id.* ¶ 65.

On March 22, 2024, after full briefing on Plaintiffs' motion for class certification and Defendant's *Daubert* motions to exclude the opinions of Plaintiffs' experts, the parties notified the Court that they were preparing a settlement agreement regarding a classwide resolution to the case. ECF No. 144. Plaintiffs filed the motion for class certification and preliminary approval on July 12, 2024. ECF No. 153.

**B.     Terms of the Settlement**

**1.     Class Definition**

The Agreement contemplates certification of the following Settlement Class for settlement purposes only: all individuals in the United States who purchased one or more Corsair DDR-4 (nonSODIMM, non-laptop) memory products with a base or default (i.e., JEDEC standard Serial Presence Detect or "SPD") speed over 2133 MHz or Corsair DDR-5 (non-SODIMM, non-laptop) memory products with a speed over 4800 MHz, during the Class Period. ECF No. 153-1 §§ 1.23, 1.30 (Proposed Settlement Agreement). The following people and entities are excluded from the Settlement Class: (1) any judge or magistrate judge presiding over this action and members of their families, (2) the defendant, defendant's subsidiaries, parent companies, successors,

2

predecessors, and any entity in which the defendant or its parents have a controlling interest and their current or former officers, directors, and employees, (3) counsel of record (and their respective law firms) for the Parties; (4) persons who properly execute and file a timely request for exclusion from the class, and (5) the legal representatives, successors, or assigns of any such excluded persons. *Id.* § 1.30.

### 2. Relief

The Settlement requires Corsair to establish a $5,500,000 Settlement Fund, which will be used to make cash payments to Class Members. *Id.* §1.32. Class Members who file valid claims will receive a pro rata portion of the Net Settlement Fund after the payment of any notice and administration costs, service awards, and attorney's fees and costs, as approved by the Court. *Id.* §§ 1.18, 2.1(b). The Settlement also requires Corsair to make changes to its packaging, website product pages, and specifications provided to resellers for the covered high-speed memory products. Rated speeds for the products will be listed as "up to" speeds, with the following corresponding text: "Requires overclocking/PC BIOS adjustments. Maximum speed and performance depend on system components, including motherboard and CPU." *Id.* § 2.2(a)–(c).

### 3. Release

The Settlement provides for Class Members' release of claims, known or unknown, "on the basis of, arising out of, or relating to the claims or facts alleged, or that could reasonably have been alleged, in the Action." *Id.* §1.25. Class Members will retain their rights against Defendant to bring any claims disconnected from the facts and allegations in this lawsuit.

### 4. Administration

The Parties' proposed Settlement Administrator is Angeion Group. *Id.* § 1.29. The Settlement provides that Angeion's administration costs will be fixed at $450,000. *Id.* § 1.28. To notify Class Members of the Settlement, the Parties will provide both direct notice and publication notice. *Id.* §§ 4.1, 4.2. Direct notice by email (or, if the email notice bounces back, by mail) will be provided to Class Members who made qualifying purchases directly from the Corsair website and for whom Corsair has contact information. *Id.* Because most Class Members purchased products from resellers rather than Corsair directly, the Settlement provides for publication notice

3

through a digital media campaign, including programmatic display ads (*i.e.*, website banners), social media ads, video ads, and paid search ads. *Id.* §§ 4.1(a), 4.2(d). Among other information, the notice will advise the Settlement Class of their rights under the Settlement, including the right to object to or opt out of the Settlement, and the details of the Final Approval Hearing. *Id.* §§ 1.17, 4.3. In addition, the Settlement Administrator will create a Settlement Website containing necessary and pertinent information about the Settlement for Class Members, including instructions and deadlines for filing a claim, opting out, and objecting. *Id.* § 4.2(c).

### 5. Attorney's Fees and Costs; Service Awards

The Settlement contemplates a petition by Class Counsel for reasonable attorney's fees and costs, as well as service awards for the three named Plaintiffs as compensation for their time and effort in the action. Under the Agreement, Class Counsel may seek attorney's fees not to exceed 25% of the Settlement Fund ($1,375,000), reimbursement of reasonable expenses (estimated to be $285,000), and service awards of up to $5,000 for each Class Representative. *Id.* §§ 8.1, 8.3. The Settlement is not contingent on the Court's approval of any of these requests. *Id.*

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(a).

## III. DISCUSSION

### A. Class Certification

#### 1. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class certification. "Rule 23(a) provides that a class action is proper only if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 370 (N.D. Cal. 2021) (citing Fed. R. Civ. P. 23(a)(1)–(4)). In addition, the proposed class must satisfy one of the three requirements set forth in Rule 23(b). *LaCasse v. Wash. Mut., Inc.*, 198 F. Supp. 2d 1255, 1260 (W.D. Wash. 2002). Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting individual class members, and that a class action is superior to other

4

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Even if the parties have agreed to settle a case on a class-wide basis, the court must determine whether the proposed class satisfies all the requirements of Rule 23(a) (numerosity, typicality, commonality, and adequacy of representation) and either Rule 23(b)(1), (2), or (3)." Manual for Complex Litigation § 22.921 (4th ed. 2004) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997)); *see* Fed. R. Civ. P. 23(e)(1)(B) (requiring court to direct notice of settlement "if giving notice is justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the propos[ed] [settlement]"). In the settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)). Even so, "other specifications of . . . Rule [23]— those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention in the settlement context." *Id.*

### 2. Rule 23(a)

#### a. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed Settlement Class is estimated to have made up to 12 million purchases. Thus, the proposed Settlement Class is so numerous that joinder of all members is impracticable.

#### b. Commonality

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions must be "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In other words, common questions must have a common answer that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* For the purposes of Rule 23(a)(2), "even a single common question" is sufficient. *Id.* at 359 (quotation and alteration marks omitted). Here, there are multiple common questions of law and fact, including: (1) whether Defendant made false or

5

misleading representations about the speed of its memory on its product packaging and in its product listings; (2) whether Defendant's representations were likely to deceive a reasonable consumer; (3) whether Defendant's representations were material to consumers' purchasing decisions; and (4) how to calculate any resulting price premium attributable to the representations.

### c. Typicality

Rule 23(a)(3) additionally requires that the class representative's claims or defenses be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To show typicality, the named plaintiffs' claims must be "reasonably co-extensive with those of absent class members," but "they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiffs' claims are typical of the Settlement Class because Plaintiffs allege that they, like all other Class Members, purchased Defendant's memory products with a stated speed that is higher than what can be achieved out of the box, and that they relied on the speed representations when making their purchases.

### d. Adequacy

Under Rule 23(a)(4), "named Plaintiffs must fairly and adequately protect the interests of the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). Courts measure adequacy using two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Here, the Court finds that proposed Class Counsel have no conflicts of interest with absent Class Members, and that they are competent and capable of exercising their responsibilities. The Court also finds that Plaintiffs have no conflicts of interest with the Settlement Class.

### 3. Rule 23(b)(3)

#### a. Predominance

Plaintiff seeks provisional certification of the settlement class under Rule 23(b)(3). This rule requires that questions common to all class members "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Common questions must

predominate as to each cause of action for which the moving party seeks class certification. *See Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 361 (N.D. Cal. 2011). As noted above, the Supreme Court has established that the predominance requirement applies with equal, or "even heightened," force to the provisional certification of a settlement class. *Amchem*, 521 U.S. at 620; *accord id.* at 622–25 (affirming the holding that a proposed settlement class could not be certified because it lacked predominance). Here, common questions predominate, such as whether Corsair's statements regarding processing speeds were likely to deceive a reasonable consumer.

### b.   Superiority

The superiority requirement asks whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, because Settlement Class Members' potential individual claims are small, and because their claims are virtually identical, a class action is a superior method to adjudicate this dispute.

### B.   Preliminary Approval

#### 1.   Legal Standard

The Court's review of this proposed class action settlement is governed by Rule 23(e) of the Federal Rules of Civil Procedure. That rule generally requires the Court "to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026 (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* (*citing Officers for Justice v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, and consistent with plaintiff's counsel's

7

fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

To assess a settlement proposal, courts must balance several factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026. In the examination for overall fairness, the proposed settlement must be "taken as a whole, rather than the individual component parts." *Id.* Courts do not have the ability to "delete, modify, or substitute certain provisions"; instead, the settlement "must stand or fail in its entirety." *Id.* (citations omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice*, 688 F.2d at 625. If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

"In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is 'plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quoting *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014)). The reasonable settlement range will be higher for a stronger claim than for a weaker one. *See In re High-Tech Emp. Antitrust Litig.*, 2014 WL 3917126, at *4 ("The Court is concerned that Class members recover less on a proportional basis from the instant settlement with Remaining Defendants than from the settlement with the Settled Defendants a year ago, despite the fact that the case has progressed consistently in the Class's favor since then.").

Also, settlements that occur before formal class certification require a higher standard of fairness. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). When reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*

8

*Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quotation and alteration marks omitted). Signs of collusion include, but are not limited to: (1) a disproportionate distribution of the settlement fund to counsel; (2) a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendants rather than to be added to the settlement fund. *Id.* at 947.

### 2. Analysis

Many of the factors enumerated above support a finding that the Settlement falls within the range of possible approval. For example, the proposed requested attorney's fees of 25% are at benchmark level for class action settlements in the Ninth Circuit. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Similarly, the proposed incentive awards of $5,000 are presumptively reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009).[1]

There also are none of the signs of collusion the Court watches for when a settlement is reached before class certification. *In re Bluetooth*, 654 F.3d at 946. The agreement was reached after the parties engaged in formal discovery, fully briefed a motion for class certification, and engaged in mediation with a well-regarded and experienced mediator. Additionally, the settlement agreement does not contain a reversionary clause. The entire gross settlement award will be made available to the class, and unclaimed funds will be distributed to Khan Academy. ECF No. 153-1 at 12. Nor does the agreement include a "clear sailing provision."

Nonetheless, there are obvious deficiencies—discussed below—that prevent the Court from granting preliminary approval at this time.

#### a. Whether the Proposed Settlement Falls in the Range of Reasonableness

The Court cannot approve the settlement as currently presented because it is unable to determine whether the proposed settlement falls within the range of reasonableness. Plaintiffs state that the amount offered in settlement "is . . . reasonable given Defendant's maximum

---

[1] At some point, the common law will have to reckon with inflation. $5,000 in April 2009, when *Hopson* was decided, had the same buying power as $7,481.76 has today. Bureau of Labor Stat., *CPI Inflation Calculator*, https://www.bls.gov/data/inflation_calculator.htm (measured as of February 2025). The gap will only grow over time.

9

1  potential liability." ECF No. 153 at 28. Plaintiffs estimate Corsair's total estimated revenue from

2  the challenged products to be $760 million;[2] that Plaintiffs paid a price premium of ten percent

3  over what they would have paid in the absence of the challenged misrepresentations; and that the

4  $5,500,000 offered in settlement "represents approximately 8.2% of the potential classwide

5  recovery of actual damages if Plaintiffs had asserted and prevailed on each of their claims for a

6  nationwide Settlement Class of DDR-4 and DDR-5 purchasers." ECF No. 153-2 ¶ 22. There are

7  several problems with these assertions.

8       First, $5.5 million is 7.2% of $760 million, not 8.2%.

9       Second, Plaintiffs assume a price premium of ten percent but offer no factual support for

10 that assumption. In support of their class certification motion, Plaintiffs did offer an expert

11 opinion that a price premium—i.e., "the portion of the market price of the Products solely

12 attributable to Defendant's misrepresentation . . . , or in other words, the difference in market

13 value between what was promised, and what was delivered"—would constitute an appropriate

14 measure of damages. ECF No. 78-8 (Weir Declaration) ¶ 18. But Plaintiffs made no effort to

15 establish the *amount* of that premium. *See* ECF No. 78 at 21 ("For these claims, there is no need

16 to *quantify* a price premium." (emphasis in original)). Thus, the ten percent figure in Plaintiffs'

17 motion for preliminary approval appears to have been plucked from thin air.

18      Third, Plaintiffs have not established that a price premium, applied classwide, is the best

19 measure of the class's potential recovery at trial. Instead, their complaint leaves open the

20 possibility that statutory damages might be a better measure. Plaintiffs' fourth amended complaint

21 brings claims under New York General Business Law Sections 349 and 350. "GBL §§ 349 and

22 350 require courts to award the greater of actual damages or statutory damages of $50 or $500,

23 respectively." *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1027 (9th Cir. 2024) (citing

24 N.Y. Gen. Bus. Law §§ 349(h), 350-e). If the imposition of statutory damages would result in

---

26 [2] Plaintiffs note that this calculation accounts for Corsair's total revenue for DDR-4 products
27 during the class period (approximately $635 million for approximately 10 million products sold), increased by 20% to account for revenue for DDR-5 products sold during the class period (based
28 on information provided by Corsair's counsel that fewer than 2 million DDR-5 products were sold during the Class Period). ECF No. 153-2 at 5 n.1.

greater compensation for New York purchasers than recovery of a price premium, that remedy might be a better measure of potential recovery. Plaintiffs fail to address this point, not only for New York purchasers, but for purchasers in any other state providing for statutory penalties.

Fourth, if Plaintiffs won at trial, they would be entitled to seek attorney's fees under both the California Legal Remedies Act and New York General Business Law claims pleaded in the fourth amended complaint. *See* Cal. Civ. Code § 1780(e) ("The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."); N.Y. Gen. Bus. Law § 349(h) ("The court may award reasonable attorney's fees to a prevailing plaintiff."); N.Y. Gen. Bus. Law § 350-e ("The court may award reasonable attorney's fees to a prevailing plaintiff."). Any such fees would be paid on top of the damages or other relief awarded to the plaintiffs, not deducted from their recovery as would be the case in the proposed settlement. Plaintiffs fail to address this point.

### b. Variations Between the Fourth Amended Complaint and the Settlement Class

Plaintiffs also insufficiently address the variation between the claims asserted in the complaint and those settled in the settlement agreement. In the operative fourth amended complaint, Plaintiffs' proposed classes included a "California Class consisting of: All individuals who purchased Corsair High Speed Memory (including the Vengeance or Dominator lines), in California, within the governing statute of limitations period," ECF No. 61 ¶ 79 (emphasis omitted), and a similarly constituted New York class, *id.* ¶ 80. By contrast, Plaintiffs' proposed settlement class includes "all individuals in the United States who purchased one or more Products from January 14, 2018 to the date the Court grants Preliminary Approval." ECF No. 153-1 § 1.30.

Plaintiffs do not establish the propriety of the Court certifying a settlement class bringing claims that are not present in the complaint. They assert that, "[i]n cases like this one, where Plaintiffs assert claims on behalf of classes of 'purchasers living in [only] the states in which Named Plaintiffs reside,' courts still certify nationwide Settlement Classes because of the efficiencies it provides by obviating a series of largely identical lawsuits throughout the country." ECF No. 153 at 12 (quoting *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG,

11

2020 WL 511953, at *5 (N.D. Cal. Jan. 31, 2020), and citing *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2022 WL 17409738, at *5 (N.D. Cal. Dec. 2, 2022)). The authorities Plaintiffs cite, however, do not support that proposition. In *Schneider*, "[a]s part of the settlement agreement, the parties agreed that Plaintiffs [would] *file an amended complaint*, redefining the class definition to be consistent with the Settlement Class." 2020 WL 511953, at *4 (emphasis added). Thus, the settled claims *were* in a proposed amended complaint, unlike here. In Plaintiffs' other cited authority, it is unclear from the court's order what claims were in the operative complaint at the time of settlement, but the court did observe that "[t]he proposed class is materially the same as alleged in the complaint." *In re MacBook Keyboard Litig.*, 2022 WL 17409738, at *3. The same is not true here. Unless Plaintiffs have additional and more persuasive authority, any future proposed settlement should correspond to the claims in the operative complaint or propose the filing of an amended complaint.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for provisional certification of the settlement class and preliminary approval of the proposed settlement is denied. Any renewed motion for preliminary approval is due by May 9, 2025.

**IT IS SO ORDERED.**

Dated: March 25, 2025



JON S. TIGAR
United States District Judge