1  Richard Lyon (Cal. Bar No. 229288)
   rick@dovel.com
2  Simon Franzini (Cal. Bar No. 287631)
   simon@dovel.com
3  Jonas B. Jacobson (Cal. Bar No. 269912)
4  jonas@dovel.com
   Grace Bennett (Cal. Bar No. 345948)
5  grace@dovel.com
6  DOVEL & LUNER, LLP
   201 Santa Monica Blvd., Suite 600
7  Santa Monica, California 90401
   Telephone: (310) 656-7066
8  Facsimile: (310) 656-7069

9
   Kevin Kneupper, Esq. (CA SBN 325413)
10 kevin@kneuppercovey.com
   A. Cyclone Covey, Esq. (CA SBN 335957)
11 cyclone@kneuppercovey.com
   KNEUPPER & COVEY, PC
12 17011 Beach Blvd., Ste. 900
13 Huntington Beach, CA 92647-5998
   Tel: (512) 420-8407

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTONIO MCKINNEY, CLINT SUNDEEN, and JOSEPH ALCANTARA, each individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CORSAIR GAMING, INC.,<br><br>*Defendant*. | Case No. 4:22-cv-00312-JST<br><br>**NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: July 17, 2025<br>Time: 2:00 p.m.<br><br>Hon. Jon S. Tigar |

**Table of Contents**

I. Introduction ............................................................................................................................. 1

II. The Settlement falls well within the range of reasonableness. .................................................. 2

    A. Benefits to class members. ..................................................................................................... 2

    B. The Settlement falls well within the range of reasonableness for approval. .................. 3

        1. The extent of discovery completed and the stage of the proceedings favor approval. ............................................................................................. 4

        2. The experience and views of counsel favor approval. ...................................... 4

        3. The risk of not obtaining any relief for class members favors approval. ............ 4

        4. The amount of the benefit favors approval. ....................................................... 6

        5. Plaintiffs have remedied the deficiencies in its Original Motion..................... 10

III. Plaintiffs' proposed Fifth Amended Complaint aligns with the Settlement Class.................. 14

IV. Conclusion. .......................................................................................................................... 15

**Table of Authorities**

**Cases**

*Bakhtiar v. Info. Res., Inc.*,
  2020 U.S. Dist. LEXIS 258600 (N.D. Cal. Aug. 4, 2020) .............................................. 3, 6

*Cabiness v. Educ. Fin. Sols., LLC*,
  2019 U.S. Dist. LEXIS 50817 (N.D. Cal. Mar. 26, 2019) .............................................. 12

*Dixon v. Cushman & Wakefield W., Inc.*,
  2022 U.S. Dist. LEXIS 73512 (N.D. Cal. Apr. 21, 2022) ................................................ 8

*Esomonu v. Omnicare, Inc.*,
  2019 U.S. Dist. LEXIS 21119 (N.D. Cal. Feb. 8, 2019) ................................................ 12

*Fitzhenry-Russell v. Coca-Cola Co.*,
  2019 U.S. Dist. LEXIS 200701 (N.D. Cal. June 13, 2019) ......................................... 8, 14

*Fraley v. Batman*,
  638 F. App'x 594 (9th Cir. 2016) ................................................................................... 12

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013) ........................................................................... 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 3

*Hendricks v. Starkist Co*,
  2015 U.S. Dist. LEXIS 96390 (N.D. Cal. July 23, 2015) ........................................... 8, 14

*Hubbard v. Henkel Corp.*,
  2021 U.S. Dist. LEXIS 270362 (N.D. Cal. Feb. 25, 2021) ............................................ 12

*In re Lyft Inc. Sec. Litig.*,
  2023 U.S. Dist. LEXIS 137198 (N.D. Cal. Aug. 7, 2023) .............................................. 12

*In re MacBook Keyboard Litig.*,
  2022 U.S. Dist. LEXIS 220247 (N.D. Cal. Dec. 2, 2022) .............................................. 14

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................................... 4

*In re Toys R Us-Del., Inc. FACTA Litig.*,
  295 F.R.D. 438 (C.D. Cal 2014) ...................................................................................... 2

*Koeppen v. Carvana, LLC*,
  2024 U.S. Dist. LEXIS 81686 (N.D. Cal. May 3, 2024) ................................................. 8

*Kumar v. Salov N. Am. Corp.*,
  2017 U.S. Dist. LEXIS 105463 (N.D. Cal. July 7, 2017) .................................................................. 6

*Larsen v. Trader Joe's Co.*,
  2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) .................................................................. 6

*Lytle v. Nutramax Labs., Inc.*,
  114 F.4th 1011 (9th Cir. 2024) ........................................................................................................ 7

*Maciel v. Bar 20 Dairy, Ltd. Liab. Co.*,
  2021 U.S. Dist. LEXIS 87242 (E.D. Cal. May 5, 2021) .................................................................. 8

*Montera v. Premier Nutrition Corp.*,
  2025 U.S. Dist. LEXIS 43184 (N.D. Cal. Mar. 10, 2025) .............................................................. 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................................... 6

*Navarrete v. Sprint United Mgmt. Co.*,
  2021 U.S. Dist. LEXIS 40398 (C.D. Cal. Mar. 2, 2021) .................................................................. 4

*Perez v. CVS Health Corp.*,
  2021 U.S. Dist. LEXIS 110216 (E.D. Cal. June 11, 2021) ........................................................... 4, 8

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) ................................................................................................ 8, 14

*Smith v. Keurig Green Mt., Inc.*,
  2022 U.S. Dist. LEXIS 120863 (N.D. Cal. July 8, 2022) ................................................................ 9

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d. 1244 (C.D. Cal. Sept. 30, 2016) ........................................................................... 2

*St. Louis, I. M. & S. R. Co. v. Williams*,
  251 U.S. 63 (1919) ......................................................................................................................... 11

*Stovall-Gusman v. Granger, Inc.*,
  2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) ............................................................... 8

*Tuttle v. Audiophile Music Direct, Inc.*,
  2023 U.S. Dist. LEXIS 229241 (W.D. Wash. Dec. 26, 2023) ......................................................... 3

*Viceral v. Mistras Grp., Inc.*,
  2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) .............................................................. 8

*Wakefield v. ViSalus, Inc.*,
  51 F.4th 1109 (9th Cir. 2022) ........................................................................................................ 11

**NOTICE OF RENEWED MOTION AND RENEWED MOTION**

Please take notice that on July 17, 2025 at 2:00 p.m., Plaintiffs Antonio McKinney, Clint Sundeen, and Joseph Alcantara will move the Court to preliminarily approve the Settlement, approve the proposed notice, preliminarily certify the Settlement Class, appoint Class Counsel and the Class Representatives, and schedule a final approval hearing.

The motion is based on the attached memorandum of law, the supporting declaration of Colin Weir, Plaintiff' Initial Motion for Preliminary Approval (Dkt. 153), and declarations and exhibits accompanying Plaintiffs' Initial Motion (Dkt. 153-1 through Dkt. 153-8).

**I.     Introduction**

The Parties reached a hard-fought classwide resolution. After substantial litigation, both parties accepted a mediator's proposal that provided for a $5,500,000 nonreversionary cash common fund and meaningful nonmonetary relief to Settlement Class Members.

On July 12, 2024, Plaintiffs filed their Motion for Class Certification and Preliminary Approval of the Proposed Class Settlement ("Original Motion"). Dkt. 153. On March 25, 2025, the Court entered an Order denying Plaintiffs' motion ("Order") and ordering Plaintiffs to file this renewed motion. Dkt. 162. In the Order, the Court found that Plaintiffs satisfied each Rule 23 requirement for class certification. *Id*. at 5-7 (concluding that Plaintiffs demonstrated numerosity, commonality, typicality, adequacy, predominance and superiority). The Court further concluded that "[m]any of the factors … support a finding that the Settlement falls within the range of possible approval." *Id*. at 9 (finding that "proposed requested attorney's fees" and "incentive awards" are "reasonable;" "[t]here … are none of the signs of collusion the Court watches for;" "the agreement was reached after the parties engaged in formal discovery, fully briefed a motion for class certification, and engaged in mediation with a well-regarded and experienced mediator;" "the settlement agreement does not contain a reversionary clause;" the "entire gross settlement award will be made available to the class;" "unclaimed funds will be distributed to Khan Academy;" there is no "clear sailing provision"); *id*. at 3 (the "release" allows class members to "retain their rights against Defendant to bring any claims disconnected from the facts and allegations in this lawsuit"). Rather than repeat the arguments and evidence from Plaintiffs' motion that the Court credited when concluding that these factors support approval, Plaintiffs incorporate their Original Motion and supporting papers here. *See* Dkt. 153 (motion); Dkt. 153-1 (Settlement Agreement); Dkt. 153-2— 153-8 (accompanying declarations).

Plaintiffs focus this brief on the two deficiencies that were the basis of the Court's denial— that Plaintiffs' original motion (1) did not show that "the proposed settlement falls within the range of reasonableness," Order at 9-11, and (2) "insufficiently address[ed] the variation between the claims asserted in the complaint and those settled in the settlement agreement," *id*. at 11-12.

We address both of the Court's concerns and correct these deficiencies below.

**II.     The Settlement falls well within the range of reasonableness.**

We first revisit the relief the Settlement provides to class members. We then demonstrate that this relief falls well within the range of reasonableness, addressing each of the concerns raised in the Court's Order.

**A.     Benefits to class members.**

Monetary relief.  The Settlement Agreement requires Corsair to establish a $5,500,000 non-reversionary cash fund. Dkt. 153-1 (Agreement) §1.32.  The Settlement Fund will be used to make benefit payments to the Settlement Class, as well as to pay notice and administration costs, service awards to the Plaintiffs, and an award of attorneys' fees and costs—as approved by the Court. *Id.*

To receive a benefit payment, a Settlement Class Member must fill out and file a claim form that is approved by the Settlement Administrator. *Id.* §§1.3, 2.1(b).  Class Members may submit a claim for up to five qualifying purchases without proof of purchase or more than five qualifying purchases with reasonable proof of purchase. *Id.* §2.1(b).  Class Members whose claims are approved by the Settlement Administrator will receive a pro rata portion of the Net Settlement Fund after the payment of any notice and administration costs, service awards, and attorneys' fee and costs. *Id.*

Based on comparable settlements, including others administered by the proposed Settlement Administrator, Plaintiffs anticipate a claims rate of 3%.  Dkt 153-2 (Lyon Decl.), ¶15, Ex. B; Dkt. 153-7 (Weisbrot Decl.), ¶¶56-58.  Direct notice is not possible for the entire class.  *See* Dkt 153-2, ¶16; Agreement §§4.1-4.2 (providing for both direct and publication notice because Defendant is unable to identify all Class Members who purchased products from resellers rather than Corsair directly).  Thus, the claims rate is expected to be on the lower end of claims rates seen in consumer class actions. *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 456, 468 n.134 (C.D. Cal 2014) (noting claims rates in consumer litigation generally "range from two to twenty percent" but "may be depressed" where "there are millions of class members" and direct notice is not possible for all); *see, e.g.*, *id.* at 468 n.134 (finding 3% claims rate "appropriate" where direct notice was not possible for the entire class); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d. 1244, 1257 (C.D. Cal. Sept. 30, 2016) (approving claims rate of approximately 2.75% where "direct notice could not be

provided to more than half of the class"); *Tuttle v. Audiophile Music Direct, Inc.*, 2023 U.S. Dist. LEXIS 229241, at *12, *37 (W.D. Wash. Dec. 26, 2023) (approving claims rate of approximately 2.38% where less than half the class was estimated to have received direct notice).

<u>Nonmonetary programmatic relief.</u>  The Settlement Agreement also provides for significant nonmonetary relief that benefits the Settlement Class.  Within 90 days of the effective date of the Settlement, Corsair will make changes to its packaging, website, and content provided to resellers. Instead of including an unqualified listed speed (e.g., "3200 MHz"), Defendants will qualify the listed speed by adding "up to" (e.g. "up to 3200 MHz") and a disclaimer that indicates that, to achieve this speed, "overclocking/PC firmware adjustments" are required.  Agreement §2.2.  That is, Defendant will update its labeling to identify product speeds in the exact manner that Plaintiffs alleged would not be misleading.  Complaint (Dkt. 61) ¶40 ("[I]f Corsair's High-Speed Memory was only able to operate at the advertised speed after altering the computer's firmware, this is something a reasonable consumer would want to know and would expect Corsair to qualify its affirmative promises about the memory's speed with this information.").

Such measures will meaningfully benefit Class Members and future consumers, protecting them from the alleged harm at the heart of this case.  Together with the monetary relief, the programmatic relief makes the Settlement an excellent result for the Class.

**B.     The Settlement falls well within the range of reasonableness for approval.**

"To determine whether a settlement agreement falls within the range of possible approval, courts evaluate and balance certain factors, including: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation [and] the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel." *Bakhtiar v. Info. Res., Inc.*, 2020 U.S. Dist. LEXIS 258600, at *25 (N.D. Cal. Aug. 4, 2020) (Tigar, J.) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Each factor weighs in favor of granting preliminary approval here.  We discuss each factor below, correcting the deficiencies the Court identified in Plaintiff's Original Motion.

1.  **The extent of discovery completed and the stage of the proceedings favor approval.**

The Court already concluded that this factor favors approval. *See* Order at 9 ("The agreement was reached after the parties engaged in formal discovery, fully briefed a motion for class certification, and engaged in mediation with a well-regarded and experienced mediator.").

2.  **The experience and views of counsel favor approval.**

"[R]epresentation by competent counsel familiar with the law in the relevant area and with 'the strengths and weaknesses of [the parties'] respective positions, suggests the reasonableness of the settlement.'" *Navarrete v. Sprint United Mgmt. Co.*, 2021 U.S. Dist. LEXIS 40398, at *30 (C.D. Cal. Mar. 2, 2021). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quotation marks and citation omitted).

Here, proposed Class Counsel recommend the Settlement as fair, adequate, and reasonable, and believe that it represents an excellent outcome for the Class. Dkt. 153-2 (Lyon Decl.), ¶¶22-24; Dkt. 153-3 (Kneupper Decl.) ¶37. As explained above, proposed Class Counsel have significant experience in complex litigation, including in consumer class actions. Dkt. 153-2, ¶¶4-7, Ex. A; Dkt. 153-3, ¶¶2-31. Plus, they have devoted substantial time to this case and are therefore well informed about the strengths and weaknesses of the Parties' respective positions. Dkt. 153-2, ¶¶8-10, 20; Dkt. 153-3, ¶34. Also, the Settlement was endorsed by a mediator with substantial experience in such matters, Antonio Piazza, after a full day mediation. Dkt. 153-2, ¶¶12-13. Thus, the recommendation of counsel (and the mediator) weighs in favor of preliminary approval.

3.  **The risk of not obtaining any relief for class members favors approval.**

"[W]hile plaintiff[s] may have meritorious claims," it remains "far from certain that [they] would have prevailed on those claims or achieved full recovery on each or any of them," which "weighs in favor of … approval of the settlement." *Perez v. CVS Health Corp.,* 2021 U.S. Dist. LEXIS 110216, at *14 (E.D. Cal. June 11, 2021). Corsair has developed evidence and arguments that create serious obstacles for the next stages of litigation, presenting a significant risk that class

1 | members would not recover anything on their claims. Dkt. 153-2, ¶¶22-24.

2 |      Corsair has raised numerous challenges to Plaintiffs' ability to prove classwide reliance and classwide damages. For example, Corsair argues (with supporting expert evidence) that Plaintiffs (and the class) were not misled at all, and had full knowledge of the need to overclock their RAM to achieve its maximum speed. Dkt. 96 (Class Certification Opp.) at 13. Corsair also argues (with supporting expert evidence) that Plaintiffs cannot show individual reliance because of variations in content and wording across the speed representations made on the challenged products' packaging and online listings, especially since most products were sold by independent resellers. *Id*. at 14-18; *id*. at 16 (the "resellers" like "Amazon" "controlled their ad content and 'named' and 'described' the hundreds of different products in different ways").

     Corsair has also raised challenges to the feasibility of measuring classwide damages. *Id*. at 22-24; *see generally* Mot. to Exclude Opinions of Colin Weir (Dkt. 115); Mot. to Exclude Opinions of Hal Singer (Dkt. 116). For example, Corsair argues that "Mr. Weir's approaches assume all of Corsair's DRAM kits are effectively 2133 MHz kits" when the evidence shows that, unlike 2133 MHz kits, all of products at issue are undisputably capable of higher speeds. Dkt. 96 at 23.

     Corsair's potential success on any of these arguments would stymy Settlement Class Members' ability to obtain relief.

     Corsair also contests its liability to Plaintiffs and Class Members, maintaining that its advertising and labeling of its high-speed memory products were lawful. Agreement at 2. Specifically, Corsair disputes that Plaintiffs will be able to establish deception and materiality—that reasonable "purchasers of Corsair DRAM were focused on or expected zero set-up 'out of the box,' that they were averse to [altering their firmware] to set their DRAM to the rated speeds, or that they had concerns about running DRAM at the tested 'overclocked' speeds." Dkt. 96 at 20. At class certification, the Parties presented competing consumer surveys that reached opposite conclusions on the questions of deception and materiality—offering a preview of the major merits disputes that lie ahead in further litigation. Dkt. 114 at 4. Though the class certification stage asked only whether deception and materiality were "susceptible to common proof" (not whether deception and materiality had been proved), Plaintiff must actually prove these issues to prevail, adding further

uncertainty to a potential class's ability to recover. Resolving liability issues, as well as damages issues, require a "battle of the experts." *Kumar v. Salov N. Am. Corp.*, 2017 U.S. Dist. LEXIS 105463, at *21-23 (N.D. Cal. July 7, 2017). And, even in the best-case scenario for Plaintiffs and the Settlement Class, the potential next steps in the case—briefing on "dispositive … motions [such as summary judgment], trial, and appeals"—inevitably entail significant additional time and expense. *Bakhtiar v. Info. Res., Inc.*, 2020 U.S. Dist. LEXIS 258600, at *26 (N.D. Cal. Aug. 4, 2020) (Tigar, J.); *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

In short, the Parties have negotiated a beneficial and reasonable Settlement, and the "high risk, expense, and complex nature of the case weigh in favor of approving" it. *Larsen v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 95538, at *13 (N.D. Cal. July 11, 2014).

### 4. The amount of the benefit favors approval.

The Settlement provides substantial monetary relief to Class Members. Payments to Class Members who submit valid claims will be based on the number of products they purchased, and will come from the $5,500,000 Settlement Fund. Agreement §§2.1(b), 1.32. After accounting for notice and administration costs (estimated to be $450,000), attorneys' fees and costs (expected to be $1,375,000 and $285,000, respectively), and service awards for the three Plaintiffs (expected to be $5,000 each, or $15,000 total), the Parties anticipate that $3,375,000 of the Settlement Fund will be used exclusively to provide monetary benefits to the Settlement Class—an excellent result for Class Members. Dkt. 153-2, ¶17; Dkt. 153-7, ¶59.

This result is reasonable (a) relative to the overall amount of possible recovery, and especially reasonable when (b) the anticipated claims rate and (c) nonmonetary relief are considered. We address (a)-(c) in turn

#### a. Monetary relief is reasonable relative to possible recovery.

Plaintiffs' primary theory of damages is price premium damages. Plaintiffs' expert Colin Weir designed conjoint and hedonic regression models to estimate the price premium damages attributable to Corsair's speed claim. Dkt. 78-8. Mr. Weir has not executed his models in advance of

1   this approval motion for two reasons. First, this case is pre-certification, and "class certification
2   plaintiffs may rely on an unexecuted damages model." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th
3   1011, 1019 (9th Cir. 2024). Second, it is contrary to the interest of the proposed class to execute the
4   damages model as a condition of this pre-certification settlement because (1) the cost of executing the
5   model could well exceed $250,000, which is money that would otherwise go to the class as part of a
6   monetary benefit, and (2) Mr. Weir's experience in designing these models allows him to provide a
7   range of typical price premium calculations for a case like this, and the settlement amount in this case
8   is reasonable even when measured against the "upper end" of this range. Second Declaration of Colin
9   Weir ("Weir Decl."), ¶¶ 4-8.

10   Mr. Weir has substantial experience designing and executing conjoint surveys and regression
11   models to estimate price premium damages, which allows him to provide a range of typical outcomes
12   for this case. Dkt. 78-8, ¶2, Ex. 1. In his experience, in cases like this, where the alleged
13   misrepresented product feature does not concern "health or safety," the models typically show price-
14   premiums in the "range from 0% to 16%." Weir Decl., ¶¶4-6. At the low end, Mr. Weir has found
15   that, although "there was a good faith basis to believe that a claim carried a price premium," the
16   executed model for the claim has showed that "the price premium for that claim is 0%." *Id.*, ¶ 5.
17   And at "the upper end of the range," his models have shown a "calculated price premium was
18   15.7%." *Id.*, ¶ 6; *id.* at ¶ 5 (the price premium for false "label" cases typically "fall[s] in this range of
19   0-16%.").

20   Applying this price premium range (0% to 16%) to Defendant's overall revenues ($760
21   million, *see* Dkt. 153-2, ¶22) results in total possible damages at the low end of $0 (0% price
22   premium); $121.6 million at the high end (i.e., the 16% price premium); and $60.8 million at the
23   midpoint (i.e., the 8% price premium).[1] Expressed as a percentage of recovery, the settlement
24   amount ($5,500,000) exceeds total possible recovery at Mr. Weir's low end price premium, is 4.5%
25   of recovery at his upper limit price premium, and 9.0% of the total recovery his midpoint price
26   premium.[2] This is an excellent outcome for the Settlement Class, especially in light of the sizable
27   
28   [1] (16%) x ($760M) = $121.6M; (8%) x ($760M) = $60.8M.
    [2] ($5.5M) / (121.6M) = 4.5%; ($5.5M) / ($60.8M) = 9.0%.

1  "risks" that with "continued litigation," "Plaintiff[s] and the class will receive nothing." *Koeppen v.*
2  *Carvana, LLC*, 2024 U.S. Dist. LEXIS 81686, at *18 (N.D. Cal. May 3, 2024).
3        Even if the price premium damages were to come out at the absolute highest end of Mr.
4  Weir's range, California district courts routinely approve class settlements in this range. *See Maciel*
5  *v. Bar 20 Dairy, Ltd. Liab. Co.*, No. 1:17-cv-00902-DAD-SKO, 2021 U.S. Dist. LEXIS 87242, at
6  *16-19 (E.D. Cal. May 5, 2021) (granting approval of settlement representing about 3% of the
7  theoretical potential recovery); *Perez v. CVS Health Corp.*, No. 1:19-cv-00449-DAD-BAM, 2021
8  U.S. Dist. LEXIS 110216, at *18-20 (E.D. Cal. June 11, 2021) (granting approval of a final
9  settlement representing about 2.5% of the class's potential recovery); *Fitzhenry-Russell v. Coca-Cola*
10 *Co.*, No. 5:17-cv-00603-EJD, 2019 U.S. Dist. LEXIS 200701, at *8 (N.D. Cal. June 13, 2019)
11 (granting preliminary approval of a $2.45 million settlement fund, finding it reasonable compared to
12 the $58 million potential damages given the risks of trial); *Schneider v. Chipotle Mexican Grill, Inc.*,
13 336 F.R.D. 588, 597-98 (N.D. Cal. 2020) ("the $6.5 million settlement amount, which represents
14 7.4% of estimated damages based on a nationwide class falls 'within the range of reasonableness' in
15 light of the risks and costs of litigation"); *Hendricks v. Starkist Co*, No. 13-cv-00729-HSG, 2015 U.S.
16 Dist. LEXIS 96390, at *18-20 (N.D. Cal. July 23, 2015) (the "settlement amount, while constituting
17 only a single-digit percentage" of potential recovery is "reasonable given the stage of the proceedings
18 and the defenses asserted in this action"); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016
19 U.S. Dist. LEXIS 140759, at *21-24 (N.D. Cal. Oct. 11, 2016) (granting preliminary approval of a
20 settlement representing 8.1% of the full verdict value, recognizing the risks plaintiffs faced); *Dixon v.*
21 *Cushman & Wakefield W., Inc.*, No. 18-cv-05813-JSC, 2022 U.S. Dist. LEXIS 73512, at *19-20
22 (N.D. Cal. Apr. 21, 2022) (granting final approval of a $4.9 million settlement, representing 8% of
23 the potential recovery); *Stovall-Gusman v. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D.
24 Cal. June 17, 2015) (granting final approval of settlement that was "7.3% of Plaintiff's estimated trial
25 award").

### b. Monetary relief is especially reasonable when considering each claimant's expected recovery.

The reasonableness of the settlement is all the more apparent when each claimant's individual recovery is considered. Each class member who submits a claim is likely to receive a monetary benefit *greater than* the expected price premium. Given estimates of 12 million products sold and an anticipated claims rate of 3%,[3] the monetary benefit is approximately $9.38 per purchase, or 14.8% of the average purchase price of $63.33.[4] This falls well above Mr. Weir's midpoint price premium and right near the high end. Weir Decl. ¶, 6 ("the upper end of the range" is a price premium of 15.7%)

### c. Monetary relief is especially reasonable when considering nonmonetary relief.

The monetary benefit is accompanied by substantial non-monetary relief in the form of meaningful changes to Defendant's packaging, website, and content provided to resellers. *See supra* §II(A); Agreement §2.2. As explained above, the settlement requires Defendant to update its labeling to identify product speeds in the exact manner that Plaintiffs alleged it should do. *Id*. These modifications to Defendant's "labeling and advertising of its products nationwide to include … disclaimer[s]" entail "a 'costly process' that benefits the Settlement Class but is not accounted for in the settlement amount." *Smith v. Keurig Green Mt., Inc*., 2022 U.S. Dist. LEXIS 120863, at *28 (N.D. Cal. July 8, 2022).

\*       \*       \*

---

[3] *See* Dkt 153-2, ¶22 n.1 (total products = 10 million + 2 million = 12 million); Dkt. 153-7 ¶59 (estimated claims rate of 3-4%).

[4] Anticipated payment per purchase = ($3.375 million total payment to class) / ((12 million total products) x (3% expected claims rate)) = $9.38.

Average purchase price = (Estimated total revenue: $760 million) / (Estimated total products: 12 million) = $63.33.

Anticipated payment as a percentage of purchase price = ($9.38 payment) / ($63.33 purchase price) = 14.8%.

1    In sum, the proposed settlement amount falls well within the range of possible approval.

2         **5.     Plaintiffs have remedied the deficiencies in its Original Motion.**

3    The Court identified four deficiencies in Plaintiffs' Original Motion. Each deficiency has
4    been corrected. We address them in turn.

5              **a.     The math error in the Original Motion has been corrected.**

6    To calculate total possible price premium damages, Plaintiff's Original Motion contemplated
7    a 10% price premium applied to Corsair's total revenues of $760 million for a total of $76 million. It
8    then erroneously calculated the settlement amount ($5.5 million) as 8.2% of the total instead of the
9    correct 7.2%. The Court noted this error. Order at 10 ("$5.5 million is 7.2% of $760 million, not
10   8.2%."). As shown above (including in the footnotes that explain each mathematical calculation), the
11   analysis in this Renewed Motion includes no such math error.

12             **b.     The unsupported 10% price premium estimate has been corrected.**

13   The Court correctly observed that Plaintiffs' Original Motion "offer[s] no factual support" for
14   the contemplated "price premium of ten percent" used to calculate total possible price premium
15   damages. Order at 10 ("the ten percent figure … appears to have been plucked from thin air"). This
16   Renewed Motion corrects this omission. Plaintiffs no longer rely on the unsupported 10% figure.
17   Instead, they include testimony from damages expert Colin Weir that price premium damages in
18   mislabeling cases like this "typical[ly]" "range from 0% to 16%." Weir Decl., ¶¶4-6. Plaintiffs
19   demonstrate the reasonableness of the settlement amount even when measured against the highest end
20   (16%) of this range. *See supra* §II(B)(4)(a). Also, this is the best possible evidence of a price
21   premium at this stage of the litigation, as there is no basis to require Mr. Weir to execute his models
22   prior to classwide settlement. First, in a common fund settlement like this, each dollar spent on
23   expert analysis is a dollar that does not go to the class. And executing Mr. Weir's models could well
24   exceed $250,000, Weir Decl., ¶ 8, which means the class recovery would be reduced by $250,000.
25   Second, if executed, the models are likely to show a premium in the range of 0% to 16%, and the
26   settlement amount is reasonable at any number within that range.

27             **c.     The amount of the proposed Settlement also falls in the range of**
28                     **reasonableness when measured against statutory damages.**

The Court also observed that, in demonstrating their reasonableness, Plaintiffs only compared its settlement numbers against potential price premium damages, and not against potential statutory damages, like those available under New York General Business Law Sections 349 and 350. Order at 10-11. We showed above that the settlement amount is reasonable when measured against potential price premium damages. And we show here that it is also reasonable when measured against potential statutory damages.

"GBL §§ 349 and 350" allow for "the greater of actual damages or statutory damages of $50 or $500, respectively." *Montera v. Premier Nutrition Corp.*, 2025 U.S. Dist. LEXIS 43184, at *3-4 (N.D. Cal. Mar. 10, 2025). The better measure for the reasonableness analysis here is $50, not $500, given the constitutional uncertainties surrounding the higher statutory amount. As Judge Seeborg recently held, an award of $500 per violation could result in an "aggregation of damages" that could "balloon [the statutory damages] beyond their intended purpose." *Id.* at *8. In such instances, the "constitution must limit damages 'so severe and oppressive' as to no longer bear any reasonable or proportioned relationship to the 'offense.'" *Id.* (quoting *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123-24 (9th Cir. 2022) (quoting *St. Louis, I. M. & S. R. Co. v. Williams*, 251 U.S. 63, 67 (1919))). Here, GBL damages of $500 would result in statutory damages of approximately $360 million,[5] an amount far greater than the $83 million that was recently held to be "so punitive as to raise a constitutional concern." *Montera* at *16. *Montera* rejected the $500 per violation calculation and held that the "$50 per violation more closely hews to the compensatory, deterrence, and punitive goals of the statutes." *Id.* at *20.[6]

When compared to the $50 statutory damages, the monetary benefit in the proposed Settlement is assuredly reasonable given the risks of recovery that further litigation poses. As explained above in Section II(B)(4)(b), based on anticipated claims rates, each claimant in this case will receive approximately $9.38, which is 18.8% of the $50 statutory damages to which they would

---

[5] Because approximately 6% of U.S. population resides in New York, we can roughly estimate New York purchases to be 720,000 purchases (i.e. 6% of 12 million nationwide purchases). At $500 per sale, this results in $360 million statutory damages ((720,000 purchases) x ($500 per purchase) = $360 million).

[6] Because this holding relies on constitutional principles, the same analysis would apply to violations of any other state consumer protection laws providing for statutory penalties.

be entitled if they proved the GBL violation.[7] This falls well within the range of reasonable recoveries approved in classwide settlements. *See Cabiness v. Educ. Fin. Sols., LLC*, 2019 U.S. Dist. LEXIS 50817, at *12-14 (N.D. Cal. Mar. 26, 2019) (granting final approval of proposed settlement agreement where "each member's pro rata share will be $33.36" even though "each class member would be entitled to $500 of statutory damages per TCPA violation" (i.e., 6.7% of statutory damages) if they prevailed at trial); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013) (approving settlement awarding "payments of $15 each to those class members who filed claims" despite "the theoretical availability of statutory damages of $750 per violation" (i.e., 2.0% of statutory damages) because "adequacy of this settlement should not be evaluated against some theoretically available judgment, but against what plaintiffs could reasonably expect to recover" and "it is not plausible that class members could recover the full amount of the statutory penalties" due to "due process concerns"); *Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016) (approving of district court "settlement which awarded $15 to each claiming class member, notwithstanding the possibility of $750 statutory penalty" (i.e., 2.0% of statutory damages) and noting "an award of $750 per claiming class member could implicate due process concerns"); *Hubbard v. Henkel Corp.*, 2021 U.S. Dist. LEXIS 270362, at *18 (N.D. Cal. Feb. 25, 2021) (granting preliminary approval where "payment … per class member … is substantially below the range of potential statutory damages" because it "falls within the range of reasonableness in view of litigation risks and costs") (quotation marks and citation omitted); *Esomonu v. Omnicare, Inc.*, 2019 U.S. Dist. LEXIS 21119, at *12 (N.D. Cal. Feb. 8, 2019) (granting final approval where settlement amount is "substantially below the range of potential statutory damages"); *In re Lyft Inc. Sec. Litig.*, 2023 U.S. Dist. LEXIS 137198, at *18-23 (N.D. Cal. Aug. 7, 2023) (granting approval of class action settlement where the "settlement—the mediator's recommendation in this case" represents a small percentage "the potential statutory damages").

In sum, the proposed settlement amount falls within the range of reasonableness when measured against potential price premium damages and also when measured against reasonably recoverable statutory damages.

---

[7] ($9.38 monetary award) / ($50 statutory damages) = 18.8%.

### d.     The settlement amount remains reasonable when accounting for potential recovery of legal fees.

The Court requested that Plaintiffs "address th[e] point" that "if Plaintiffs won at trial" "attorneys' fees" would be awarded to the "prevailing plaintiff" on its CLRA and GBL claims. Order at 11.

The settlement amount remains reasonable even if attorneys' fees are added to the potential damages award. Recovering damages on behalf of a nationwide class (with the asserted nationwide breach of warranty claim)[8] would not trigger an attorneys' fees prevailing party provision, unlike the statutory CLRA and GBL claims. If total recovery were parsed to account for attorneys' fees for California and New York purchasers under the statutes, that could amount to approximately 18% of recovery being subject to the attorneys' fees provision.[9] If we assume an attorneys' fee award of 25% of total damages, that means total attorneys' fees subject to prevailing party provision would be $5.47 million for the $121.6 million high end recovery, or $2.7 million for the $60.8 million midpoint recovery.[10]

For purposes of the reasonableness analysis, the settlement amount ($5.5 million) translates to 4.32% of high-end recovery when fees are included (instead of 4.52% when they are not), and 8.7% of midpoint recovery when fees are included (instead of 9.0% when they are not).[11]

These percentages likewise fall well within the range of reasonableness. *See supra* §II(B)(4)(a) (listing cases approving settlements). And many of the cited cases approving settlements in this range likewise include CLRA and GBL claims that allow for recovery of attorneys' fees. *See*

---

[8]     *See* Proposed Fifth Amended Complaint, submitted by Stipulation of the parties, contemporaneously with this motion, which includes a nationwide breach of warranty claim.

[9]     Because California and New York collectively account for approximately 18% of the U.S. populations, we can estimate that approximately 18% of sales occurred in these states.

[10]    Fees applicable to prevailing party provision at high end damages estimate: (25%) x (18%) x ($121.6M) = $5.47M. Fees applicable to prevailing party provision at midpoint damages estimate: (25%) x (18%) x ($60.8M) = $2.73M

[11]    High end estimate without fees: ($5.5M) / ($121.6M) = 4.52%;
High end estimate with fees: ($5.5M) / ($121.6M + $5.47M) = 4.32%;
Midpoint estimate without fees: ($5.5M) / ($60.8M) = 9.0%;
Midpoint estimate with fees: ($5.5M) / ($60.8M + $2.7M) = 8.7%.

1   *e.g., Fitzhenry-Russell v. Coca-Cola Co.*, 2019 U.S. Dist. LEXIS 200701, at *8 (N.D. Cal. June 13,
2   2019) (approval of a $2.45 million settlement fund with potential $58 million damages (totaling 4.2%
3   of potential recovery) in consumer class action involving *inter alia* CLRA claims); *Schneider v.*
4   *Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 597-98 (N.D. Cal. 2020) (approval of a $6.5 million
5   settlement, representing 7.4% of estimated nationwide class damages in consumer class action
6   involving *inter alia* CLRA and GBL claims); *Hendricks v. Starkist Co*, 2015 U.S. Dist. LEXIS
7   96390, at *18-20 (N.D. Cal. July 23, 2015) (the "settlement amount, while constituting only a single-
8   digit percentage of the maximum potential exposure, is reasonable given the stage of the proceedings
9   and the defenses asserted in this action" in consumer class action involving *inter alia* CLRA claims).

10                            *          *          *

11   In sum, each of the deficiencies identified in the Court's Order has been addressed and
12   corrected in this Renewed Motion. The proposed Settlement amount falls in the range of
13   reasonableness.

14   **III.    Plaintiffs' proposed Fifth Amended Complaint aligns with the Settlement Class.**

15   Although the operable complaint (Plaintiffs' Fourth Amended Complaint) only asserted
16   claims on behalf of California and New York purchasers, Plaintiffs' Original Motion sought approval
17   for a nationwide settlement. Plaintiffs argued that, in cases like this, "courts still certify nationwide
18   Settlement Classes because of the efficiencies it provides by obviating a series of largely identical
19   lawsuits throughout the country." Original Motion at 3 (citing *Schneider v. Chipotle Mexican Grill,*
20   *Inc.*, 2020 U.S. Dist. LEXIS 16365, at *15 (N.D. Cal. Jan. 31, 2020) and *In re MacBook Keyboard*
21   *Litig.*, 2022 U.S. Dist. LEXIS 220247, at *15 (N.D. Cal. Dec. 2, 2022)). The Court noted a
22   distinction: in the cited cases, the "settled claims were in a proposed amended complaint, unlike
23   here." Order at 12. That is, "the parties agreed that Plaintiffs [would] file an amended complaint"
24   adding a nationwide class as part of the settlement approval process. *Id.* The Court instructed
25   Plaintiffs to correct this issue in the same manner: by "propos[ing] the filing of an amended
26   complaint" that aligns with the settlement class in this renewed motion. *Id*.
27   Plaintiffs have done so. Concurrently with this motion, the parties are filing a stipulation,
28   requesting the entry of Plaintiff's Fifth Amended Complaint to be entered along with approval of the

proposed settlement.  The Fifth Amended Complaint includes a nationwide class that mirrors the definition of the settlement class in the Proposed Settlement Agreement.

## IV. Conclusion.

For the foregoing reasons, the Motion should be granted.

Dated: May 23, 2025                           Respectfully submitted,


*/s/ Richard Lyon*
Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Counsel for Plaintiffs and the Proposed Class*