Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: + (310) 656-7069

Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Attorneys for Plaintiffs and the Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTONIO MCKINNEY, CLINT SUNDEEN, and JOSEPH ALCANTARA, each individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> CORSAIR GAMING, INC., <br><br> *Defendant*. | Case No. 4:22-cv-00312-JST <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Hon. Jon S. Tigar |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on January 8, 2026, via Zoom, Antonio McKinney, Clint Sundeen, and Joseph Alcantara will and hereby do move this Court for entry of an order:

1.  Finding that notice was adequately and fairly provided to the Settlement Class;

2.  Finally certifying the Settlement Class for settlement purposes;

3.  Finally approving the class action Settlement as fair, adequate, and reasonable.

This Motion is based on this Notice of Motion and Motion for Final Approval of Class Action Settlement; the Declarations of Richard Lyon and Steven Weisbrot (oh behalf of The Angeion Group), filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at the hearing in this matter.

**Table of Contents**

I.      Introduction. ................................................................................................................. 1

II.     The Settlement. ............................................................................................................ 2

III.    The Court should finally approve the Settlement. ....................................................... 2

        A.      The notice plan fairly and adequately informed Class Members of the

                Settlement. ........................................................................................................ 2

                1.      The Court-approved notice plan was more successful than anticipated. ........... 2

                2.      CAFA notice was provided as required. ........................................................... 5

        B.      Conditional class certification remains appropriate. ........................................ 5

        C.      The Settlement is fair, reasonable, and adequate. ............................................ 6

                1.      The Class Representatives and Class Counsel adequately represented

                        the Class. ........................................................................................................... 7

                2.      The Settlement is the product of arduous, well-informed, and non-

                        collusive negotiations at arm's length after years of litigation. ........................ 8

                3.      The Settlement provides excellent relief to the Class, in light of the

                        risks of continued litigation, the effectiveness of the method of

                        distribution, and the reasonableness of the requested attorneys' fees. ............. 10

                4.      The Settlement treats Class Members equitably. .............................................. 15

                5.      The Class's reaction to the Settlement was positive. ....................................... 16

IV.     Conclusion. ................................................................................................................. 21

**Table of Authorities**

**Cases**

*Barr v. SelectBlinds LLC*,

    2024 U.S. Dist. LEXIS 39068 (C.D. Cal. Mar. 4, 2024) ........................................................ 11, 21

*Barrett v. Apple Inc.*,

    2024 U.S. Dist. LEXIS 237755 (N.D. Cal. Dec. 19, 2024) .............................................................. 4

*Bayat v. Bank of the W.*,

    2015 U.S. Dist. LEXIS 50416 (N.D. Cal. Apr. 15, 2015) ............................................................ 20

*Briseno v. ConAgra Foods, Inc.*,

    844 F.3d 1121 (9th Cir. 2017)..................................................................................................... 19

*Broomfield v. Craft Brew All., Inc.*,

    2020 U.S. Dist. LEXIS 74801 (N.D. Cal. Feb. 5, 2020)............................................................ 20

*Bruno v. Quten Research Inst., LLC*,

    2012 U.S. Dist. LEXIS 196467 (C.D. Cal. July 16, 2012) ............................................................ 2

*Cabrera v. Google LLC*,

    2025 U.S. Dist. LEXIS 169496 (N.D. Cal. Aug. 29, 2025)........................................................ 20

*Californians for Disability Rights, Inc. v. Cal. DOT*,

    249 F.R.D. 334 (N.D. Cal. 2008) .................................................................................................. 7

*Campbell v. Facebook, Inc.*,

    951 F.3d 1106 (9th Cir. 2020)....................................................................................................... 7

*Carlotti v. ASUS Comput. Int'l*,

    2019 U.S. Dist. LEXIS 201564 (N.D. Cal. Nov. 19, 2019)........................................................ 20

*Carter v. Vivendi Ticketing United States LLC*,

    2023 U.S. Dist. LEXIS 210744 (C.D. Cal. Oct. 30, 2023).......................................................... 20

*Chun-Hoon v. McKee Foods Corp.*,

    716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................................................................................ 17

*Churchill Vill., L.L.C. v. GE*,

    361 F.3d 566 (9th Cir. 2004)................................................................................................. passim

*Dickey v. Advanced Micro Devices, Inc.*,

    2020 U.S. Dist. LEXIS 30440 (N.D. Cal. Feb. 21, 2020)......................................................... 6

*Edwards v. Nat'l Milk Producers Fed'n*,

    2017 U.S. Dist. LEXIS 145217 (N.D. Cal. June 26, 2017) ................................................... 4, 5

*Eisen v. Porsche Cars N. Am., Inc.*,

    2014 U.S. Dist. LEXIS 14301 (C.D. Cal. Jan. 30, 2014) ........................................................ 9

*Elgindy v. AGA Serv. Co.*,

    2024 U.S. Dist. LEXIS 196527 (N.D. Cal. Oct. 29, 2024)..................................................... 13

*Ellis v. Costco Wholesale Corp.*,

    657 F.3d 970 (9th Cir. 2011).................................................................................................... 7

*Fitzhenry-Russell v. Coca-Cola Co.*,

    2019 U.S. Dist. LEXIS 232216 (N.D. Cal. Oct. 3, 2019)................................................... 3, 11

*Grady v. RCM Techs., Inc.*,

    671 F. Supp. 3d 1065 (C.D. Cal. 2023) ................................................................................. 15

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998).............................................................................................. 7, 12

*Hessefort v. Super Micro Comput., Inc.*,

    2023 U.S. Dist. LEXIS 198353 (N.D. Cal. May 5, 2023) ....................................................... 7

*Hill v. Canidae Corp.*,

    2021 U.S. Dist. LEXIS 273056 (C.D. Cal. Sep. 28, 2021)...................................................... 5

*Hod v. Medtronic Minimed, Inc.*,

    2025 U.S. Dist. LEXIS 204990 (C.D. Cal. Sep. 18, 2025)................................................... 15

*Hunt v. Bloom Energy Corp.*,

    2024 U.S. Dist. LEXIS 82465 (N.D. Cal. May 6, 2024) ...................................................... 15

*In re Apple Inc. Device Performance Litig.*,

    2023 U.S. Dist. LEXIS 27892 (N.D. Cal. Feb. 17, 2023)....................................................... 9

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011).............................................................................................. 9, 14

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,

    2019 U.S. Dist. LEXIS 21990 (N.D. Cal. Feb. 11, 2019).................................................... 15

*In re Facebook Internet Tracking Litig.*,

    2022 U.S. Dist. LEXIS 205651 (N.D. Cal. Nov. 10, 2022)............................................... 19

*In re LinkedIn User Priv. Litig.*,

    309 F.R.D. 573 (N.D. Cal. 2015) ....................................................................................... 12

*In re MyFord Touch Consumer Litig.*,

    2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019) .................................................... 9

*In re Omnivision Techs.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2007) .............................................................................. 8

*In re Packaged Seafood Prods. Antitrust Litig.*,

    2023 U.S. Dist. LEXIS 42195 (S.D. Cal. Mar. 13, 2023)..................................................... 2

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*,

    2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) ................................................... 6

*In re Toys "R" Us-Del., Inc. FACTA Litig.*,

    295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................................... 3

*Johnson v. Gen. Mills, Inc.*,

    2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013) .................................................. 19

*Judson v. Goldco Direct, LLC*,

    2021 U.S. Dist. LEXIS 258173 (C.D. Cal. June 11, 2021) ................................................ 16

*Keil v. Lopez*,

    862 F.3d 685 (8th Cir. 2017).............................................................................................. 20

*Lee v. Glob. Tel*Link Corp.*,

    2018 U.S. Dist. LEXIS 163410 (C.D. Cal. Sep. 24, 2018)................................................. 20

*Maciel v. Bar 20 Dairy, LLC*,

    2021 U.S. Dist. LEXIS 87242 (E.D. Cal. May 5, 2021) .................................................... 11

*McKenzie v. Fed. Express Corp.*,

    2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) .................................................. 12

*McKinney-Drobnis v. Oreshack*,

    16 F.4th 594 (9th Cir. 2021) ................................................................................................ 6, 14

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,

    2013 U.S. Dist. LEXIS 179190 (C.D. Cal. Dec. 5, 2013) .............................................. 17

*Miller v. Ghirardelli Chocolate Co.*,

    2015 U.S. Dist. LEXIS 20725 (N.D. Cal. Feb. 20, 2015) .............................................. 4

*Morales v. Conopco, Inc.*,

    2016 U.S. Dist. LEXIS 144349 (E.D. Cal. Oct. 18, 2016) ............................................ 19

*Musgrove v. Jackson Nurse Professionals, LLC*,

    2022 U.S. Dist. LEXIS 112339 (C.D. Cal. June 24, 2022) ............................................ 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................... 8, 17

*Perks v. ActiveHours, Inc.*,

    2021 U.S. Dist. LEXIS 57272 (N.D. Cal. Mar. 25, 2021) ............................................ 16

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) .............................................................................. 8, 10, 17

*Salazar v. King*,

    2022 U.S. Dist. LEXIS 215203 (C.D. Cal. Nov. 28, 2022) .......................................... 10

*Schaffer v. Litton Loan Servicing, LP*,

    2012 U.S. Dist. LEXIS 189830 (C.D. Cal. Nov. 13, 2012) .......................................... 12

*Schneider v. Chipotle Mexican Grill, Inc.*,

    336 F.R.D. 588 (N.D. Cal. 2020) ................................................................................... 20

*Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*,

    2025 U.S. Dist. LEXIS 214527 (N.D. Cal. Oct. 30, 2025) .......................................... 13

*Shvager v. Viasat, Inc.*,

    2014 U.S. Dist. LEXIS 200808 (C.D. Cal. Mar. 10, 2014) .......................................... 21

*Smith v. Apple, Inc.*,

    2025 U.S. Dist. LEXIS 83589 (N.D. Cal. May 1, 2025) .............................................. 15

*Smith v. Keurig Green Mt., Inc*.,

    2022 U.S. Dist. LEXIS 120863 (N.D. Cal. July 8, 2022) .................................................... 11

*Tabak v. Apple, Inc*.,

    2024 U.S. Dist. LEXIS 197459 (N.D. Cal. Oct. 30, 2024) .................................................. 16

*Tait v. BSH Home Appliances Corp.*,

    2015 U.S. Dist. LEXIS 98546 (C.D. Cal. July 27, 2015) .................................................... 12

*Testone v. Barlean's Organic Oils, LLC*,

    2023 U.S. Dist. LEXIS 37308 (S.D. Cal. Mar. 6, 2023) ..................................................... 18

*Tuttle v. Audiophile Music Direct, Inc*.,

    2023 U.S. Dist. LEXIS 229241 (W.D. Wash. Dec. 26, 2023) ............................................. 19

*Will Kaupelis v. Harbor Freight Tools*,

    2021 U.S. Dist. LEXIS 200690 (C.D. Cal. Aug. 11, 2021) ................................................. 16

*Woodard v. Labrada*,

    2023 U.S. Dist. LEXIS 242782 (C.D. Cal. Jan. 9, 2023) .............................................. 16, 18

*Yun-Fei Lou v. Am. Honda Motor Co.*,

    2025 U.S. Dist. LEXIS 89346 (N.D. Cal. May 9, 2025) ...................................................... 5

*Zepeda v. PayPal, Inc.*,

    2017 U.S. Dist. LEXIS 43672 (N.D. Cal. Mar. 24, 2017) .................................................. 18

*Zografos v. Qwest Communs. Co., LLC*,

    2013 U.S. Dist. LEXIS 99573 (D. Or. July 11, 2013) ........................................................ 14

**Rules**

Fed. R. Civ. P. 23(c)(2) ........................................................................................................... 2, 5

Fed. R. Civ. P. 23(e)(2) ................................................................................................... 6, 10, 15

## I.    Introduction.

After years of strenuous litigation, the Parties reached a hard-fought class-wide settlement in this case. The Settlement, which resulted from a mediator's proposal, provides a $5,500,000 non-reversionary common fund for the benefit of the Settlement Class, as well as additional and meaningful non-monetary relief. This is a highly favorable outcome for the Settlement Class, especially given the significant risks presented by continued litigation.

On July 2, 2025, this Court reviewed the Settlement and granted preliminary approval. Dkt. 170 ("Preliminary Approval Order"). In doing so, the Court preliminarily certified the Settlement Class and preliminarily found the Settlement to be fair, reasonable, and adequate. *Id.* at 2-3. Following preliminary approval, the Court-appointed Settlement Administrator faithfully executed the approved notice plan. And the Class's reaction has been very positive: in a Settlement covering more than ten million product purchases, only one Settlement Class Member requested exclusion from the Settlement, and only one filed an objection (and as discussed below, this objection is without merit). And Settlement Class Members filed claims covering at least 2.2% of the relevant products at issue.[1] This is a reasonable response rate, similar to the claims rates achieved in many other consumer class actions.

Every factor that the Court analyzed at preliminary approval continues to favor final approval now. Though the Court's review at preliminary approval was of course preliminary, the Court has already examined all of the material terms of the Settlement and addressed most of the factors relevant at final approval under Rule 23(e) and Ninth Circuit precedent. The only factor not yet considered—the Class's very positive reaction to the Settlement after the successful administration of notice—bolsters the Court's preliminary finding of fairness, reasonableness, and adequacy. Therefore, the Court should grant final certification of the Settlement Class and grant final approval

---

[1] The Settlement Administrator received 62,958 claims from Settlement Class Members. Weisbrot Decl. ¶ 23. Of those, 62,099 claims were filed online, and 859 were mailed to the Administrator. *Id.* The Administrator has reviewed the claims filed online and determined that they include claims for 266,550 products, but has not yet completed the review of the paper claim forms. *Id.* As a result, the claims rate discussed in this Motion does not account for the products claimed by Class Members who submitted paper claim forms (meaning that the total claims rate is slightly higher than reported here).

1    of the Settlement.

2        **II.    The Settlement.**

3        As discussed in Plaintiffs' Motions for Preliminary Approval and for Attorneys' Fees, Costs,

4    and Incentive Awards, the Settlement offers substantial monetary and non-monetary benefits to

5    Settlement Class Members. *See* Dkt. 153 ("Preliminary Approval Motion") at 4-6 (discussing the

6    benefits provided by the Settlement); Dkt. 177 ("Motion for Fees, Costs, and Incentive Awards") at

7    1-2 (same). The Settlement creates a $5,500,000 non-reversionary common fund for the benefit of

8    Class Members, which will be used to provide direct payments to Class Members, as well as pay for

9    administration costs, reasonable attorneys' fees and expenses, as approved by the Court, and

10   incentive awards for the Class Representatives, as approved by the Court. Dkt. 153-1 ("Agreement")

11   §§ 2.1(a), 1.32. And, in addition to the monetary benefits, the Settlement also requires Corsair to

12   make changes to its representations regarding product speed on product packaging, the Corsair

13   website, and the content provided to resellers of the relevant products within 90 days of the effective

14   date of the Settlement. *Id*. §2.2(a)-(c). These changes will meaningfully benefit Class Members and

15   future consumers, protecting them from the alleged harm at the heart of this case.

16       **III.    The Court should finally approve the Settlement.**

17           **A.    The notice plan fairly and adequately informed Class Members of the Settlement.**

18               **1.    The Court-approved notice plan was more successful than anticipated.**

19       In determining whether to grant final approval of a class settlement, courts must consider

20   whether the Parties successfully provided "the best notice that is practicable under the circumstances,

21   including individual notice to all members who can be identified through reasonable effort." Fed. R.

22   Civ. P. 23(c)(2)(B). Notice plans, however, "are not expected to reach every class member." *Bruno v.*

23   *Quten Research Inst., LLC*, 2012 U.S. Dist. LEXIS 196467, at *4 (C.D. Cal. July 16, 2012). Indeed,

24   "Rule 23 requires the best notice 'practicable,' not perfect notice." *Id*.; *In re Packaged Seafood*

25   *Prods. Antitrust Litig.*, 2023 U.S. Dist. LEXIS 42195, at *48 (S.D. Cal. Mar. 13, 2023) (explaining

26   that "due process does not require actual, individual notice in all cases.").

27       Here, in granting preliminary approval, the Court approved the proposed notice plan and held

28   that it "complies with the requirements of due process and Rule 23, including" by providing "for the

best notice that is practicable under the circumstances." Preliminary Approval Order at 3. Since then, the Court-appointed Settlement Administrator, The Angeion Group ("Angeion"), has faithfully carried out the notice plan and achieved an even larger reach than initially anticipated. The notice plan consisted of both direct notice to Settlement Class Members, where possible, and the implementation of a state-of-the-art media notice campaign to reach Class Members for whom the Parties did not have contact information. *See In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014) ("When the court certifies a nationwide class of persons whose addresses are unknown, notice by publication is reasonable."); *Fitzhenry-Russell v. Coca-Cola Co*., 2019 U.S. Dist. LEXIS 232216, at *10 (N.D. Cal. Oct. 3, 2019) (noting that "individualized notice was not required or reasonably practicable" for class members where relevant purchases were "made at retail" and the Parties did not have "the names or contact information for class members.").

Angeion sent direct notice to Settlement Class Members for whom Defendant had contact information (consumers who made qualifying purchases directly through Corsair's website). Weisbrot Decl. ¶¶ 10-16. Where possible, these Class Members were sent notice via email. *Id*. ¶¶ 10-11 (email notice was successful for 38,669 of the 46,014 Class Members for whom Corsair had contact information). However, if email notice failed, or where Corsair did not have a valid email address for a Class Member, Angeion sent notice via first-class mail instead. *Id*. ¶¶ 12-16 (mail notice was successfully sent to 7,005 Class Members). Ultimately, direct notice was successfully disseminated to approximately 99% of Class Members for whom Defendant possessed contact information. *Id*. ¶¶ 10-16.

Angeion also implemented a multi-facetted and comprehensive media campaign designed to reach as many Settlement Class Members as practicable. In particular, the campaign involved "Programmatic Display Advertising," which is "a method of advertising where an algorithm identifies and examines demographic profiles and uses advanced technology to place advertisements on the websites where members of the Target Audience are most likely to visit." *Id*. ¶ 17; Dkt. 153-7 (Angeion Declaration provided at Preliminary Approval) ¶ 30. And it also involved "Social Media advertising via Facebook, Instagram, Reddit, X (formerly Twitter), and TikTok, a paid search campaign via Google, and video advertising on YouTube." Weisbrot Decl. ¶ 17. Initially, as

presented at preliminary approval, Angeion estimated that the media campaign would deliver an approximate 75.05% reach. *Id*. However, the campaign ultimately exceeded this estimate, and delivered an approximate reach of 81.22% (not accounting for the additional reach provided by direct notice, or the Settlement Website). *Id*. (noting that the media campaign "far exceeded the targeted reach percentage") (emphasis excluded).

In addition to the efforts described above, Angeion also caused notice of the Settlement to be published in a newspaper, and created and maintained a dedicated settlement website— www.DDR4andDDR5DesktopMemorySpeedSettlement.com. *Id*. ¶¶ 20-21. The website provides all necessary information about the Settlement, including important dates and relevant documents, allowed Class Members to file claims online, and included the number of a toll-free telephone number dedicated to the Settlement that was available twenty-four hours a day, seven days a week. *Id*. ¶ 22.

The implemented notice plan is materially similar to plans approved in other class actions. *See e.g.*, *Miller v. Ghirardelli Chocolate Co*., 2015 U.S. Dist. LEXIS 20725, at *6-9 (N.D. Cal. Feb. 20, 2015) (finally approving notice plan that provided direct notice to consumers for whom defendant had contact information, combined with the implementation of a media campaign and a settlement website); *Barrett v. Apple Inc*., 2024 U.S. Dist. LEXIS 237755, at *10 (N.D. Cal. Dec. 19, 2024) (same); *Edwards v. Nat'l Milk Producers Fed'n*, 2017 U.S. Dist. LEXIS 145217, at *13 (N.D. Cal. June 26, 2017) (finally approving notice plan that primarily relied on an "extensive Internet advertising campaign," as well as the implementation of a settlement website). And, as described above, the plan was ultimately even more successful than anticipated, and succeeded in providing the best notice practicable to the Settlement Class. Weisbrot Decl. ¶ 17 (explaining that the media campaign exceeded the expected reach of 75.05% and instead had a reach of approximately 81.22%—without accounting for the additional direct notice efforts, Settlement Website, and toll-free hotline); *id*. ¶ 30 (explaining that, in Angeion's opinion, the notice plan "was the best notice practicable under the circumstances, fulfilling all Due Process requirements, and fully comporting with Fed. R. Civ. P. 23 and the Northern District's Procedural Guidance for Class Action Settlements.").

Thus, the Court should find that notice was successfully disseminated as directed and adequately provided to the Class. *See Yun-Fei Lou v. Am. Honda Motor Co.*, 2025 U.S. Dist. LEXIS 89346, at *12 (N.D. Cal. May 9, 2025) (Tigar, J.) (noting that the settlement administrator "adhered to the previously approved notice plan," and finding that, "[a]ccordingly" the parties had provided the class with adequate notice); *Edwards*, 2017 U.S. Dist. LEXIS 145217, at *19 ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23."); *id*. at *20 (finally approving notice plan where "at least 75 percent of the class [] received notice."); *Hill v. Canidae Corp*., 2021 U.S. Dist. LEXIS 273056, at *27 (C.D. Cal. Sep. 28, 2021) (finally approving notice plan that provided notice to approximately 75% of the class).

In addition to evaluating whether notice was successfully distributed to class members, courts consider whether notice was substantively sufficient. *See* Fed. R. Civ. P. 23(c)(2)(B). And here, the notice documents provided, in clear and easily understandable language, all required information concerning the action, the Settlement, and Class Members' rights. Weisbrot Decl. Exhibits C-G (notice documents).

In sum, both the method and content of notice was reasonable and adequate, and satisfied all requirements of the Federal Rules and the United States Constitution.

### 2. CAFA notice was provided as required.

Angeion served notice of the proposed Settlement to state and federal officials as required by CAFA. *See* Dkt. 171 (providing proof of compliance with CAFA requirements); Weisbrot Decl. ¶¶ 5-6. And the Parties have not received any objection to the Settlement from any government official in response to that notice. Lyon Decl. ¶ 3.

### B. Conditional class certification remains appropriate.

In granting preliminary approval, the Court preliminarily certified the Settlement Class "for the purposes of settlement only." Preliminary Approval Order at 2; Dkt. 175 at ¶ 2 (clarifying the definition of the preliminarily certified Settlement Class). In doing so, the Court considered each of the relevant requirements imposed by Federal Rules 23(a) and 23(b)(3). Preliminary Approval Order at 2 (addressing numerosity, commonality, typicality, adequacy, predominance, and superiority). No circumstances have changed since then that would impact the Court's findings, so the Court should

1    reach the same conclusion here for all the reasons considered and set forth in the Court's Preliminary

2    Approval Order. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. &*

3    *Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at *241 (C.D. Cal. July 24, 2013) (certifying

4    class and stating "[n]othing has changed in the five-month period between that preliminary class

5    certification and today that suggests to the Court that the class should be decertified"); *Dickey v.*

6    *Advanced Micro Devices, Inc*., 2020 U.S. Dist. LEXIS 30440, at *9 (N.D. Cal. Feb. 21, 2020)

7    (certifying class and noting that "[b]ecause no facts that would affect [the Rule 23] requirements have

8    changed since the Court preliminarily approved the settlement on October 4, 2019, this order

9    incorporates by reference its prior analysis as set forth in the order granting preliminary approval.").

10          **C.  The Settlement is fair, reasonable, and adequate.**

11          A court may finally approve a class action settlement "only on finding that it is fair,

12   reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is fair,

13   reasonable, and adequate, a court must consider the following factors laid out in Federal Rule of Civil

14   Procedure 23(e)(2): "(A) the class representatives and class counsel have adequately represented the

15   class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

16   adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness

17   of any proposed method of distributing relief to the class, including the method of processing class-

18   member claims; (iii) the terms of any proposed award of attorney's fees, including timing of

19   payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal

20   treats class members equitably relative to each other." *Id.*

21          In the Ninth Circuit, this inquiry can also include and be guided by the following factors: "(1)

22   the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

23   litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in

24   settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience

25   and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

26   members to the proposed settlement." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir.

27   2004); *see McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021) (noting that after

28   the 2018 amendment to Rule 23(e), "it is still appropriate for district courts to consider the

[*Churchill*] factors in their holistic assessment of settlement fairness").

Ultimately, "[c]ourts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (cleaned up). And in weighing the factors, courts must remember that "[s]ettlement is the offspring of compromise; the question … is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, Class Counsel negotiated a highly favorable settlement that is fair, adequate, and free from collusion. All relevant factors weigh in favor of final approval.

### 1. The Class Representatives and Class Counsel adequately represented the Class.

Courts measure adequacy using two standards: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Hanlon*, 150 F.3d 1011 at 1020). "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. DOT*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Here, the Class Representatives and Class Counsel have adequately represented the Class over the course of years of arduous litigation and settlement negotiations. Neither the Class Representatives nor Class Counsel have any conflicts of interest with absent Class Members. *See* Dkt. 153-4 ("McKinney Decl.") ¶ 6; Dkt. 153-5 ("Sundeen Decl.") ¶ 6; Dkt. 153-6 ("Alcantara Decl.") ¶ 6; *see Hessefort v. Super Micro Comput., Inc.*, 2023 U.S. Dist. LEXIS 198353, at *11 (N.D. Cal. May 5, 2023) (reaffirming preliminary holding that there were no conflicts with the settlement class where "[n]o contrary evidence has emerged, and no issues have been raised by class members.") (Tigar, J.). And all three Class Representatives diligently assisted counsel in litigating this case on behalf of the Class, including by responding to discovery requests, making their computer systems

available for inspection, and sitting for depositions. McKinney Decl. ¶ 7; Sundeen Decl. ¶ 7; Alcantara Decl. ¶ 7. In addition, Class Counsel at both Dovel & Luner and Kneupper & Covey have substantial experience with complex litigation, including class actions, and have also diligently investigated and litigated this case, and achieved an excellent result for the Settlement Class. Dkt. 153-2 ("Lyon Decl. in Support of Plaintiffs' Preliminary Approval Motion") ¶¶ 4-7; Dkt. 153-3 ("Kneupper Decl.") ¶¶ 2-31.

### 2. The Settlement is the product of arduous, well-informed, and non-collusive negotiations at arm's length after years of litigation.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see Churchill*, 361 F.3d at 575 (listing "the extent of discovery completed and the stage of the proceedings" as a factor for courts to consider at final approval); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Here, the Parties entered settlement discussions with a thorough understanding of the claims and defenses at issue in the case, and negotiated through a well-regarded mediator who ultimately issued the mediator's proposal that led to the Settlement. Lyon Decl. in Support of Plaintiffs' Preliminary Approval Motion ¶¶ 11-13.

Prior to reaching the Settlement, the Parties litigated this case for years, including briefing multiple motions to dismiss, as well as Plaintiffs' motion seeking class certification, and four separate *Daubert* motions. Lyon Decl. in Support of Plaintiffs' Preliminary Approval Motion ¶¶ 8-9. Over the course of litigation, the Parties completed substantial discovery, including serving and responding to extensive requests for production and interrogatories, searching for and producing multiple rounds of document productions, repeatedly meeting on discovery issues, and taking and defending nine depositions. *Id*. ¶ 9; *see In re Omnivision Techs*., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation). Thus, the Parties entered settlement negotiations with sufficient information to make an informed decision on resolution. *See id*. ("The extent of the discovery conducted to date and the stage of the litigation are

both indicators of Lead Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions").

The Parties enlisted the services of a well-regarded and experienced mediator, Antonio Piazza, to guide settlement discussions. Lyon Decl. in Support of Plaintiffs' Preliminary Approval Motion ¶ 10; *see Eisen v. Porsche Cars N. Am., Inc.*, 2014 U.S. Dist. LEXIS 14301, at *14 (C.D. Cal. Jan. 30, 2014) (collecting cases) ("[W]here the services of a private mediator are engaged, this fact tends to support a finding that the settlement valuation by the parties was not collusive."). And the Settlement ultimately resulted from a mediator's proposal issued by Mr. Piazza. Lyon Decl. in Support of Plaintiffs' Preliminary Approval Motion ¶¶ 12-13; *see In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, at *25 (N.D. Cal. Mar. 28, 2019) (proposed settlement was "the product of arm's-length bargaining" where it was based on a mediator's proposal).

Finally, the Settlement does not raise any of the "subtle signs" of collusion that the Ninth Circuit has warned about, namely (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) clear sailing arrangements; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Apple Inc. Device Performance Litig.*, 2023 U.S. Dist. LEXIS 27892, at *49-50 (N.D. Cal. Feb. 17, 2023) (internal quotations omitted). Here, Class Counsel will not receive a "disproportionate distribution" from the Settlement Fund, or be "amply rewarded" while the Class receives no monetary distribution. Instead, as detailed in the Motion for Fees, Costs, and Incentive Awards, Counsel seeks fees exactly equal to the 25% benchmark routinely approved in this Circuit as reasonable. Motion for Fees, Costs, and Incentive Awards; *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reason-able fee award"); *see infra* §III(C)(3) (discussing attorneys' fees and noting that no Class Members objected to Counsels' fee request). Moreover, the Parties did not negotiate any "clear sailing" provision: Defendant was entitled to challenge Class Counsel's fees request (though it ultimately chose not to do so). Agreement § 8.1. And, finally, the Settlement Fund is non-reversionary—under no circumstances will any funds revert back to Defendant. *Id.* §2.1(e), (d) (*cy pres* award of the value of any uncashed checks to Khan

Academy). The absence of any of these signs of potential collusion further supports final approval. *See* Preliminary Approval Order at 3 (finding that "none of the signs of collusion" are "present in the Settlement").

> ### 3. The Settlement provides excellent relief to the Class, in light of the risks of continued litigation, the effectiveness of the method of distribution, and the reasonableness of the requested attorneys' fees.

Rule 23(e) next instructs courts to assess whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C); *see Churchill*, 361 F.3d at 575 (listing "the amount offered in settlement" as a factor for courts to consider at final approval). In conducting this assessment, courts should recognize that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d 9at 967; *see Churchill*, 361 F.3d at 575 (listing "the experience and views of counsel" as a factor for courts to consider at final approval). Class Counsel's "familiarity with th[e] litigation and previous experience with cases" means their assessment of the Settlement merits "considerable weight." *Salazar v. King*, 2022 U.S. Dist. LEXIS 215203, at *10 (C.D. Cal. Nov. 28, 2022) (alteration in original).

Here, the Settlement provides substantial and meaningful relief to the Settlement Class. The Settlement creates a $5,500,000 common fund for the benefit of the Class, which will be used to provide payments to Settlement Class Members, as well as cover notice and administration costs, attorneys' fees and costs, and incentive awards, as approved by the Court. Based on the claims rate, discussed below, and assuming that the Court grants in full Class Counsel's request for fees, costs, and incentive awards, Class Counsel expects that each claimant will receive approximately $12.66 per purchased product. *See supra* §III(C)(5) (discussing claims rate); Lyon Decl. ¶ 5 (providing this calculation). This means that consumers will receive about 20% of the approximate average purchase price of $63.33, per qualifying purchase. *See* Dkt. 165 ("Renewed Motion for Preliminary Approval")

at 9 (discussing this calculation at preliminary approval). This falls well above Plaintiffs' damages expert's midpoint price premium expectation, and higher than even the high end expectation. *Id*. at 6-7, 9.

And, as discussed at preliminary approval, Plaintiffs estimate that the total monetary relief included in the Settlement provides the Settlement Class somewhere between 4.5% and 9% of the total potential recovery if Plaintiffs succeeded completely in this litigation, depending on the price premium found attributable to the targeted representations. *Id*. at 6-9. This outcome is well within the range of reasonableness for class settlements. *See id*. (discussing this); Preliminary Approval Order at 1 (concluding "that the proposed settlement falls within the range of reasonableness"); *see e.g.*, *Maciel v. Bar 20 Dairy, LLC*, 2021 U.S. Dist. LEXIS 87242, at \*16-19 (E.D. Cal. May 5, 2021) (granting approval of settlement representing about 3% of the theoretical potential recovery).

Plus, in addition to the monetary benefits, Class Counsel secured additional non-monetary relief for the Class. *See Fitzhenry-Russell*, 2019 U.S. Dist. LEXIS 232216, at \*18 ("It is appropriate for the Court to consider the injunctive relief in assessing the benefit to the class"). In particular, the Settlement requires Corsair to make changes to its labeling practices that will protect Class Members and future consumers from the harm alleged in this case, and thus adds to the value of the Settlement. *See Smith v. Keurig Green Mt., Inc.*, 2022 U.S. Dist. LEXIS 120863, at \*28 (N.D. Cal. July 8, 2022) (changes to a company's "labeling and advertising of its products nationwide to include … disclaimer[s]" entail "a 'costly process' that benefits the Settlement Class but is not accounted for in the settlement amount.").

Thus, the Settlement provides excellent relief, especially when considering the four factors listed in Rule 23(e)(2)(C).

### a.   Costs, risks, and delay.

"When considering 'the costs, risks, and delay of trial and appeal,' courts in the Ninth Circuit evaluate 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at \*18 (C.D. Cal. Mar. 4, 2024) (citation omitted)

(quoting *Hanlon*, 150 F.3d at 1026); *see Churchill*, 361 F.3d at 575 (listing these factors as three of eight factors for courts to consider at final approval).

Here, while Plaintiffs are confident in the strength of their case, continued litigation would have presented substantial risk for the Settlement Class, not to mention the imposition of significant additional costs and delay. Defendant contested liability vigorously throughout the course of litigation, and forcefully argued that class certification was unwarranted. *See* Motion for Fees, Costs, and Incentive Awards at 9-10 (describing Class Counsel's litigation efforts). And, when the Parties finally reached the Settlement, a fully briefed motion for class certification, as well as four *Daubert* motions challenging Plaintiffs' class certification experts, were all still pending before the Court. Lyon Decl. in Support of Plaintiffs' Preliminary Approval Motion ¶¶ 9, 12. These motions presented real danger for the Settlement Class's claims. *See* Renewed Motion for Preliminary Approval at 4-6 (describing Corsair's defenses and the risks presented by continued litigation); Motion for Fees, Costs, and Incentive Awards at 7-9 (further describing these risks). Plus, even if Plaintiffs were successful in certifying a class, they would still need to successfully defeat any motions for summary judgment, win at trial, and potentially beat back appeals. Even in the best-case scenario, this type of extensive continued litigation would impose significant expense and delay, cutting into any ultimate relief achieved for the Settlement Class. *See McKenzie v. Fed. Express Corp.*, 2012 U.S. Dist. LEXIS 103666, at *9 (C.D. Cal. July 2, 2012) ("The central factor relating to the 'risk, expense, complexity, and likely duration' … analysis is the expense of litigation."); *Schaffer v. Litton Loan Servicing, LP*, 2012 U.S. Dist. LEXIS 189830, at *36 (C.D. Cal. Nov. 13, 2012) ("Even if the class were ultimately to prevail …, trial and appeals would significantly delay class members' ability to obtain compensation."). "By contrast, the proposed settlement provides certain, timely, and substantial relief" for the Settlement Class. *Tait v. BSH Home Appliances Corp.*, 2015 U.S. Dist. LEXIS 98546, at *21 (C.D. Cal. July 27, 2015); *see In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

In short, continued litigation would present significant risks, and a certainty of increased expenses and delay. And Class Counsel—who have substantial experience with consumer class actions, and false advertising cases in particular—weighed all of this against the strength of the case in negotiating the Settlement.

### b. Method of distribution.

In assessing the "effectiveness of any proposed method of distributing relief to the class," courts must keep in mind that "[t]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Musgrove v. Jackson Nurse Professionals, LLC*, 2022 U.S. Dist. LEXIS 112339, at *13-14 (C.D. Cal. June 24, 2022) (*quoting* 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.)).

Here, the Settlement provides for a non-reversionary common fund, and, as is typical in class settlements, after the payment of notice costs, as well as attorneys' fees and incentive awards, the fund will be distributed directly to Settlement Class Members until exhausted. Agreement §1.32. To receive a benefit payment from the Settlement Fund, Class Members were directed to file a simple claim form on the Settlement Website (or else, if they preferred, to print the form and mail to the Settlement Administrator). *Id.* §§1.3, 2.1(b). Class Members could file a claim for up to five qualifying purchases without providing proof of purchase, or more than five purchases if they included proof of purchase with their submitted claim. *Id.* §2.1(b). Thus, the claims process— described in detail in the class notice, was as simple and straightforward as possible. *See Elgindy v. AGA Serv. Co.*, 2024 U.S. Dist. LEXIS 196527, at *16 (N.D. Cal. Oct. 29, 2024) (Tigar, J.) (finding claims process reasonable where, like here, class members could "submit their claims by completing a claim form, with their basic personal information, an election of payment method, and a certification of the information included on the claim form, either online or through mail."). And the distribution plan is equally efficient and reasonable: Settlement Class Members who submitted timely claims will receive a pro rata distribution from the Settlement Fund, proportionate to the number of purchases they made during the Class Period. *Id.*; *see Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2025 U.S. Dist. LEXIS 214527, at *12 (N.D. Cal. Oct. 30, 2025) ("*Pro rata* distribution is generally a reasonable and fair way to compensate classes[.]").

1    Thus, the method of distributing relief to the Class is straightforward and efficient. This

2    weighs in favor of final approval.

3         **c.  Attorneys' fees.**

4    The Ninth Circuit has interpreted the Rule 23(e) inquiry into attorneys' fees as "imposing an

5    obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the

6    class." *McKinney-Drobnis*, 16 F.4th at 607 (internal quotation marks omitted). And here, Class

7    Counsel has requested reasonable fees in light of the relief achieved for the Class.

8    As explained above, the Settlement provides Settlement Class Members with not only

9    $5,500,000 in monetary relief, but also significant non-monetary benefits in the form of label

10   changes. Class Counsel has applied to the Court for $1,375,000 in fees. *See generally* Motion for

11   Fees, Costs, and Incentive Awards. This request is exactly in line with the presumptively reasonable

12   25% benchmark set by this Circuit—without even taking into account the value provided by the non-

13   monetary relief. *See id*. at 4-5; *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d at 942 ("[C]ourts

14   typically calculate 25% of the fund as the 'benchmark' for a reason-able fee award."). And, as

15   described in the Motion for Fees, Costs, and Incentive Awards, this request is further supported by a

16   lodestar cross-check. Motion for Fees, Costs, and Incentive Awards at 12-14. Finally, out of a Class

17   of millions of consumers, not a single person objected to Class Counsel's fees request. *See infra*

18   §III(C)(5) (discussing the one objection, which does not relate to Counsel's fees request); *Zografos v.*

19   *Qwest Communs. Co., LLC*, 2013 U.S. Dist. LEXIS 99573, at *12 (D. Or. July 11, 2013) ("The

20   absence of objections by class members to Settlement Class Counsel's fee-and-expense request

21   further supports finding it reasonable.").

22   In the Preliminary Approval Order, the Court noted that it "typically withhold[s] between

23   10% and 25% of the attorney's fees granted at final approval until after the post-distribution

24   accounting has been filed." Preliminary Approval Order at 4. Class Counsel does not believe that a

25   withholding is necessary in this case where Counsel has extensive experience with class settlements

26   and takes its obligations to the Settlement Class very seriously, and where the plan of allocation is a

27   straightforward proportional distribution of the Settlement Fund. Lyon Decl. ¶ 7. However, should

28   the Court believe that a withholding is necessary, Counsel believes that a 10% withholding is

Motion for Final Approval of
Class Action Settlement                    14                    Case No. 4:22-cv-00312-JST

1    reasonable and typical for these circumstances. *See e.g.*, *Smith v. Apple, Inc.*, 2025 U.S. Dist. LEXIS

2    83589, at *29 (N.D. Cal. May 1, 2025) (ordering a 10% withholding in connection with a class

3    settlement providing a common fund from which proportional payments would be made to class

4    members); *Hunt v. Bloom Energy Corp.*, 2024 U.S. Dist. LEXIS 82465, at *6 (N.D. Cal. May 6,

5    2024) (same); *Hod v. Medtronic Minimed, Inc.*, 2025 U.S. Dist. LEXIS 204990, at *31 (C.D. Cal.

6    Sep. 18, 2025) (same).

7            **d.  Additional agreements.**

8            Apart from the Settlement Agreement and Angeion's agreement to administer notice and

9    administration services, no agreements have been made in connection with the Settlement. *See*

10   Weisbrot Decl. ¶ 27 (discussing administration costs).

11           **4.  The Settlement treats Class Members equitably.**

12           Another consideration at final approval of a class settlement is whether "the proposal treats

13   class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Of particular concern is

14   whether the proposed settlement "improperly grant[s] preferential treatment to class representatives

15   or segments of the class." *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1072 (C.D. Cal. 2023).

16           Here, the Settlement does not improperly prioritize the Class Representatives. Plaintiffs have

17   requested presumptively reasonable incentive awards of $5,000 each to compensate them for their

18   significant service to the Class. *See* Motion for Fees, Costs, and Incentive Awards at 15-16; *see In re*

19   *Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig*., 2019 U.S. Dist.

20   LEXIS 21990, at *50 (N.D. Cal. Feb. 11, 2019) (noting that a "request of $5,000 is reasonable as that

21   amount is the presumptive incentive award in this District."). As explained further in that motion, the

22   requested awards—together amounting to less than 0.3% of the Settlement's total monetary value—

23   are justified in light of the Class Representatives' diligence and significant efforts on behalf of the

24   Class. Motion for Fees, Costs, and Incentive Awards at 15-16.

25           The Settlement also treats all absent Class Members equitably and does not provide

26   preferential treatment to any one section of the Class. Under the Settlement, Class Members will

27   receive different payments depending on how many Corsair high-speed memory products they

28   purchased during the Class Period. Agreement §2.1(b). This distribution plan ties Class Members'

recovery to their potential damages and is an equitable means of allocating the Settlement Fund. *See Perks v. ActiveHours, Inc*., 2021 U.S. Dist. LEXIS 57272, at *18 (N.D. Cal. Mar. 25, 2021) (finding that "pro rata distribution is inherently equitable" and "treats Class Members fairly"); *Tabak v. Apple, Inc*., 2024 U.S. Dist. LEXIS 197459, at *13 (N.D. Cal. Oct. 30, 2024) (Tigar, J.) (holding that a settlement treated class members "fairly based on the strength of their claims" where it treated them differently depending on "the relative size of their potential claims").

The Settlement allowed Settlement Class Members to file a claim for up to five qualifying products without any proof of purchase, or more than five qualifying products with reasonable proof of purchase. Agreement §2.1(b). This type of structure is extremely common in class settlements related to retail purchases. *See e.g.*, *Woodard v. Labrada*, 2023 U.S. Dist. LEXIS 242782, at *7 (C.D. Cal. Jan. 9, 2023) (finally approving settlement where class members who submitted proof of purchase received $5 per purchase, up to ten total products, and class members who did not submit proof of purchase received $5 per purchase, up to four total products). And the structure does not treat Class Members inequitably, but instead ensures that all Class Members—even those who may not have kept proof of purchase—can benefit from the Settlement, while still protecting against fraudulent claim submissions and compensating Class Members with proof of purchase. *See infra* §III(C)(5) (discussing this structure in more depth); *see also Will Kaupelis v. Harbor Freight Tools*, 2021 U.S. Dist. LEXIS 200690, at *31-32 (C.D. Cal. Aug. 11, 2021) (explaining that limiting relief for class members with no proof is "justified and equitable" because those class members would have weaker claims due to their "difficulty proving that they did in fact purchase the Class Products.").

In short, the Settlement treats Class Members equitably. This too favors final approval.

### 5. The Class's reaction to the Settlement was positive.

"In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement." *Judson v. Goldco Direct, LLC*, 2021 U.S. Dist. LEXIS 258173, at *15 (C.D. Cal. June 11, 2021); *see Churchill*, 361 F.3d at 575 (listing "the reaction of the class members to the proposed settlement" as a factor for courts to consider at final approval). "In assessing the reaction of the class, courts have considered (1) the views of the class representatives; (2) the number of requests for exclusion or opt-outs compared with the total number of members in

the class; and (3) the number and vociferousness of the objectors." *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 U.S. Dist. LEXIS 179190, at *62-63 (C.D. Cal. Dec. 5, 2013) (citations and internal quotation marks omitted). In addition, courts have also considered the number of claims filed by Class Members. Here, all considerations weigh in favor of final approval.

The Class Representatives' reactions were positive. Each of the Class Representatives favors the Settlement and believes that it is in the best interests of the Settlement Class. McKinney Decl. ¶ 6; Sundeen Decl. ¶ 6; Alcantara Decl. ¶ 6. These opinions further support the fairness, adequacy, and reasonableness of the Settlement. *See Me. State Ret. Sys.*, 13 U.S. Dist. LEXIS 179190, at *63 ("Courts afford special weight to the opinions of class representatives because their views may be important in shaping the agreement and they may have a better understanding of the case than most members of the class." (internal quotation marks omitted)).

The reaction of absent Class Members was also very positive. Only one Settlement Class Member—from a Settlement covering millions of product purchases—requested to be excluded from the Settlement. Weisbrot Decl. ¶ 25 (providing the name of this Class Member); *see Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding class reaction to be "overwhelming[ly] positive" and "support[ing] settlement" where 4.86% of the class opted out); *Churchill*, 361 F.3d at 577 (affirming approval where 500 of 90,000 notified class members opted out of the settlement). And similarly, only one Class Member filed an objection to the Settlement. Weisbrot Decl. ¶ 26; *see* Dkt. 179. This is an extremely positive reaction from the Settlement Class. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Churchill*, 361 F.3d at 577 (affirming approval of a settlement where the district court received 45 objections from 90,000 class members who had received notice); *Rodriguez*, 563 F.3d at 967 (affirming approval where the district court found 54 objections out of 376,301 class members represented "a favorable reaction to the settlement among class members"). And the "indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to

1   [S]ettlement by the [C]lass has been favorable." *Zepeda v. PayPal, Inc.*, 2017 U.S. Dist. LEXIS

2   43672, at *49 (N.D. Cal. Mar. 24, 2017).

3           The sole objection to the Settlement, filed by Class Member Allen Kenda, should be

4   overruled. Dkt. 179 ("Kenda Objection"). Mr. Kenda's objection takes issue with the Settlement's

5   structure, which allows Settlement Class Members to file claims for up to five product purchases

6   without proof of purchase, and requires Class Members to provide proof of purchase for claims for

7   more than five product purchases. In particular, Mr. Kenda argues that the Settlement is deficient

8   because Class Members who provide proof of purchase with their claims should receive a "more

9   significant portion of the Settlement Fund" than Class Members who do not provide proof of

10  purchase because they have "suffered a greater burden of proof." *Id*. This objection is without merit.

11  To begin, the Settlement does not impose a "greater burden of proof" without providing additional

12  benefit for Class Members who provide proof of purchase. Instead, *all* Class Members were entitled

13  to file claims for up to five qualifying products without including proof of purchase—meaning that

14  no Class Member who purchased fewer than six products needed to look for, or produce, proof of

15  purchase. It is true that if Class Members wanted to file a claim for more than five products, they did

16  need to include proof of their purchases. Providing this proof, however, allowed them access to

17  additional compensation unavailable to Class Members who also made more than five purchases, but

18  who did not provide proof. Thus, to the extent there was any additional burden in having to find proof

19  of purchase, that burden will be compensated with a larger portion of the Settlement Fund, just as Mr.

20  Kenda wants.

21          Moreover, the structure that Mr. Kenda challenges is extremely common in class settlements.

22  *See e.g.*, *Labrada*, 2023 U.S. Dist. LEXIS 242782 at *7 (finally approving settlement where class

23  members who submitted proof of purchase received $5 per purchase, up to ten total products, and

24  class members who did not submit proof of purchase received $5 per purchase, up to four total

25  products); *Testone v. Barlean's Organic Oils, LLC*, 2023 U.S. Dist. LEXIS 37308, at *3-4 (S.D. Cal.

26  Mar. 6, 2023) (finally approving settlement where class members without proof of purchase could

27  claim up to five units, and there was no cap on the number of units class members with proof of

28  purchase could claim, and all class members received the same relief per purchase); *Morales v.*

1  *Conopco, Inc.*, 2016 U.S. Dist. LEXIS 144349, at *9 (E.D. Cal. Oct. 18, 2016) (finally approving

2  settlement where "class members [could] recover for the purchase of up to ten bottles per household

3  without providing proof of purchase and [could] recover for more than ten bottles if they submit[ted]

4  adequate proof").

5        And this structure's popularity makes sense: allowing class members to file claims without

6  proof of purchase appropriately weighs the concern that many consumers do not keep receipts or

7  email confirmations. *See Johnson v. Gen. Mills, Inc.*, 2013 U.S. Dist. LEXIS 90338, at *10 (C.D. Cal.

8  June 17, 2013) (finding settlement that allowed recovery without proof of purchase to be "a good

9  result for the class"); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (noting

10 that "consumers generally do not keep receipts or other records of low-cost purchases"). And

11 imposing a cap on the number of claims that can be filed without proof of purchase protects the Class

12 from fraudulent claims that would lessen the money available for legitimate claimants. *See Tuttle v.*

13 *Audiophile Music Direct, Inc.*, 2023 U.S. Dist. LEXIS 229241, at *32-33 (W.D. Wash. Dec. 26,

14 2023) (noting that proof of purchase requirements "ensure that payment is properly made to

15 individuals belonging to the settlement class."). In short, the structure is a reasonable and equitable

16 approach to ensuring that as many legitimate claimants as possible can file claims. Mr. Kenda's

17 objection should be overruled.

18       <u>The claims rate is reasonable and adequate, too</u>. As described above, Settlement Class

19 Members received comprehensive notice informing them of their right to file a claim via a simple and

20 easy claims process. *See supra* § III(A) (describing class notice); Weisbrot Decl. Exhibits C-G

21 (showing the notice documents). And ultimately, nearly 63,000 Settlement Class Members filed

22 claims before the Claim Deadline, covering at least 266,500 products, or at least approximately 2.2%

23 of the total products purchased by Class Members during the Class Period. Weisbrot Decl. ¶ 23; Lyon

24 Decl. ¶ 4. This response rate is entirely reasonable, especially in a case covering more than ten

25 million product purchases where direct notice to each Class Member was not feasible. *See In re*

26 *Facebook Internet Tracking Litig.*, 2022 U.S. Dist. LEXIS 205651, at *36 (N.D. Cal. Nov. 10, 2022)

27 (granting final approval to class settlement where approximately 2% of the settlement class filed

28 claims, and finding this to be a "satisfactory claims rate for class sizes in the millions."); *Carlotti v.*

*ASUS Comput. Int'l*, 2019 U.S. Dist. LEXIS 201564, at *30 (N.D. Cal. Nov. 19, 2019) (noting, in granting preliminary approval of class settlement and accepting plaintiffs' estimated claims rate, that the ability to provide direct notice appears correlated with higher claims rates; "direct notice seems more likely to result in a claim submission"). Plus, claims rates in this range (and far lower rates) are common in class settlements, and do not weigh against approval, especially where notice was successfully disseminated. *See e.g.*, *Schneider v. Chipotle Mexican Grill, Inc*., 336 F.R.D. 588, 599 (N.D. Cal. 2020) (granting final approval to class settlement with a .83% claims rate and noting that this is "on par with other consumer cases, and does not otherwise weigh against approval."); *Cabrera v. Google LLC*, 2025 U.S. Dist. LEXIS 169496, at *9-10 (N.D. Cal. Aug. 29, 2025) (granting final approval to class settlement with millions of class members where 0.75% of the class submitted claims); *Carter v. Vivendi Ticketing United States LLC*, 2023 U.S. Dist. LEXIS 210744, at *28 (C.D. Cal. Oct. 30, 2023) (granting final approval to class settlement where 1.6% of the settlement class submitted claims); *Lee v. Glob. Tel*Link Corp*., 2018 U.S. Dist. LEXIS 163410, at *21 (C.D. Cal. Sep. 24, 2018) (granting final approval to class settlement where 1.8% of the settlement class submitted claims and counsel originally predicted a 5% claims rate); *Bayat v. Bank of the W.*, 2015 U.S. Dist. LEXIS 50416, at *3 (N.D. Cal. Apr. 15, 2015) (finding class settlement to be fair, adequate, and reasonable where there was only a 1.9% claim rate for damages); *Broomfield v. Craft Brew All., Inc*., 2020 U.S. Dist. LEXIS 74801, at *19 (N.D. Cal. Feb. 5, 2020) (granting final approval to class settlement where about 2% of the settlement class submitted claims). In short, the claims rate achieved here is well within reason. Plus, Class Members who did not file a claim will still benefit from the meaningful non-monetary relief provided by the Settlement. *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (noting that, "even if 97 percent of the class did not exercise their right to share in the fund, their opportunity to do so was a benefit to them" and that "assuming that these class members continue to purchase pet food, they will benefit from the additional injunctive relief that the settlement provides.").

Thus, the reaction of the Settlement Class has been highly positive, and favors granting final approval. *See Carter*, 2023 U.S. Dist. LEXIS 210744 at *27-28 (noting that the "strong overall support for the" settlement "weigh[ed] in favor of granting final approval" where 1.6% of class

members filed claims, and there was one objection and one request for exclusion in a class of about 437,000 people).

*   *   *

Each of the factors considered by courts in evaluating proposed class settlements at final approval confirms that the Settlement reached in this case is fair, reasonable, and adequate.[2] Thus, the Court should finally approve the Settlement.

## IV.    Conclusion.

For the foregoing reasons, the Motion should be granted.

Dated: December 11, 2025                Respectfully submitted,


                                        _/s/ Richard Lyon_____
                                        Richard Lyon (Cal. Bar No. 229288)
                                        rick@dovel.com
                                        Simon Franzini (Cal. Bar No. 287631)
                                        simon@dovel.com
                                        Jonas Jacobson (Cal. Bar No. 269912)
                                        jonas@dovel.com
                                        Grace Bennett (Cal. Bar No. 345948)
                                        grace@dovel.com
                                        DOVEL & LUNER, LLP
                                        201 Santa Monica Blvd., Suite 600
                                        Santa Monica, California 90401
                                        Telephone: (310) 656-7066
                                        Facsimile: + (310) 656-7069

                                        Kevin Kneupper, Esq. (CA SBN 325413)
                                        kevin@kneuppercovey.com
                                        A. Cyclone Covey, Esq. (CA SBN 335957)

---

[2] Courts also consider "the presence of a governmental participant." *Churchill*, 361 F.3d at 575. Here, this factor is largely "inapplicable and neutral because no government entity participated in the case." *Shvager v. Viasat, Inc.*, 2014 U.S. Dist. LEXIS 200808, at *31 (C.D. Cal. Mar. 10, 2014). However, as explained above, the Parties, through the Settlement Administrator, provided notice of the Settlement to government entities as required by CAFA. *See supra* §III(A)(2). Despite this notice, no government entities "objected to the settlement or submitted adverse comments concerning it"—which further supports the conclusion that "the settlement is fair and reasonable." *Shvager*, 2014 U.S. Dist. LEXIS 200808, at *31; *see Barr*, 2024 U.S. Dist. LEXIS 39068, at *28 (finding this factor "weighs slightly in favor of final approval" where non-participant governmental officials were served CAFA notice and filed no objections).

cyclone@kneuppercovey.com
KNEUPPER & COVEY, PC
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647-5998
Tel: (512) 420-8407

*Counsel for Plaintiffs and the Settlement Class*